## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANGEL ECHAVARRIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:16-cv-11118 |
| v. | ) | |
| | ) | |
| J. MICHAEL ROACH, JOHN GARVIN, | ) | |
| RAYMOND GUILLERMO, JOSEPH | ) | |
| ROWE, NORMAN ZUK, RUSSELL | ) | |
| GOKAS, CHARLES LUISE, JOHN | ) | |
| SCANNELL, MICHAEL COONEY, | ) | |
| JOHN HOLLOW, UNKNOWN | ) | |
| OFFICERS OF THE LYNN POLICE | ) | |
| DEPARTMENT, UNKNOWN | ) | |
| OFFICERS OF THE | ) | |
| MASSACHUSETTS STATE POLICE | ) | |
| and the CITY OF LYNN, | ) | |
| Massachusetts, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff, ANGEL ECHAVARRIA, by his attorneys LOEVY &

LOEVY and RUTH GREENBERG, and complaining of Defendants J. MICHAEL

ROACH, JOHN GARVIN, RAYMOND GUILLERMO, JOSEPH ROWE, NORMAN

ZUK, RUSSELL GOKAS, CHARLES LUISE, JOHN SCANNELL, MICHAEL

COONEY, JOHN HOLLOW, UNKNOWN OFFICERS OF THE LYNN POLICE

DEPARTMENT, UNKNOWN OFFICERS OF THE MASSACHUSETTS STATE

POLICE and the CITY OF LYNN, Massachusetts, states as follows:

## INTRODUCTION

1.       Plaintiff Angel Echavarria was wrongly convicted of the murder of Daniel Rodriguez. The crime occurred in Lynn, Massachusetts, in 1994. Plaintiff did not commit the crime, and there was not one piece of legitimate evidence connecting him to the killing.

2.       The only evidence that tied Plaintiff to the crime were false eyewitness identifications of Plaintiff by Isidoro Rodriguez, the brother of the victim, and Gary Sevinor, who had purportedly been present at the scene of the crime. Both identifications were wholly fabricated by Defendants.

3.       In addition to fabricating false identifications of Plaintiff, Defendants suppressed the fact that Isidoro Rodriguez had unequivocally identified a different man named Mariano Bonifacio as the person who had shot and killed Daniel Rodriguez. Not only did Isidoro Rodriguez identify Bonifacio as the perpetrator prior to identifying Plaintiff, but he did so on two occasions, including on the night of the murder.

4.       To make matters worse, Bonifacio was a criminal known to Defendants. Defendants knew Bonifacio because they had arrested him just two months before the murder of Daniel Rodriguez for a similar shooting, which took place just blocks from the apartment where Daniel Rodriguez was killed.

5.      Instead of investigating Bonifacio's obvious involvement in the murder of Daniel Rodriguez, Defendants concealed everything they knew about Bonifacio's recent criminal activity and likely involvement in the crime; they suppressed the truth about Isidoro Rodriguez's identification of Bonifacio; and they pinned the crime on Plaintiff, even though there was no legitimate evidence suggesting that Plaintiff had been involved.

6.      Based on the force of the false witness identifications and false witness testimony fabricated by Defendants, Plaintiff was charged, prosecuted, and wrongly convicted of murder. He was sentenced to life in prison.

7.      Twenty-one years after he was wrongly arrested for the murder of Daniel Rodriguez, the Superior Court of the Commonwealth of Massachusetts granted Plaintiff a new trial. On June 15, 2015, the Commonwealth of Massachusetts dropped all charges against Plaintiff.

8.      Plaintiff walked out of prison a free man, having served half of his life behind bars for a crime he did not commit.

9.      Plaintiff now seeks justice for the harm that Defendants have caused and redress for the loss of liberty and the terrible hardship that Plaintiff has endured and continues to suffer as a result of Defendants' misconduct.

## JURISDICTION AND VENUE

10.     This action is brought pursuant to 42 U.S.C. § 1983 and Massachusetts law to redress Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

11.     This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper under 28 U.S.C. § 1391(b). On information and belief, the majority of Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

13.     Plaintiff Angel Echavarria is a man who spent 21 years in prison for a crime he did not commit.

14.     Defendants J. Michael Roach, Raymond Guillermo, Joseph Rowe, Russell Gokas, Charles Luise, John Scannell, John Hollow, and Unknown Officers of the Lynn Police Department are current or former officers of the Lynn Police Department. These Defendants were responsible for investigating crimes, including the crime at issue in this case, and for supervising other police officer Defendants. These Defendants committed, facilitated, and approved the constitutional violations at issue in this case.

15.     Defendants John Garvin, Norman Zuk, Michael Cooney, and Defendant Unknown Officers of the Massachusetts State Police are current or former officers of the Massachusetts State Police. These Defendants were responsible for investigating crimes, including the crime at issue in this case, and for supervising other police officer Defendants. These Defendants committed, facilitated, and approved the constitutional violations at issue in this case.

16.     Defendant City of Lynn, Massachusetts, is a municipality of the State of Massachusetts, which oversees the Lynn Police Department. Each of the Defendants referenced above was employed by the City of Lynn or was acting as an agent of the City of Lynn and the Lynn Police Department while conducting the investigation described in this Complaint. Defendant City of Lynn is therefore liable for all torts committed by these Defendants pursuant to the doctrine of *respondeat superior*. Defendant City of Lynn is additionally responsible for the policies and practices of the Lynn Police Department, which were implemented by Defendants in this case. Finally, Defendant City of Lynn is responsible under Massachusetts law for any judgment entered against Defendants.

17.     At all times relevant to the events described in this Complaint, each of the individual Defendants acted under color of law, within the scope of his employment, and as an investigator. Each of the individual Defendants is sued in his individual capacity, unless otherwise noted.

## FACTS

### The Murder of Daniel Rodriguez

18.     In January 1994, Daniel Rodriguez was shot and killed in an apartment in Lynn, Massachusetts.

19.     Daniel Rodriguez and his brother, Isidoro Rodriguez, had returned to the apartment shortly before the shooting, where they found two armed men holding a number of people hostage in the apartment.[1]

---

[1] Daniel Rodriguez and Isidoro Rodriguez are referred to by their first names below.

20.     Daniel was a known drug dealer, and the apartment was known as a place where individuals could buy drugs.

21.     The two armed men tied Isidoro up with a phone cord and put him in a bedroom. Daniel was taken to the bathroom, where he was shot in the head. Isidoro survived the incident unharmed.

22.     None of the physical evidence at the crime scene suggested that Plaintiff had anything to do with the crime. No witness present at the crime scene gave police any information to suggest that Plaintiff had been involved. On the contrary, the evidence that was collected, including biological evidence and statements from witnesses, made clear that Plaintiff could not have been involved in the murder.

23.     To this day, the crime remains unsolved. By focusing on Plaintiff, Defendants have let the real killer remain at large for more than two decades.

### Isidoro Identifies Mariano Bonifacio as the Murderer

24.     On the night of the murder, in an effort to identify the perpetrators of the crime, Defendants showed Isidoro books full of mugshots. From these books, Isidoro picked the photograph of Mariano Bonifacio and identified him as one of the killers.

25.     Shortly thereafter, Defendants obtained a second photo of Bonifacio. They showed that photo to Isidoro as part of a photo array. Again, Isidoro picked out Bonifacio as one of the killers.

26.     Almost immediately after the photo array, Defendants inexplicably worked to undermine Isidoro's identification of Bonifacio. They did not record Isidoro's unequivocal identifications of Bonifacio in their police reports or their investigative notes. Instead, as their investigation continued, Defendants misrepresented the true circumstances of Isidoro's identification of Bonifacio. They prompted Isidoro to state falsely that he had never actually identified Bonifacio as the perpetrator of the crime, and they falsely reported and testified that Bonifacio had never actually been identified as one of the perpetrators of the crime.

27.     Defendants concealed the true circumstances of Isidoro's identification from Plaintiff, his criminal defense attorneys, and state prosecutors. Defendants' efforts to suppress Isidoro's identification of Bonifacio continue to the present day.

## Defendants Conceal Mariano Bonifacio's Criminal Background and Likely Involvement in the Murder of Daniel Rodriguez

28.     Defendants' concealment of the true circumstances of Isidoro's identification of Bonifacio is even more shocking because Defendants knew at the time of Isidoro's identification that Bonifacio was a likely perpetrator of the murder of Daniel Rodriguez.

29.     They knew this because just weeks before Daniel's shooting, Defendants had arrested Bonifacio on charges of attempted murder in connection with the shooting of a man named Victor Batista. In both crimes, the victims were known drug dealers shot during home invasions; the *modus operandi* of the two crimes was the same; and the shootings took place no more than a half-mile apart.

30.     Instead of investigating whether Bonifacio had killed Daniel, Defendants concealed everything they knew about Bonifacio's likely involvement. They withheld from Plaintiff, his criminal defense attorneys, and state prosecutors the fact that they had arrested Bonifacio—the person who Isidoro had identified as Daniel's killer on the night of the crime—for a different attempted murder in connection with a shooting almost identical to the crime of which Plaintiff was wrongly convicted. Defendants suppressed this powerful evidence of Plaintiff's innocence, which could have been used to both to exonerate Plaintiff and to impeach prosecution witnesses against Plaintiff, throughout Plaintiff's wrongful conviction.

### Defendants Arrest Plaintiff for the Murder

31.     More than a week after Daniel was killed, Plaintiff was at a Lynn barbershop with his friend Juan Rodriguez. Isidoro happened to be there as well. Plaintiff did not know Isidoro, but Isidoro approached Plaintiff and asked his name. They exchanged pleasantries, and then Isidoro left the barbershop.

32.     Later that the same day, Plaintiff and Juan Rodriguez ate dinner at a Lynn restaurant. They were approached there by Defendants, who asked Plaintiff and Juan Rodriguez to step outside the restaurant.

33.     Plaintiff and Juan Rodriguez cooperated completely with the police. Outside on the sidewalk, Defendants asked Plaintiff and Juan Rodriguez whether they had been involved in Daniel's shooting. They both denied any involvement in or knowledge of the crime.

34.     Defendants took personal information from Plaintiff and Juan Rodriguez, and let them go on their way. There was no probable cause to suspect that Plaintiff or Juan Rodriguez had been involved in Daniel's murder. Plaintiff and Juan Rodriguez paid their bill at the restaurant and then went home.

35.     The next morning, without any additional investigation, Defendants came to arrest Plaintiff at his home. According to Defendants, Plaintiff purportedly had been identified by Isidoro as one of the men who had killed Daniel.

36.     Isidoro's false identifications implicating Plaintiff in the crime were manufactured by Defendants. In addition, Defendants wrote false police reports that intentionally misrepresented the circumstances of Isidoro's false identification and of Plaintiff's arrest.

37.     Based on the false identification, Defendants filed a criminal complaint accusing Plaintiff of Daniel's murder. Plaintiff's friend Juan Rodriguez was also accused of the crime. Defendants filed the charges without any evidence that either Plaintiff or Juan Rodriguez had been involved.

**Defendants Procure Additional Identifications of Plaintiff from Isidoro**

38.     To shore up their false charges against Plaintiff, Defendants took a photo of Plaintiff and presented it to Isidoro as part of a photo array. The photo array was unduly suggestive, and Defendants made clear to Isidoro who he should pick. Isidoro picked Plaintiff.

39.     Shortly thereafter, Defendants conducted a live lineup to further cement Isidoro's false identification of Plaintiff. The live lineup was also unduly suggestive. Again because of Defendants' suggestion, Isidoro falsely identified Plaintiff.

40.     Defendants pressed Isidoro to make these identifications of Plaintiff despite the fact that Isidoro had provided them a description of the perpetrator that looked completely unlike Plaintiff and that Isidoro had conclusively identified a different person—Bonifacio—as the perpetrator.

41.     To secure the false identifications of Plaintiff, Defendants took advantage of Isidoro's cognitive limitations, a pronounced language barrier, and Isidoro's drug intoxication. To say the least, Isidoro was an obviously unreliable witness who could be manipulated, and Defendants knew it.

### Evidence of Plaintiff's Innocence Ignored

42.     At the same time that they worked to implicate Plaintiff falsely in Daniel's murder, Defendants willfully ignored and acted to undermine strong evidence that Plaintiff had nothing to do with the crime.

43.     Defendants disregarded that none of the physical evidence collected at the crime scene connected Plaintiff to the killing. Moreover, they disregarded that none of the evidence gathered during a search of Plaintiff's house connected Plaintiff to the killing.

44.     Defendants also disregarded all of the information they had received from witnesses that excluded Plaintiff as a suspect. For example, eyewitnesses to the crime, including Isidoro, described that the crime had been committed by individuals who looked nothing like Plaintiff and who spoke with accents very different from Plaintiff's accent.

45.     In addition, Plaintiff had a verifiable alibi. On the night of Daniel's murder, Plaintiff was at home with family and friends in Lynn. Witnesses who were with him there could verify his alibi. Defendants ignored Plaintiff's alibi and instead manufactured false witness testimony to undermine his alibi.

**Defendants Fabricate an Additional Eyewitness Identification of Plaintiff**

46.     In 1995, more than a year after the crime occurred, Plaintiff was still incarcerated awaiting trial. Without any obvious reason for doing so, Defendants suddenly went to visit a man named Gary Sevinor in prison.

47.     Sevinor had allegedly been present in the apartment at the time of Daniel's murder, but in the aftermath of the crime and during Defendants' investigation, Sevinor had not provided any useful information. He had never before identified any person as a participant in the crime. In fact, in their reports drafted close in time to the crime, Defendants did not even mention Sevinor as a witness who had seen the perpetrators.

48.     Nevertheless, Defendants went to visit Sevinor in prison, and they showed him a photo array that included a photograph of Plaintiff. Again, Defendants used unduly suggestive techniques to convince Sevinor to falsely identify Plaintiff as one of Daniel's killers.

49.     After this identification, Defendants worked with Sevinor to prepare false testimony for trial in which he repeated his false identification of Plaintiff.

50.     Defendants concealed from Plaintiff, his criminal defense attorneys, and state prosecutors that they had fabricated Sevinor's identification of Plaintiff. Sevinor's false identification of Plaintiff was critical evidence in the case against Plaintiff because it "corroborated" Isidoro's equally false identification. Without Sevinor's false identification, Plaintiff would not have been prosecuted or convicted.

### Plaintiff's Wrongful Conviction and Imprisonment

51.     As a result of Defendants' misconduct, Plaintiff was tried by a jury in 1996. Plaintiff's friend Juan Rodriguez was tried at the same time.

52.     During the trial, Isidoro initially refused to show up to testify. After a bench warrant was issued, Defendants went to find Isidoro. They brought him to court so that he could provide the false testimony about his identifications of Plaintiff, which Defendants had helped him to prepare.

53.     After a two-week trial, a jury convicted Plaintiff of first-degree murder and other crimes. The trial judge acquitted Juan Rodriguez of all charges. Plaintiff was sentenced to life in prison.

54.     Without Defendants' fabrication of false witness identifications of Plaintiff and false witness testimony against him, Plaintiff never would have stood trial and never would have been convicted of the murder of Daniel Rodriguez. Without this false evidence, there was nothing to support a criminal proceeding against Plaintiff.

55.     In addition, without Defendants' suppression of crucial evidence about the identifications of Plaintiff, the identifications of Bonifacio, and Bonifacio's identity as the real perpetrator—all of which could have been used to exonerate Plaintiff and to impeach witnesses against him at his criminal proceeding—Plaintiff never would have been charged, prosecuted, or convicted.

56.     Plaintiff was in his mid-twenties, in the prime of his life, at the time that he was wrongly convicted. He was arrested, prosecuted, and convicted for no good reason at all. Plaintiff would spend the next two decades imprisoned for something he had not done.

57.     Plaintiff's whole life was turned upside down without any warning. A substantial portion of his adulthood has been consumed by the horror of his wrongful imprisonment.

58.     Plaintiff was taken away from his mother, siblings, children, other relatives, and friends. Because of Defendants' misconduct, Plaintiff has missed out on the lives of his family and friends. While Plaintiff was wrongly imprisoned, his mother died. He missed the opportunity to raise his own children.

59.     Plaintiff was deprived of opportunities to engage in meaningful labor, to develop a career, and to pursue his interests and passions. Plaintiff has been deprived of all of the basic pleasures of human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being.

60.     During his decades of wrongful imprisonment, Plaintiff was detained in harsh and dangerous conditions in maximum security prisons.

61.     In addition to the severe trauma of wrongful imprisonment and Plaintiff's loss of liberty, Defendants' misconduct continues to cause Plaintiff extreme physical and psychological pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, rage, and other physical and psychological effects.

### Plaintiff's Exoneration

62.     On April 30, 2015, the Superior Court of the Commonwealth of Massachusetts concluded that Plaintiff's conviction could not stand and that he was entitled to a new trial.

63.     On June 15, 2015, the Commonwealth of Massachusetts entered a *nolle prosequi*, dropping all charges against Plaintiff.

64.     Plaintiff walked out of prison at age 48, a free man for the first time in more than 21 years.

## COUNT I
## 42 U.S.C. § 1983 – Due Process

65.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

66.     In the manner described more fully above, Defendants, while acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

67.     Defendants deliberately withheld exculpatory evidence from Plaintiff and from state prosecutors, among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

68.     Defendants fabricated and solicited false evidence, including testimony that they knew to be false, implicating Plaintiff in the crime, obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff at his criminal trial. In addition, Defendants produced a series of false and fraudulent reports and related documents, which they inserted into their file and presented to state prosecutors and judges. These documents, which were used to show Plaintiff's purported connection to the crime, contained statements and described events that were fabricated and that Defendants knew to be false. Defendants signed these reports, both as investigators and as supervisors, despite their knowledge that the information contained in those reports was false.

69.     Defendants also procured supposed eyewitnesses identifications of Plaintiff, implicating him in the crime, by using unduly suggestive identification techniques during photo identifications and in a live lineup. Defendants used the resulting false identifications to taint Plaintiff's criminal trial.

70.     In addition, Defendants concealed and fabricated additional evidence that is not yet known to Plaintiff.

71.     Defendants who were supervisors charged with overseeing the investigation of Daniel Rodriguez's murder and the other individual Defendants knew full well of this misconduct, the suppression of exculpatory evidence, and the fabrication of a false case against Plaintiff. These supervisors nevertheless intentionally ignored Defendants' misconduct, and decided to make Plaintiff responsible for a crime he did not commit, rather than directing the officers to go out and find the person who had killed Daniel.

72.     Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

73.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

74.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

75.     Plaintiff's injuries were caused by the official policies of Defendant City of Lynn and the Lynn Police Department, by the practices and customs of Defendant City of Lynn and the Lynn Police Department, as well as by the actions of final policymaking officials for Defendant City of Lynn and the Lynn Police Department.

76.     At all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Lynn promulgated rules, regulations, policies, and procedures governing witness interviews, photo lineups, live lineups, preservation and disclosure of investigative materials and evidence, questioning of criminal suspects, in-court testimony, preparation and presentation of witness testimony, and training, supervision, and discipline of employees and agents of the City of Lynn, including employees and agents of the Lynn Police Department.

77.     These rules, regulations, policies, and procedures were implemented by employees and agents of Defendant City of Lynn, including the individual Defendants, who were responsible for conducting investigations of crimes in and around Lynn, Massachusetts.

78.     In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Lynn had notice of a widespread practice by its officers and agents under which individuals suspected of criminal activity, such as Plaintiff, were routinely deprived of exculpatory evidence, were subjected to criminal proceedings based on false evidence, and were deprived of their liberty without probable cause, such that individuals were routinely implicated in crimes to which they had no connection and for which there was scant evidence to suggest that they were involved.

79.     These widespread practices were allowed to flourish because the leaders, supervisors, and policymakers of Defendant City of Lynn directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and discipline their officers, agents, and employees who withheld material evidence, fabricated false evidence and witness testimony, and pursued wrongful prosecutions and convictions.

80.     The above-described widespread practices, which were so well settled as to constitute the *de facto* policy of the City of Lynn, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

81.     The misconduct described in this Count was undertaken pursuant to the policy and practices of Defendant City of Lynn in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Lynn and the Lynn Police Department, or were actually committed by persons with such final policymaking authority.

82.     The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

83.     Plaintiff's injuries were caused by officers, agents, and employees of the City of Lynn and the Lynn Police Department, including but not limited to the individually named Defendants, who acted pursuant to the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

## COUNT II
## 42 U.S.C. § 1983 – Federal Malicious Prosecution

84.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

85.     In the manner described above, Defendants, acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings

against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

86.     In doing so, Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.

87.     The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury.

88.     Defendants deprived Plaintiff of fair state criminal proceedings, including the chance to defend himself during those proceedings, resulting in a deprivation of his liberty, and Massachusetts law does not provide an adequate state-law tort remedy to redress that harm.

89.     In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was totally innocent, through Defendants' fabrication and suppression of evidence and their use of unduly suggestive identification procedures.

90.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

91.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

92.     On June 15, 2015, the judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence, when the Commonwealth of Massachusetts entered a *nolle prosequi*.

93.      Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Lynn, and by Defendants who were final policymakers for Defendant City of Lynn, in the manner more fully described above.

## COUNT III
## 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights

94.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

95.     After the murder of Daniel Rodriguez, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for the murder of Daniel Rodriguez, a crime he did not commit, and thereby to deprive him of his constitutional rights, all as described in the various paragraphs of this Complaint.

96.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

97.     In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

98.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

99.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

100.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Lynn, and by Defendants who were final policymakers for Defendant City of Lynn, in the manner more fully described above.

## COUNT IV
### 42 U.S.C. § 1983 – Failure to Intervene

101.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

102.    In the manner described above, during the constitutional violations described herein, one or more of Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

103.    As a result of Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Defendants had ample, reasonable opportunities to prevent this harm but failed to do so.

104.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

105.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

106.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Lynn, and by Defendant who were final policymakers for Defendant City of Lynn, in the manner more fully described above.

## COUNT V
## State-Law Claim – Malicious Prosecution

107.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

108.   In the manner described above, Defendants, acting as investigators, individually, jointly, or in conspiracy with one another, as well as within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

109.   In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

110.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

111.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

112.   On June 15, 2015, the judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence, when the Commonwealth of Massachusetts entered a *nolle prosequi*.[2]

---

[2] Plaintiff presented his state-law claims included in this Complaint to Defendants, as required by Massachusetts law, on June 14, 2016.

## COUNT VI
### State-Law Claim – Negligence

113.   Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

114.   Defendants owed Plaintiff a duty to refrain from framing him for a crime he had not committed and to conduct a legal and thorough investigation of the murder of Daniel Rodriguez that resulted in the accurate identification, arrest, and prosecution of criminal suspects.

115.   In the manner described more fully above, the actions, omissions, and conduct of Defendants breached this duty.

116.   The misconduct described in this Count was objectively unreasonable and was undertaken in total disregard of the truth and Plaintiff's clear innocence.

117.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VII
### State-Law Claim – Intentional Infliction of Emotional Distress

118.   Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

119.   The actions, omissions, and conduct of Defendants as set forth above were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless

disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

120.    As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer physical injury, emotional distress and other grievous and continuing injuries and damages as set forth above.

## COUNT VIII
## State-Law Claim – Negligent Infliction of Emotional Distress

121.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

122.    Defendants owed Plaintiff a duty to refrain from framing him for a crime he had not committed and to conduct a legal and thorough investigation of the murder of Daniel Rodriguez that resulted in the accurate identification, arrest, and prosecution of criminal suspects.

123.    In the manner described more fully above, the actions, omissions, and conduct of Defendants breached this duty.

124.    The misconduct described in this Count was objectively unreasonable. It was reasonably foreseeable that Defendant's actions would cause any reasonable person, including Plaintiff, emotional distress.

125.    As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer physical injury, emotional distress, and other grievous and continuing injuries and damages as set forth above. His distress is manifested in symptoms such as insomnia, deep depression, and anxiety.

## COUNT IX
### State-Law Claim – Mass. Gen. Laws, Ch. 12, § 11I

126.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

127.    Defendants interfered with Plaintiff's exercise and enjoyment of rights guaranteed to him by the U.S. Constitution and the constitution and laws of the Commonwealth of Massachusetts by coercing witnesses into fabricating false identifications against him.

128.    Defendants' misconduct deprived Plaintiff of his rights under federal and state law by use of threats, intimidation, and coercion, thereby violating the Massachusetts Civil Rights Act.

## COUNT X
### State-Law Claim – Civil Conspiracy

129.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

130.    As described more fully in the preceding paragraphs, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

131.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

132.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

133.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT XI
### State-Law Claim – *Respondeat Superior*

134.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

135.    While committing the misconduct alleged in the preceding paragraphs, Defendants were employees, members, and agents of the City of Lynn, acting at all relevant times within the scope of their employment.

136.    Defendant City of Lynn is liable as principal for all torts committed by its agents.

## COUNT XII
### State-Law Claim – Indemnification

137.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

138.    Massachusetts law provides that public entities are to pay tort judgments for which employees are liable within the scope of their employment activities.

139.    Defendants were employees, members, and agents of the City of Lynn, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, ANGEL ECHAVARRIA, respectfully requests that this Court enter a judgment in his favor and against Defendants J. MICHAEL ROACH, JOHN GARVIN, RAYMOND GUILLERMO, JOSEPH ROWE, NORMAN ZUK, RUSSELL GOKAS, CHARLES LUISE, JOHN SCANNELL, MICHAEL COONEY, JOHN HOLLOW, UNKNOWN OFFICERS OF THE LYNN POLICE DEPARTMENT, UNKNOWN OFFICERS OF THE MASSACHUSETTS STATE POLICE and the CITY OF LYNN, Massachusetts, awarding compensatory damages, attorneys' fees and costs against each Defendant, punitive damages against each of the individual Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, ANGEL ECHAVARRIA, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.


RESPECTFULLY SUBMITTED,

**ANGEL ECHAVARRIA**

BY:   <u>/s/ Ruth Greenberg</u>
        *One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Mark Loevy-Reyes
Steven Art
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

Ruth Greenberg
505 Paradise Rd., #166
Swampscott, MA 01907
(781) 632-5959
ruthgreenberg44@aol.com
Bar No. 563783