UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANGEL ECHAVARRIA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 16-cv-11118-ADB |
| | * | |
| J. MICHAEL ROACH *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS

BURROUGHS, D.J.

Plaintiff Angel Echavarria brings this case pursuant to 42 U.S.C. § 1983, Mass. Gen. Laws ch. 12, § 11I, and Massachusetts state common law, alleging that Defendants, current and former officers of the Lynn Police Department and the Massachusetts State Police, and the City of Lynn, violated his civil rights by engaging in unlawful conduct during an investigation that led to his wrongful conviction for murder. Currently pending before the Court are seven motions to dismiss filed by Defendants John Hollow and the City of Lynn; Joseph Rowe; Michael Cooney; John Garvin; Norman Zuk; Russell Gokas, Raymond Guillermo, Charles Luise, and John Scannell; and J. Michael Roach [ECF Nos. 44, 51, 54, 56, 58, 71, 78]. For the reasons set forth below, the Court grants the motions in part and denies them in part.

## I.    BACKGROUND

The following facts are drawn from the complaint, the allegations of which are taken as true for purposes of evaluating the motions to dismiss. See Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014).

In January 1994, Daniel Rodriguez was shot and killed in an apartment in Lynn,

Massachusetts. Daniel[1] was a drug dealer, and the apartment where he was killed was known as a place where people could buy drugs. On the night of the murder, Daniel and his brother, Isidoro Rodriguez, arrived at the apartment where they discovered two armed men holding several people hostage inside the apartment. The men tied Isidoro up with a phone cord and put him in a bedroom; Isidoro was not harmed during the incident. The men took Daniel to the bathroom, where he was shot in the head.

Later that night, Defendants[2] presented Isidoro with two photo arrays, and both times, Isidoro identified Mariano Bonifacio as one of the killers. Plaintiff alleges that Defendants did not record this identification in their reports and instead sought to discredit the identification. Plaintiff claims that Defendants were aware that Bonifacio could have been one of the perpetrators because, a few weeks before Daniel's murder, he was arrested for an attempted murder with a similar *modus operandi* that occurred within half a mile of the apartment where Daniel was murdered. Plaintiff alleges that Defendants withheld information about Bonifacio from Plaintiff which he could have used in his defense.

More than a week after Daniel's murder, Plaintiff was at a barbershop in Lynn with his friend Juan Rodriguez when Isidoro approached Plaintiff and asked his name. Plaintiff did not know Isidoro, but the two exchanged pleasantries, and Isidoro then left the barbershop. Later that day, Plaintiff and Rodriguez were eating dinner at a restaurant in Lynn when they were approached by Defendants, who asked Plaintiff and Rodriguez to step outside. Once outside, Defendants asked Plaintiff and Rodriguez if they had been involved in Daniel's murder. They both denied any involvement in or knowledge of the crime. Defendants took down Plaintiff and

[1] The Court will refer to Daniel and Isidoro Rodriguez by their first names in order to avoid confusion.
[2] The complaint frequently refers to "Defendants" without identifying the particular defendants involved.

Rodriguez's personal information and allowed them to leave. The next morning, Defendants arrested Plaintiff for Daniel's murder. They informed Plaintiff that Isidoro had identified him as one of Daniel's killers. Rodriguez was also accused of the crime.

Plaintiff alleges that Defendants manufactured a false identification from Isidoro, and that they wrote false police reports intentionally misrepresenting the identification. Plaintiff also claims that the photo array and live lineup where Isidoro identified Plaintiff were unduly suggestive. Plaintiff asserts that Isidoro had previously provided a description of the perpetrator that did not match Plaintiff, and furthermore, that Isidoro had cognitive limitations, a language barrier, and was intoxicated by drugs. Plaintiff also claims that Defendants ignored evidence that Plaintiff was not involved in the crime, including that there was no evidence found at the crime scene or at Plaintiff's house that would connect Plaintiff to the murder and that Plaintiff had an alibi and multiple witnesses could verify that he was at home with family and friends in Lynn.

A year after the murder, Defendants visited Gary Sevinor in prison. Sevinor was allegedly present in the apartment at the time of Daniel's murder, but the police reports drafted near the time of the crime did not identify him as a witness. Defendants presented Sevinor with a photo array and he identified Plaintiff as one of Daniel's killers. Plaintiff alleges that Defendants used unduly suggestive techniques to convince Sevinor to falsely implicate Plaintiff. Sevinor's identification was introduced as evidence in Plaintiff's trial.

In 1996, Plaintiff was convicted of first-degree murder and other crimes and sentenced to life in prison; Rodriguez was acquitted. Plaintiff spent more than 21 years in prison. In April 2015, a Massachusetts Superior Court ruled that Plaintiff was entitled to a new trial due to ineffective assistance of counsel.[3] In June 2015, the Commonwealth of Massachusetts entered a

---

[3] Commonwealth v. Echavarria, No. 1994-2407, 2015 WL 1947741, at *5 (Mass. Super. Apr. 30, 2015). Although the complaint does not state the basis on which Plaintiff's new trial motion was

3

*nolle prosequi*, dropping all charges against Plaintiff.

Plaintiff brings claims under 42 U.S.C. § 1983 for violations of his right to due process (Count I); malicious prosecution (Count II); conspiracy to deprive him of his constitutional rights (Count III); and failure to intervene (Count IV), and under Massachusetts state common law for malicious prosecution (Count V); negligence (Count VI); intentional infliction of emotional distress (Count VII); negligent infliction of emotional distress (Count VIII); civil conspiracy (Count X); *respondeat superior* (Count XI); and indemnification (Count XII). In addition, he brings a claim for a violation of Mass. Gen. Laws ch. 12, § 11I (Count IX).

## II.    DISCUSSION

### A.    Standard of Review

To evaluate a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)). The complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and should "contain 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Fed. R. Civ. P. 8(a)(2) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing

---

granted, the Court takes judicial notice of this fact. See Haley v. City of Boston, 657 F.3d 39, 44 (1st Cir. 2011) (in evaluating motion to dismiss, courts may consider "facts susceptible to judicial notice").

court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

"The plausibility standard invites a two-step pavane." Maddox, 732 F.3d at 80. First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012)). Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

### B.     Sufficiency of the Allegations

#### 1.     Individual Defendants

The individual defendants argue that the complaint is insufficient because it fails to state which particular defendant is alleged to have committed which specific act. Plaintiff concedes that he has not identified the role of each defendant, but argues that he has sufficiently alleged the conspiracy as a whole. Further, he contends that Defendants had an incentive to conceal their misdeeds, that they are in sole possession of relevant factual information, and that the complaint adequately puts Defendants on notice as to what misconduct is alleged.

In a § 1983 case, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 556 U.S. at 677; see also Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011) ("Personal liability 'under § 1983 must be based on personal involvement in the alleged constitutional violation.'" (citation omitted)). "Each defendant must

have personally participated in, encouraged, condoned, or acquiesced in rights-violating conduct." Remus-Milan v. Irizarry-Pagan, 81 F. Supp. 3d 174, 178 (D.P.R. 2015). While supervisory liability is available, it "lies only where an 'affirmative link between the behavior of a subordinate and the action or inaction of his supervisor' exists such that 'the supervisor's conduct led inexorably to the constitutional violation.'" Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009) (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)).

In this case, Plaintiff is not attempting to claim that all Defendants are liable for the actions of a few; rather, Plaintiff asserts he is unable to know, without further discovery, which Defendant committed or participated in which particular act. In similar circumstances, other courts have allowed comparable allegations to proceed to discovery. See Cuadrado v. Wall, No. CA 08-305 ML, 2010 WL 1499589, at *2 (D.R.I. Mar. 9, 2010) (holding that although "it is not clear from the Complaint which two officers allegedly gouged plaintiff's eyes . . . or which officers were included in the 'they' in plaintiff's allegation" that the officers kicked him, "such level of specificity is not required to show that the pleader is entitled to relief or to provide Defendants fair notice of the claims against them"), report and recommendation adopted, No. CA 08-305 ML, 2010 WL 1372700 (D.R.I. Apr. 5, 2010); Mitchell v. Rappahannock Reg'l Jail Auth., 703 F. Supp. 2d 549, 559 (E.D. Va. 2010) (denying motion to dismiss even though complaint referred to "all defendants" and did not specify which defendants were responsible for specific incidents); Carter v. Newland, 441 F. Supp. 2d 208, 213–14 (D. Mass. 2006) (allowing complaint that described "collective actions or omissions" of defendants to go forward, "although thin on detail," because it provided sufficient notice to defendants).

Similarly, courts often permit claims against John Doe defendants to proceed to discovery. See Billman v. Indiana Dep't of Corr., 56 F.3d 785, 789 (7th Cir. 1995) (holding that

"[i]f a prisoner makes allegations that if true indicate a significant likelihood that someone employed by the prison system has inflicted cruel and unusual punishment on him, and if the circumstances are such as to make it infeasible for the prisoner to identify that someone before filing his complaint, his suit should not be dismissed as frivolous," and explaining that the principle applies "to any case in which, usually because the plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery"). In addition, where a plaintiff's inability to identify which defendants committed which specific acts is due in part to defendants' alleged misconduct, courts tend to read the complaint more generously. See Saldivar v. Racine, 818 F.3d 14, 23 (1st Cir. 2016) ("[I]n cases in which a material part of the information needed is likely to be within the defendant's control, some latitude may be appropriate in applying the plausibility standard." (citation omitted)); Burley v. Gagacki, 729 F.3d 610, 622 (6th Cir. 2013) (upholding finding of liability even though plaintiffs were unable to identify which officers entered their home, because defendants' "intent to conceal [their identities] contributed to plaintiffs' impaired ability to identify them").

Here, Plaintiff is faced with the daunting prospect of obtaining evidence concerning events that occurred more than twenty years ago. Furthermore, if Plaintiff is correct that Defendants fabricated and concealed evidence, such actions by Defendants would add to Plaintiff's difficulty in acquiring the evidence necessary to prove his claims. In addition, it appears Plaintiff is correct that much of the information he seeks is in the sole possession of Defendants. Plaintiff has identified a discrete group of Defendants that he reasonably believes participated in the conduct that forms the basis of his claims. While he could have listed each Defendant by name in each claim, rather than referring to Defendants collectively, this is not

enough to render his claims implausible. Further, as Plaintiff points out, notice is not a

significant issue where Defendants are aware of their job responsibilities during the time in

question and their individual actions as they relate to the investigation and prosecution of

Plaintiff. In sum, given the facts of this case, the time that has elapsed, and the alleged

misconduct by Defendants, the Court concludes that the complaint contains sufficient factual

detail to indicate a plausible claim for relief and to put Defendants on notice of the claims being

made against them.[4]

2.     City of Lynn

Defendant City of Lynn claims that Plaintiff has not sufficiently alleged that there is a

direct causal link between the alleged policies and customs of the City of Lynn and the alleged

deprivation of Plaintiff's constitutional rights. Although "a municipality cannot be held liable

under § 1983 on a *respondeat superior* theory," § 1983 does impose "liability on a government

that, under color of some official policy, 'causes' an employee to violate another's constitutional

rights." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691–92 (1978). "[A]

plaintiff must show that the violation occurred as a result of the municipality's 'policy or

_____

[4] Similarly, to the extent that Plaintiff intends to assert that particular defendants are liable as
supervisors, these allegations are also sufficient to survive the motions to dismiss. The complaint
states that the officers acting as supervisors facilitated the alleged misconduct, were aware of it,
and approved it. In the circumstances of this case, these allegations are sufficient to state a claim
linking the supervising officials to the constitutional violations. Furthermore, Plaintiff's
conspiracy claim may proceed because Plaintiff alleges that Defendants acted "individually,
jointly, and in conspiracy with one another" and that they acted "in concert with other co-
conspirators" to deprive Plaintiff of his constitutional rights. [ECF No. 1 ¶¶ 66, 85, 95, 108, 130]
("Compl."). Given the circumstances of this case, and for the reasons discussed *infra*, these
factual allegations are adequate to state a claim for relief. See Williams v. City of Boston, 771 F.
Supp. 2d 190, 205 (D. Mass. 2011) (permitting civil rights conspiracy claim to proceed even
though complaint did not set forth specific facts pertaining to all elements of conspiracy, and
noting that "[t]he agreement that rests at the heart of a conspiracy is seldom susceptible of direct
proof: more often than not such an agreement must be inferred from all the circumstances"
(quoting Earle v. Benoit, 850 F.2d 836, 843 (1st Cir. 1988))).

custom.'" <u>Freeman v. Town of Hudson</u>, 714 F.3d 29, 38 (1st Cir. 2013) (quoting <u>Monell</u>, 436 U.S. at 694).

The complaint in this case alleges that the deprivations of Plaintiff's constitutional rights were caused by the official policies, practices, and customs of the City of Lynn and the Lynn Police Department, as well as by the actions of the final policymaking officials for the city and its police department [ECF No. 1 ¶ 75] ("Compl."), and further, that the city promulgated rules, regulations, policies, and procedures related to police investigations that were implemented by its employees and agents, including the individual defendants. <u>Id.</u> ¶¶ 76–77. In addition, Plaintiff claims that the city had notice of widespread practices by its officers and agents under which individuals suspected of criminal activity were deprived of exculpatory evidence and were falsely implicated in crimes, including through the fabrication of evidence; that these practices were so pervasive that they constituted the de facto policy of the city; and that municipal policymakers "exhibited deliberate indifference to the problem, thereby effectively ratifying it." <u>Id.</u> ¶¶ 78–80. Lastly, the complaint alleges that the policies, practices, and customs were the "moving force" behind the violations of Plaintiff's constitutional rights. <u>Id.</u> ¶¶ 81–83.

The allegations above are sufficient to survive the motion to dismiss. As Plaintiff points out, similar allegations were found to be sufficient in <u>Haley v. City of Boston</u>, 657 F.3d 39, 51–53 (1st Cir. 2011). In that case, the plaintiff claimed the Boston police had a standing policy "under which Boston police officers regularly kept helpful evidence from criminal defendants," an assertion that the defendant vigorously disputed. <u>Id.</u> at 52. The court allowed the claim to proceed to discovery, because the motion to dismiss stage "is neither the time nor the place to resolve the factual disputes between the parties," and whether the plaintiff could "prove what he has alleged is not the issue." <u>Id.</u>

The city argues that because the Massachusetts superior court granted Plaintiff's motion for a new trial due to ineffective assistance of counsel, and not for a failure to produce exculpatory evidence or for a due process violation, see Commonwealth v. Echavarria, No. 1994-2407, 2015 WL 1947741, at *5 (Mass. Super. Apr. 30, 2015), it is not reasonable to infer a causal link between any policy or practice of the City of Lynn and the alleged deprivations of Plaintiff's constitutional rights. Although the court did not grant Plaintiff a new trial based on due process violations or wrongful suppression of evidence grounds, this does not prove that these errors did not occur. Furthermore, the opinion makes it clear that the court had serious doubts about Plaintiff's conviction, describing the evidence against him as "weak," stating that Isidoro's testimony was "problematic in more ways than one," and noting that there were "significant weaknesses" in Sevinor's identification. Id. at *12.

The city also argues that in Massachusetts, district attorneys control the investigation of homicides and bear the burden of producing exculpatory evidence, and it is thus not possible to infer a causal link between the city's policies and practices and any constitutional deprivations suffered by Plaintiff. At the motion to dismiss stage, however, the Court is required to take Plaintiff's factual allegations as true, and here, Plaintiff has alleged that Lynn police officers participated in the investigation and that policy makers acting on behalf of the city implemented rules and procedures concerning criminal investigations that resulted in the deprivation of Plaintiff's constitutional rights. Furthermore, even if it is true that the prosecution ordinarily takes the lead in investigating homicides, it is certainly possible that city employees were involved in this particular investigation and that they fabricated evidence or failed to divulge it to the prosecution.

Lastly, the city claims that because Plaintiff alleges misconduct by multiple separate

actors, it is not possible to determine what misconduct is attributable to the municipality. The allegations in paragraphs 75 through 83 of the complaint, however, specifically refer to the city, describe its policies and practices, and explain how those policies resulted in the deprivation of Plaintiff's constitutional rights. In the case that the city cites to support its argument, this was not the case. See Freeman, 714 F.3d at 38 ("The complaint alleges misconduct from many separate actors, but gives no guidance about which acts are properly attributable to the municipal authority."). Accordingly, the complaint adequately describes the asserted basis of Monell liability against the City of Lynn.

### C.     Statute of Limitations

Defendants Cooney, Hollow, Gokas, Guillermo, Luise, Roach, Rowe, and Scannell argue that Plaintiff's § 1983 claims, except for his malicious prosecution claim, are barred by the applicable statute of limitations. "There is no federal statute of limitations for § 1983 claims," but instead, "§ 1983 borrows the forum state's statute of limitations for personal injury claims," which in Massachusetts is three years. McGunigle v. City of Quincy, 944 F. Supp. 2d 113, 119 (D. Mass. 2013). The date of accrual for § 1983 claims, however, "is a question of federal law that is *not* resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007). Under the rule set forth in Heck v. Humphrey, 512 U.S. 477, 486–90 (1994), a plaintiff may not bring suit under § 1983 where his claims would implicate the validity of a criminal conviction unless that conviction has been reversed or vacated, and thus "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."

In this case, Plaintiff's claims—that Defendants fabricated evidence and withheld exculpatory evidence—necessarily implicate the validity of his conviction. See Skinner v.

Switzer, 562 U.S. 521, 536–37 (2011) ("claim that sounds under Brady v. Maryland does indeed call into question the validity of the conviction" (quoting Amaker v. Weiner, 179 F.3d 48, 51 (2d Cir. 1999)); Heck, 512 U.S. at 479, 486–87, 490 (petitioner's claims that police destroyed exculpatory evidence and used an unconstitutional identification procedure at trial called into question the lawfulness of his conviction); Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998) (§ 1983 claim that police "spun a web of lies," coerced witnesses, and concealed misdeeds barred by Heck because conviction had not been overturned); Stote v. Bennett, No. 02-cv-30108-MAP, 2002 WL 32166533, at *3 (D. Mass. Sept. 10, 2003) (§ 1983 complaint that asserted defendants had withheld exculpatory evidence and provided false testimony "clearly alleges the invalidity of Plaintiff's conviction").[5] As such, Heck applies to Plaintiff's claims, which therefore accrued when his motion for a new trial was granted.

Defendants Hollow and the City of Lynn argue in their reply brief that Plaintiff should not be protected by Heck because Plaintiff became ineligible for federal habeas corpus relief by 2000.[6] This argument is unsupported by caselaw, and Defendants have not stated a clear reason to impose a Catch-22 upon Plaintiff whereby any § 1983 suit that implicated the validity of his conviction would have been barred by Heck prior to the date his motion for a new trial was granted, but also foreclosed after that point because it was too late to file a moot habeas corpus petition. Defendants cite Figueroa for the proposition that "the impugning of an allegedly unconstitutional conviction in a separate, antecedent proceeding [is] a prerequisite to a resultant section 1983 action for damages," but they fail to note that this quotation comes from a section

---

[5] Plaintiff correctly points out that Wallace v. Kato, 549 U.S. 384, 393–94 (2007) concerned the date of accrual for a § 1983 false-arrest claim which did not impugn an existing conviction, and thus has only limited relevance to the present case.

[6] Defendants have not indicated whether Plaintiff filed a federal habeas corpus petition at any time.

discussing the appellants' attempt to "collapse the habeas proceedings into their section 1983 action, thereby creating a legal chimera through which they seek simultaneously to invalidate [the] conviction and to recover damages," and involves a case where the criminal defendant's conviction had not been reversed or vacated but could no longer be challenged through a habeas corpus petition because he was deceased. Figueroa, 147 F.3d at 79–81 (emphasis omitted). Here, Plaintiff's conviction was vacated, and he has not attempted to conflate a habeas corpus petition with a § 1983 suit. To the extent Defendants intend to argue that the filing of a timely habeas corpus petition should be a prerequisite to obtaining the protection of Heck, they have not cited cases or other persuasive sources[7] to support this assertion. Furthermore, the Court notes that, pursuant to Heck, Petitioner's cause of action did not accrue until his motion for a new trial was granted; therefore, the issue is not whether equitable tolling applies, as Defendants imply, but rather, when his cause of action came into being. See Heck, 512 U.S. at 489–90 (declining to address equitable tolling issue because § 1983 claim did not arise until conviction was invalidated).

Accordingly, Plaintiff's suit is not barred by the statute of limitations. Plaintiff's claims did not accrue until, at the earliest, the date his motion for a new trial was granted, April 30,

---

[7] Defendants cite a law student note that discusses how "Heck operate[s] in cases involving convicted criminals who are ineligible for habeas corpus," which does not appear to address cases in which the conviction has been reversed or vacated outside of federal habeas corpus proceedings, and which also concludes that "the favorable termination requirement should *not* apply to individuals who are ineligible for habeas but seek to challenge the constitutionality of their criminal conviction or sentence." Note, Defining the Reach of Heck v. Humphrey, 121 Harv. L. Rev. 868, 869, 889 (2008) (emphasis added). Defendants also cite an article describing a Venn Diagram in which a small circle of "habeas jurisdiction" claims sits within a larger circle of potential constitutional violations, and which states that the small-circle "habeas jurisdiction" claims are not permitted to proceed under § 1983. Lyndon Bradshaw, The Heck Conundrum, 2014 B.Y.U. L. Rev. 185, 207–208 (2014). Again, this article does not appear to address cases in which obtaining federal habeas corpus relief is unnecessary because the conviction has already been reversed or vacated by a state court.

2015. See Commonwealth v. Echavarria, No. 1994-2407, 2015 WL 1947741, at *1 (Mass. Super. Apr. 30, 2015). The present lawsuit was filed on June 15, 2016, see Compl., well within the three-year limitations period.

### D. Qualified Immunity

The individual defendants claim that they are qualifiedly immune to some or all of the federal claims brought against them. "Under the doctrine of qualified immunity, police officers are protected 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mlodzinski v. Lewis, 648 F.3d 24, 32 (1st Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Qualified immunity is not merely a defense to liability, but rather shields a police officer from suit altogether. Id. The First Circuit employs the following analysis to determine whether a defendant is entitled to qualified immunity:

> (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation. The second prong, in turn, has two parts. We ask (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right.

Id. at 32–33 (citations omitted).

As an initial matter, Defendants argue that Plaintiff has not alleged facts that make out a violation of a constitutional right for the same reasons that they argued that the factual allegations set forth in the complaint were insufficient to state a claim. As discussed *supra*, the Court has concludes that the factual recitation of the complaint is sufficient to state a claim, and accordingly, Defendants are not entitled to qualified immunity on this basis.

Defendants also contend that Plaintiff's due process claim is barred by qualified

immunity if the claim is based on a failure to disclose evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), because the <u>Brady</u> rule was not extended to evidence known only to police officers until April 1995, by <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995). Plaintiff's claim, however, is that the police officer defendants deliberately withheld exculpatory evidence. Compl. ¶ 67. Where deliberate suppression is involved, the First Circuit has explained that "[t]here can be no doubt that, under the line of cases running from <u>Mooney</u> and <u>Pyle</u> to <u>Brady</u>, the law was firmly settled [by 1989] that a law enforcement officer may not deliberately suppress material evidence that is favorable to a defendant." <u>Drumgold v. Callahan</u>, 707 F.3d 28, 43 (1st Cir. 2013). In contrast, Defendants cite passages from <u>Haley v. City of Boston</u> that concerned the "no-fault disclosure obligation," which applies "irrespective of the good faith or bad faith of the prosecution." <u>Haley v. City of Boston</u>, 657 F.3d 39, 47–49 (1st Cir. 2011) (quotation marks and citation omitted). The <u>Haley</u> court, however, went on to consider a deliberate suppression claim, and concluded that it was clearly established prior to 1972 that the due process clause protects against the deliberate suppression of evidence by police officers. <u>Id.</u> at 49–50. Moreover, Defendants' briefing appears to tacitly acknowledge that if Plaintiff's claim is for deliberate suppression, they are not entitled to qualified immunity on that claim.

Next, Plaintiff correctly asserts that the right not to be framed by law enforcement agents was clearly established at the time of the investigation and prosecution in this case. In <u>Limone v. Condon</u>, the First Circuit explained that "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit." 372 F.3d 39, 44–45 (1st Cir. 2004). The court determined that "the right not to be framed by law enforcement agents was clearly established in 1967," <u>id.</u> at 45, decades prior to the events that gave rise to this

case. To the extent that any defendant implicitly argues that qualified immunity shields him from a claim that Defendants fabricated false evidence and used it to convict Plaintiff, Plaintiff may proceed with such a claim.

The individual defendants also contend that the malicious prosecution claim is barred by qualified immunity, and they appear to be correct. In Hernandez-Cuevas v. Taylor, the First Circuit chronicled the long history of cases that addressed whether the Constitution affords a right to be free from malicious prosecution. 723 F.3d 91, 98–99 (1st Cir. 2013). The court went on to hold that the Fourth Amendment guarantees the right to be free from malicious prosecution, and thus "ma[de] explicit what has long been implicit in our case law." Id. at 99–100. Prior to the Hernandez-Cuevas decision, the First Circuit had described it as an "'open question whether the Constitution permits the assertion of a section 1983 claim for malicious prosecution on the basis of an alleged Fourth Amendment violation,'" and accordingly, held that "[s]uch uncertainty in the legal landscape entitles state actors to qualified immunity." Rodriguez-Mateo v. Fuentes-Agostini, 66 F. App'x 212, 214 (1st Cir. 2003) (quoting Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001)); see also Williams v. City of Boston, No. 1:10-CV-10131, 2012 WL 5829124, at *10 (D. Mass. Sept. 21, 2012) (holding that constitutional right to be free from malicious prosecution was not clearly established in 2002, and thus defendants entitled to qualified immunity in § 1983 suit); Bloomquist v. Albee, 421 F. Supp. 2d 162, 186 (D. Me. 2006) (defendants entitled to qualified immunity against § 1983 claim for malicious prosecution due to lack of clarity in First Circuit as to whether right to be free from malicious prosecution was clearly established); Sheppard v. Aloisi, 384 F. Supp. 2d 478, 491 (D. Mass. 2005) (§ 1983 malicious prosecution claim barred by qualified immunity because right not clearly established as of 2000). Since the Fourth Amendment right to be free from malicious

prosecution was not clearly established until 2013, the individual defendants are entitled to

qualified immunity from Plaintiff's § 1983 claim that Defendants engaged in malicious

prosecution of him in violation of his constitutional rights in or before 1996.[8]

### E. Issue Preclusion

Defendants Garvin, Hollow, Gokas, Guillermo, Luise, Roach, Rowe, Scannell, and Zuk

argue that Plaintiff's claims concerning the validity of the identifications made by Sevinor and

Isidoro are barred by issue preclusion.[9] It is "well-established" that the doctrine of issue

preclusion applies to civil rights claims brought under § 1983. Johnson v. Mahoney, 424 F.3d 83,

93 (1st Cir. 2005) (citing Allen v. McCurry, 449 U.S. 90, 96 (1980)). "Federal courts must give

to state-court judgments the same preclusive effect as would be given by the courts of the state

from which the judgments emerged." Id. (citing Kremer v. Chem. Constr. Corp., 456 U.S. 461,

466 (1982) and Allen, 449 U.S. at 96). In Massachusetts, the "doctrine of issue preclusion

provides that when an issue has been actually litigated and determined by a valid and final

judgment, and the determination is essential to the judgment, the determination is conclusive in a

subsequent action between the parties whether on the same or different claim." Jarosz v. Palmer,

766 N.E.2d 482, 487–88 (Mass. 2002) (quotation marks and citation omitted).

---

[8] Before Hernandez-Cuevas was issued, some district courts in this circuit relied on decisions from other circuits or on logical inference to determine that qualified immunity did not shield defendants from claims of malicious prosecution. See Colon-Andino v. Toledo-Davila, 634 F. Supp. 2d 220, 238 (D.P.R. 2009) (explaining that "[t]here is no doubt" that actions "constituting malicious prosecution" such as fabricating evidence violate the Fourth Amendment, and thus holding that the defendants were not protected by qualified immunity); Rodriguez Esteras v. Solivan Diaz, 266 F. Supp. 2d 270, 282 (D.P.R. 2003) (holding that "the parameters of the right to be free from malicious prosecution were sufficiently clear" in 2000, citing "the near unanimity among the Circuits," and concluding that the defendants were not entitled to qualified immunity). But given the First Circuit cases specifically describing the issue as an "open question" and holding that defendants were thus entitled to qualified immunity, the Court is unable to determine that the right was clearly established prior to Hernandez-Cuevas.

[9] The defendants additionally argue that the claims are time-barred, but for the reasons discussed *supra*, the Court determines that the claims are timely.

In Johnson, the plaintiff was convicted of murder, but later exonerated, and he subsequently brought a § 1983 case alleging, *inter alia*, that the defendant police officers had withheld exculpatory evidence. 424 F.3d at 88. The court determined that his claim concerning the exculpatory evidence was barred by issue preclusion because the Massachusetts Supreme Judicial Court ("SJC") had previously ruled on the same argument in the direct appeal of his murder conviction. Id. at 95. Johnson relied on the fact that the SJC found that the withholding of evidence was wrongful, and "went out of its way to condemn the withholding . . . in strong terms more appropriate to a constitutional wrong than to a mere technical discovery error," even though the SJC ultimately found that the withholding was not prejudicial. Id. at 94–95.

Here, the circumstances of the SJC's ruling concerning Sevinor's identification do not differ substantially from those of Johnson. In Plaintiff's appeal of his murder conviction, the SJC upheld the trial court's determination that Sevinor's pretrial identification was not "so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny [Echavarria] due process of law." Commonwealth v. Echavarria, 703 N.E.2d 1137, 1139 (Mass. 1998) (citation omitted). This statement indicates that the SJC recognized the constitutional implications of Plaintiff's challenge to the identification procedure, and nevertheless ruled against him on this issue. Thus, the elements of issue preclusion are satisfied: the issue was litigated and determined by a final judgment, and the determination was essential to that judgment. Accordingly, Plaintiff is precluded from advancing any claim that Sevinor's pretrial identification was unduly suggestive.

The SJC's discussion of Isidoro's identifications, however, is on different footing. On that issue, the SJC ruled only that Plaintiff's trial counsel was not ineffective for not moving to suppress Isidoro's identifications. Echavarria, 703 N.E.2d at 1139–40. Massachusetts law

imposes a high bar to succeed on an ineffective assistance of counsel claim. The court must ask whether there was a "serious failure" by counsel, which means "serious incompetency, inefficiency, or inattention of counsel—behavior falling measurably below that which might be expected from an ordinary, fallible lawyer." Commonwealth v. Diaz, 860 N.E.2d 665, 669 (Mass. 2007) (quoting Commonwealth v. Shuman, 836 N.E.2d 1085, 1092 (Mass. 2005)). "A tactical decision by trial counsel is considered ineffective assistance only if such a decision was manifestly unreasonable when made." Id. The SJC discussed Isidoro's identifications briefly, only as they related to the ineffective assistance claim, and it did not recognize, directly or implicitly, any constitutional concerns. In these circumstances, issue preclusion does not bar a claim by Plaintiff concerning the constitutionality of the circumstances surrounding Isidoro's identifications. See Wade v. Brady, 460 F. Supp. 2d 226, 239, 241 (D. Mass. 2006) (declining to apply issue preclusion where state court ruled on ineffective assistance of counsel claim but did not consider underlying constitutional issue; and also noting inherent tension where, "[o]n the one hand, § 1983 was intended to protect the people's federal rights against transgressions by the state, but on the other hand, federal courts are obligated by the doctrine of collateral estoppel to give preclusive effect to judgments by the very same entities").

Although Plaintiff may not advance the specific claim that Sevinor's identification was unduly suggestive, Plaintiff may pursue his allegations that other events that occurred during the investigation and prosecution violated his constitutional rights.

### F.      Federal Malicious Prosecution Claim

The individual defendants contend that Plaintiff's § 1983 claim for malicious prosecution should be dismissed because there is an adequate state law remedy available. This argument misstates the current law on this issue. As discussed *supra*, in Hernandez-Cuevas, the First

Circuit explicitly recognized a Fourth Amendment right to be free from malicious prosecution actionable under § 1983. 723 F.3d at 99–100. Previously, the First Circuit had recognized a malicious prosecution claim based on substantive or procedural due process, see Torres v. Superintendent of Police of Puerto Rico, 893 F.2d 404, 408–09 (1st Cir. 1990), but the Supreme Court foreclosed such claims in Albright v. Oliver, 510 U.S. 266, 275 (1994). Hernandez-Cuevas, 723 F.3d at 98. The cases cited by Defendants, Meehan and Roche, rejected malicious prosecution claims based on substantive or procedural due process based on the holding in Albright. See Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999) ("A § 1983 claim for malicious prosecution as a deprivation of procedural due process is barred where, as here, the state's tort law recognizes a malicious prosecution cause of action."); Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996) ("There is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution, and the availability of a plainly adequate remedy under Massachusetts law defeats the possibility of a procedural due process claim here . . . ." (citations omitted)). "[O]verlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983," but a claim for a deprivation of procedural due process is on different footing, because "what is unconstitutional is the deprivation of [an interest in life, liberty, or property] *without due process of law*," and so "it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Zinermon v. Burch, 494 U.S. 113, 124–26 (1990). Accordingly, the logic of Meehan and Roche, that a federal malicious prosecution claim based on due process is barred where an adequate state law remedy is available, does not apply to Plaintiff's § 1983 malicious prosecution claim brought pursuant to the Fourth Amendment. Compl. ¶ 86; see Meehan, 167 F.3d at 88 (acknowledging "there is a possibility that [a] § 1983 malicious prosecution claim

may be actionable under the Fourth Amendment," and proceeding to analyze claim as such).[10]

### G.     Failure to Intervene

The individual defendants argue that Plaintiff cannot bring a § 1983 claim against them for failure to intervene because liability for failure to intervene only applies to excessive force cases. Defendants are correct that First Circuit cases have primarily, if not exclusively, concerned allegations of failure to intervene in the excessive force context. See Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002) ("An officer may be held liable not only for his personal use of excessive force, but also for his failure to intervene in appropriate circumstances to protect an arrestee from the excessive use of force by his fellow officers."); Davis v. Rennie, 264 F.3d 86, 98 (1st Cir. 2001) (recognizing as "good law in our circuit" the proposition that "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance" (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990))); Martinez v. Colon, 54 F.3d 980, 985 (1st Cir. 1995) (same). The Court is not aware, however, of any First Circuit case explicitly limiting failure-to-intervene claims to excessive force cases. Moreover, the First Circuit has occasionally described actionable failure to intervene claims in terms that could encompass a broad range of constitutional rights. See Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 54 (1st Cir. 2005) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in [his or her] presence by other officers." (emphasis omitted) (quoting O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988))); Clark v. Taylor, 710 F.2d 4, 9 (1st Cir. 1983) ("Liability under section

---

[10] Although the First Circuit may not have clearly recognized a Fourth Amendment right to be free from malicious prosecution at the time that Plaintiff was investigated and convicted, his claim did not accrue until 2015, as discussed *supra*.

1983 may be imposed both for action that deprives a plaintiff of a constitutional right and for failure to act, when there is a duty to act, to prevent such a deprivation.); see also Walker v. Jackson, 952 F. Supp. 2d 343, 352 (D. Mass. 2013) (concluding that it is "unclear whether liability may be imposed for failing to intervene in an unreasonable search").

In addition, several other circuits also describe an actionable claim for failure to intervene in broad language that appears to go beyond excessive force cases. See Randall v. Prince George's Cty., 302 F.3d 188, 204 (4th Cir. 2002) ("[A]n officer may be liable under § 1983, on a theory of bystander liability, if [he or she]: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." (footnote omitted)); Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994) ("An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring."); Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (similar three-part test); Bruner v. Dunaway, 684 F.2d 422, 426 (6th Cir. 1982) ("[A] law enforcement officer can be liable under § 1983 when by [his or her] inaction [he or she] fails to perform a statutorily imposed duty to enforce the laws equally and fairly, and thereby denies equal protection to persons legitimately exercising rights guaranteed them under state or federal law." (citation omitted)). Thus, the Court cannot conclude that Plaintiff's claims for failure to intervene are not actionable merely because they do not arise in an excessive force context.

Defendant Cooney additionally implies that he is entitled to qualified immunity from the

failure to intervene claim because the right was not clearly established in cases not involving excessive force. Plaintiff responds that failure to intervene is a pathway to liability, not the underlying constitutional violation, and it is the constitutional right itself that must be clearly established at the time of the deprivation. While this theory has its merits, the First Circuit has reasoned in the excessive force context that "the law was clearly established in 1998 that" an officer who was a bystander "had a duty to intervene" where another officer was using excessive force. Torres-Rivera, 406 F.3d at 55. Thus, it appears that the duty to intervene itself must be clearly established. See also Walker, 952 F. Supp. 2d at 352 (granting defendant qualified immunity where it was "unclear whether liability may be imposed for failing to intervene in an unreasonable search," because "[i]t is plain . . . that the contours of the constitutional right were not sufficiently clear to give the defendants notice that their conduct in this case was unconstitutional"). As discussed *supra*, within the First Circuit, it remains uncertain whether an officer has a duty to intervene in cases that do not concern excessive force. Accordingly, the individual defendants are entitled to qualified immunity on the failure to intervene claim.

###### H. State-Law Malicious Prosecution

Defendant Cooney contends that Plaintiff has failed to state a claim for malicious prosecution under Massachusetts state law. "To make out a claim for malicious prosecution, a plaintiff must prove: (1) the institution of criminal process against the plaintiff with malice; and (2) without probable cause; and (3) the termination of the criminal proceeding in favor of the plaintiff." Gutierrez v. Mass. Bay Transp. Auth., 772 N.E.2d 552, 561 (Mass. 2002) (citation omitted). Defendant Cooney argues that Plaintiff has not alleged that Cooney instituted criminal process against him or that he did so with malice. For the reasons discussed *supra*, the Court will allow the claim to proceed even though it does not specify which defendant took each particular

action. Furthermore, the allegations of the complaint are sufficient to state a claim for malicious prosecution under Massachusetts law. See Williams v. City of Boston, 771 F. Supp. 2d 190, 206 (D. Mass. 2011) (allowing state-law malicious prosecution claim to proceed where plaintiff alleged "his conviction was obtained by the defendants' false testimony and as a result of a conspiracy between the defendants to deprive him of his constitutional rights").

## I.      Intentional Infliction of Emotional Distress

Defendant Cooney also argues that the claim for intentional infliction of emotional distress (IIED) must be dismissed. Under Massachusetts law, "[t]o make out a claim of intentional infliction of emotional distress, the [plaintiff must] show (1) that [the defendants] intended, knew, or should have known that [their] conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014). "The standard for making a claim of intentional infliction of emotional distress is very high." Id. (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)). "Conduct qualifies as extreme and outrageous only if it 'go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (alteration in original) (quoting Roman v. Trustees of Tufts College, 964 N.E.2d 331, 341 (Mass. 2012)).

First, Cooney argues that Plaintiff has not stated sufficient facts to explain how Cooney in particular caused the IIED, but as discussed *supra*, the Court will allow the claims to proceed under these circumstances. Secondly, the facts Plaintiff alleges, if taken as true, are adequate to support his claim. Plaintiff claims that Defendants fabricated false evidence and suppressed exculpatory evidence to frame him for a murder he did not commit. He was convicted of first-degree murder, sentenced to life in prison, and served more than twenty years in prison before

his release. This is sufficient to support a claim for IIED. See Bazinet v. Thorpe, 190 F. Supp. 3d 229, 240 (D. Mass. 2016) (holding that alleged conduct by police officers including "fabricating evidence in an effort to obtain criminal charges against an innocent citizen" sufficient to support IIED claim); Limone v. United States, 497 F. Supp. 2d 143, 227 (D. Mass. 2007) ("[f]raming innocent men for a capital crime" sufficiently outrageous to constitute IIED); Burke v. Town of Walpole, No. 00-cv-10376-GAO, 2003 WL 23327539, at *12 (D. Mass. Aug. 5, 2003) (holding that allegation that medical examiner fabricated false evidence, leading to plaintiff's arrest and detention without probable cause, sufficient to state claim for IIED).

### J.     Negligence and Negligent Infliction of Emotional Distress

The individual defendants argue that the claims for negligence and negligent infliction of emotional distress should be dismissed because Plaintiff did not comply with the presentment requirement, and also because individual government employees cannot be held liable for injuries caused by negligent acts that occur within the scope of their employment.

Pursuant to the Massachusetts Tort Claims Act (MTCA), a tort claim may not be brought against a public employer unless the plaintiff "first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing." Mass. Gen. Laws ch. 258, § 4. If the executive officer fails to "deny such claim in writing within six months after the date upon which it is presented," the officer's inaction constitutes a "final denial of such claim." Id. Here, Plaintiff admits that he did not present his claim to the appropriate executive officer until June 14, 2016, a day before he filed this lawsuit. Compl. ¶ 112 n.2.

The SJC mandates "strict compliance" with the presentment requirement. Lopez v. Lynn Hous. Auth., 800 N.E.2d 297, 298 (Mass. 2003); see also Shapiro v. City of Worcester, 982 N.E.2d 516, 522 (Mass. 2013) ("This strict presentment requirement is a statutory prerequisite for recovery under the Act."). At the same time, "[t]he SJC has indicated that dismissal without prejudice would be proper in a case brought pursuant to chapter 258, section 4, only if timely presentment might still be made." Haley, 657 F.3d at 55 (citing Commesso v. Hingham Hous. Auth., 507 N.E.2d 247, 249–50 (Mass. 1987)); see also Martini v. City of Pittsfield, No. 14-cv-30152-MGM, 2015 WL 1476768, at *11 (D. Mass. Mar. 31, 2015) (noting that "courts often explain that defects in presentment may be cured even after a suit is brought," and dismissing claims without prejudice to refiling of amended complaint after six-month waiting period elapses).

Clearly, Plaintiff flouted the requirements of the statute by sending his presentment letter just a day before filing this suit. The presentment requirement is not just a procedural nuisance; its purpose is to

> ensure that the responsible public official receives notice of the claim so that the official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future.

Murray v. Town of Hudson, 34 N.E.3d 728, 735 (Mass. 2015) (quoting Richardson v. Dailey, 675 N.E.2d 787, 789 (Mass. 1997)). Here, dismissing the claims without prejudice is not in the interest of judicial economy because the six-month period for the government to respond to the presentment letter has already elapsed,[11] and requiring Plaintiff to now re-file the same claims, and Defendants to respond to those claims again, would be a waste of resources. Thus, the Court

---

[11] Plaintiff presented his claims on June 14, 2016, so the government was required to respond by December 14, 2016.

will allow the claims to proceed.

Defendant Hollow also argues that Plaintiff did not present his claim "within two years after the date upon which the cause of action arose," as required by Mass. Gen. Laws ch. 258, § 4. Although the Court determined *supra* that Plaintiff's § 1983 claims did not accrue until 2015 due to <u>Heck</u>, the <u>Heck</u> doctrine does not toll the running of the presentment period for claims brought pursuant to Massachusetts state tort law. <u>Haley</u>, 657 F.3d at 54–55. "The discovery rule, however, is applicable to the presentment requirement." <u>Krasnow v. Allen</u>, 562 N.E.2d 1375, 1378 (Mass. App. Ct. 1990); <u>see also</u> <u>Pettengill v. Curtis</u>, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) ("The discovery rule also applies to the presentment period because it counts from when a cause of action arose."). Under the Massachusetts discovery rule, "a cause of action for negligence accrues when 'a plaintiff knows or reasonably should know that it has sustained appreciable harm as a result of a defendant's negligence.'" <u>Khatchatourian v. Encompass Ins. Co. of Mass.</u>, 935 N.E.2d 777, 780 (Mass. App. Ct. 2010) (citation omitted). "Generally, an issue concerning what the plaintiff knew or should have known is a factual question that is appropriate for the trier of fact." <u>Koe v. Mercer</u>, 876 N.E.2d 831, 836 (Mass. 2007). The Court may rule on the issue in a motion to dismiss, however, "so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." <u>Rosbeck v. Corin Grp., PLC</u>, 140 F. Supp. 3d 197, 211 (D. Mass. 2015) (quoting <u>Rodi v. S. New England Sch. of Law</u>, 389 F.3d 5, 12 (1st Cir. 2004)).

At this point, it is unclear when and how Plaintiff learned about the alleged violations of his constitutional rights. Although the events at issue took place from 1994 to 1996, Plaintiff alleges that Defendants concealed their misdeeds, and the complaint contains no detail

concerning how he discovered the misconduct. Defendant Hollow contends that the Court should take judicial notice of docket entries in Plaintiff's state court criminal case which indicate that he filed a motion for a new trial on the basis that the prosecution withheld exculpatory evidence. As an initial matter, these docket entries apparently only relate to the withholding of exculpatory evidence, and not to Plaintiff's claims that Defendants fabricated evidence against him. Furthermore, it is not clear what evidence was at issue in the state criminal proceeding, and whether Plaintiff's claims in that case are the same as the claims he raises now. Thus, the docket entries do not establish "with certitude" that Plaintiff knew or reasonably should have known of his claims at that time.[12]

Lastly, Defendants argue that the negligence claims must be dismissed because "a public employee is not liable for 'personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.'" <u>Taplin v. Town of Chatham</u>, 453 N.E.2d 421, 422 (Mass. 1983) (quoting Mass. Gen. Laws ch. 258, § 2). Plaintiff concedes that, in general, an employee cannot be held liable for injuries that occur when the employee is acting within the scope of his or her employment, but he points out that an employee can be held jointly liable with the employer if the employee fails to "provide reasonable cooperation to the public employer in the defense" of a negligence claim. Mass. Gen. Laws ch. 258, § 2. Defendants have not indicated whether this cooperation is occurring. The individual defendants will continue to participate in this lawsuit because most claims against them will

---

[12] Defendants Cooney, Gokas, Guillermo, Luise, Roach, Rowe, and Scannell also argue that all of the state law claims except for malicious prosecution are barred by the three-year statute of limitations. <u>See, e.g.</u>, Mass. Gen. Laws ch. 258, § 4 (three-year statute of limitations for negligence claims brought pursuant to the MTCA); Mass. Gen. Laws ch. 260, § 2A (same for intentional torts). Their argument is also based on the docket entries from Plaintiff's state criminal proceeding that indicate he filed a motion for a new trial based on the prosecution's withholding of exculpatory evidence in 2011. As discussed above, these docket entries do not constitute conclusive proof that Plaintiff knew or should have known of his claims at that time.

proceed to discovery, as discussed *supra*, so the Court will not dismiss the negligence claims against them at this stage. However, the Court notes that as long as the individual defendants provide reasonable cooperation with their employers in the defense, they will be shielded from liability on the negligence claims.

### K.      Massachusetts Civil Rights Act

The individual defendants contend that Plaintiff failed to state a claim under the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, § 11I. The MCRA provides a cause of action against "any person" who

> interfere[s] by threats, intimidation or coercion, or attempt[s] to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth.

Mass. Gen. Laws ch. 12, § 11H.

Defendants assert that the complaint does not allege that particular Defendants interfered or attempted to interfere with Plaintiff's rights through threats, intimidation, or coercion.[13] Again, as discussed *supra*, the Court will permit the claims to move forward even though Plaintiff has not specified which defendant took which particular action. Furthermore, the Complaint does allege that Defendants "deprived Plaintiff of his rights under federal and state law by use of threats, intimidation, and coercion," thus violating the MCRA. Compl. ¶ 128. In particular, Plaintiff claims that Defendants violated his federal and state constitutional rights "by coercing witnesses into fabricating false identifications against him." Id. ¶ 127. Such allegations are sufficient to state a claim under the MCRA. See Haufler v. Zotos, 845 N.E.2d 322, 334 (Mass. 2006) ("Threatening, intimidating, or coercive actions directed at third parties should be

---

[13] Defendants also claim that they are entitled to qualified immunity for the same reasons they would be qualifiedly immune from the § 1983 claims, but as discussed *supra*, Defendants are generally not entitled to qualified immunity from the § 1983 claims.

included in considering any conduct that forms the basis of a claim under the civil rights act.");
Sarvis v. Boston Safe Deposit & Tr. Co., 711 N.E.2d 911, 918 (Mass. App. Ct. 1999) (threat of
harm "may involve third persons" and "threat of harm need not be directed at the plaintiff").

In addition, Defendant City of Lynn contends that the MCRA claims against it must be
dismissed because the city is not a "person" within the meaning of the statute. See Mass. Gen.
Laws ch. 12, § 11H, 11I (providing civil cause of action against "any person or persons").
Although Plaintiff did not clearly respond to this argument, it appears that the city is correct that
it is not subject to liability under the MCRA. See Howcroft v. City of Peabody, 747 N.E.2d 729,
744 (Mass. App. Ct. 2001) (holding that "a municipality is not a 'person' covered by the
Massachusetts Civil Rights Act (MCRA)"); Kelley v. LaForce, 288 F.3d 1, 11 n.9 (1st Cir. 2002)
(explaining that "a municipality cannot be sued under the MCRA," and citing Howcroft). Thus,
to the extent that Plaintiff intended to bring his MCRA claim against Defendant City of Lynn,
that claim must be dismissed.

### L.      State Common-Law Immunity

Defendants Cooney, Garvin, Gokas, Guillermo, Hollow, Luise, Roach, Rowe, and
Scannell argue that they are entitled to Massachusetts common-law immunity from the state tort
law claims. Under Massachusetts common law, "a public official, exercising judgment and
discretion, is not liable for negligence or other error in the making of an official decision if the
official acted in good faith, without malice, and without corruption." Nelson v. Salem State Coll.,
845 N.E.2d 338, 348 (Mass. 2006). While Defendants are correct that common-law immunity is
available to officials sued in their individual capacities for an intentional tort, id. at 348–49,
common-law immunity is not available where a defendant is alleged to have acted with malice or
corruption, see Cachopa v. Town of Stoughton, 893 N.E.2d 407, 414 (Mass. App. Ct. 2008) ("A

showing that the defendants acted with actual malice would thus also defeat their claim of qualified [common law] immunity."); <u>Tobin v. Goggins</u>, 459 N.E.2d 835, 836 (Mass. App. Ct. 1984) (common-law immunity protects public official from liability "unless actions were done in bad faith, maliciously, or corruptly" (citing <u>Gildea v. Ellershaw</u>, 298 N.E.2d 847, 859 (Mass. 1973))). Here, Plaintiff's allegations that Defendants fabricated evidence, deliberately withheld exculpatory evidence, and concealed their misdeeds describe not mere negligence, but malice and corruption. Thus, Defendants are not entitled to common-law immunity from these claims.[14]

## III.    CONCLUSION

Accordingly, the motions to dismiss [ECF No. 44, 51, 54, 56, 58, 71, 78] are <u>DENIED</u> in part, as most of Plaintiff's claims will be allowed to proceed, and <u>GRANTED</u> in part, only as follows: the § 1983 claim for malicious prosecution against the individual defendants is dismissed; the § 1983 claim for failure to intervene against the individual defendants is dismissed; the MCRA claim against Defendant City of Lynn is dismissed; any claim that Sevinor's pretrial identification was unduly suggestive is dismissed; and the individual defendants will not be held liable on the negligence claims so long as they cooperate with their employers in their defense.

**SO ORDERED.**

September 7, 2017                                              /s/ Allison D. Burroughs
                                                              ALLISON D. BURROUGHS
                                                              U.S. DISTRICT JUDGE

---

[14] Defendant City of Lynn advances two additional arguments. First, it asserts that the intentional tort claims against it are barred by the MTCA; Plaintiff concedes that his intentional tort claims lie only against the individual defendants and not against the City of Lynn. Second, the city asserts that the claims for *respondeat superior* and indemnification do not represent viable causes of action. Plaintiff concedes that *respondeat superior* is not a stand-alone claim, but asserts that the city may have agreed to indemnify its employees pursuant to the MTCA, <u>see</u> Mass. Gen. Laws ch. 258, § 13 (providing that any town that accepts that section must indemnify municipal officers). Plaintiff will be permitted to explore whether the city accepted the indemnification section during discovery.