## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ANGEL ECHAVARRIA,                )
                                 )        Case No. 16 C 11118 ADB
                    Plaintiff,   )
                                 )        Hon. Allison D. Burroughs,
         v.                      )        District Judge
                                 )
J. MICHAEL ROAD, *et al.*,       )
                                 )        JURY TRIAL DEMANDED
                    Defendants.  )
                                 )

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL THE CITY OF LYNN TO PRODUCE AN UNREDACTED COPY OF THE RODRIGUEZ MURDER INVESTIGATIVE FILE MARKED CONFIDENTIAL SUBJECT TO THE PROTECTIVE ORDER

Plaintiff, Angel Echavarria, through his attorneys Loevy & Loevy, under Federal Rule of Civil Procedure 26 and 37, respectfully submits this memorandum in support of his motion to compel Defendant City of Lynn to produce an unredacted copy of its complete investigative file for the Daniel Rodriguez murder, marked confidential under the protective order, because the entire investigative file is centrally relevant to Plaintiff's claims of fabrication of evidence, withholding of exculpatory evidence, and malicious prosecution, and without the file Plaintiff will suffer substantial prejudice in pursuing his claims. Plaintiff states in support as follows:

### INTRODUCTION

Plaintiff Angel Echavarria was a young man in 1994 when Defendants arrested and caused him to be prosecuted for a crime that he did not commit, the murder of Daniel Rodriguez. Mr. Echavarria did not regain his freedom for more than 21 years, when in 2015 his wrongful conviction was overturned and he was allowed to walk free as a middle-aged man. Plaintiff's wrongful conviction was not simply bad luck. Instead, Defendants framed him. They suppressed

evidence that showed that Plaintiff was not the culprit and that pointed to an alternate suspect who was identified by a key eyewitness and who had a recent history of criminal conduct that closely fit the crime. In addition, Defendants fabricated evidence that falsely tied Plaintiff to the murder and led to his wrongful conviction. Plaintiff pursues due process and malicious prosecution claims, among others, to remedy that injustice.

At the heart of those legal claims is the question whether Defendants gathered material information during their investigation that tended showed that Plaintiff was innocent, or that impeached the story of police and third-party witnesses who testified in Plaintiff's criminal case. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (police violate the Constitution when they suppress evidence that undermines confidence in the outcome of the criminal trial). And the evidence most important to proving that is the homicide investigative file for the murder of Daniel Rodriguez. This is why production of homicide files in wrongful conviction cases is routine— such files are the central exhibit at an ultimate trial of this type of case.

Yet in this case, Defendants refuse to provide Plaintiff with a complete and unredacted version of the Rodriguez investigative file. Defendants claim that three Massachusetts privacy statutes allow them to redact three categories of relevant evidence from the investigative file: (1) Criminal Offender Record Information ("CORI") (Mass. G.L. c. 6, § 167 *et seq*.); (2) domestic violence records privacy in performance of police duties (Mass. G.L. c. 41, §97D); and (3) records covered by a data privacy law (Mass. G.L. c. 93H, § 1, *et seq*.). Dkt. 133 at 1. As a result, Plaintiff has received an incomplete copy of the investigative file, with ample information blacked out based on these state laws.

By denying Plaintiff access to the complete investigative file, Defendants are repeating a similar injustice in this civil case to that which they inflicted on Plaintiff during his criminal proceedings: concealing evidence that Plaintiff needs to prove that he is in fact innocent and was framed by Defendants. Because there is no basis in the Federal Rules of Civil Procedure to deny Plaintiff this essential discovery, Plaintiff asks the Court to order Defendants to produce a complete and unredacted copy of the Rodriguez investigative file.

Plaintiff appreciates that the Court previously spent considerable effort reviewing the investigative file and overruling redactions that Defendants had made to documents in the file. *See* Exhibit A, Hearing Transcript; Dkt. 136. But the remaining redactions—individually and collectively—prevent Plaintiff from pursuing and presenting his case. Plaintiff can tell from the parts of the investigative file produced so far that Defendants possessed material evidence that was not turned over to Plaintiff or his criminal defense attorneys during the criminal trial. But without the complete file Plaintiff cannot fully evaluate and understand the evidence suppressed in the investigative file, and he is denied essential discovery into the witnesses and suspects to whom Defendants spoke during their investigation. In short, Plaintiff will suffer substantial prejudice if he is denied access to the evidence and documents that were developed by Defendants during the course of the Rodriguez murder investigation.

By contrast, Defendants have offered little justification for their redaction of this critical piece of evidence. There is no legitimate objection on the basis of relevance or burden—the documents are clearly relevant and the only burden that could possibly exist is in performing redactions, not omitting them. To Defendants' credit, they do not make relevance or burden objections. Instead, they rely on state laws as the basis for their redaction of these documents.

But there is no state law privilege that applies in this federal litigation that justifies redaction of this important evidence, and Defendants cannot meet their burden of establishing that such a privilege should apply. Moreover, even if there were some privilege that protected the homicide file from public dissemination, Plaintiff is willing to treat the homicide file as confidential under a protective order entered by the Court. Accordingly, there is no justification for the redactions.

Without a full review of the complete investigative file, Plaintiff will not be able to fully prove his claim that Defendants suppressed and fabricated evidence and maliciously prosecuted him for a crime he did not commit. The evidence is centrally relevant to the legal theories at issue in this civil case, and there is no legitimate justification for withholding it. This Court should overrule Defendants' objections and order production of the Rodriguez homicide file.

## BACKGROUND

On June 15, 2016, Plaintiff filed this lawsuit, alleging that Defendants engaged in constitutional violations that caused his 21-year wrongful imprisonment. Dkt. 1. Specifically, Plaintiff claims that Defendants both withheld exculpatory evidence from him and fabricated evidence against him. *Id*. at ¶¶2-6, 27, 30, 36-41, 48-50, 54-55, 67-71. Plaintiff identified specific allegations of withheld exculpatory evidence (specifically relating to another suspect Maurice Bonifacio) and fabricated witness identifications of Plaintiff. *Id*. Knowing that suppressing and fabricating evidence seldom happens in isolation (in Plaintiff's counsel's experience, the entire investigation gets tainted when law enforcement officers engage in constitutional misconduct), Plaintiff further alleges that Defendants "concealed and fabricated additional evidence that is not yet known to Plaintiff." *Id*. at ¶70.

On September 7, 2017, this Court issued a Memorandum and Order on Defendants' various motions to dismiss and ordered that the bulk of Plaintiff's claims could proceed, including his due process claims related to the fabrication and suppression of evidence, and his state-law claims of malicious prosecution. Dkt. 96.  On October 25, 2017, the Court issued a scheduling order that included, among other things, an order that the parties exchange disclosures under Federal Rule 26(a)(1) on or before November 7, 2017. Dkt. 121.

On or about November 15, 2017, Defendant City of Lynn sent Plaintiff a copy of its 459 page investigative file. Of those pages, 194 were either totally or heavily redacted. In addition, approximately 55 other pages contained partial redactions. *See* Dkt. 132 at 1. Plaintiff objected to Defendants that their failure to produce the investigative file in its entirety impaired Plaintiff's ability to pursue discovery related to his claims. *Id.* at 1-2. The parties conferred and were unable to resolve the dispute. *Id.* at 2.

On January 19, 2018, Plaintiff tendered to the Court a letter objecting entirely to any of Defendant City of Lynn's redactions to its investigative file. Dkt. 132. Plaintiff's position then, and now, is that only access to Defendant City of Lynn's entire investigative file will allow him to properly pursue discovery related to his claims. *Id*. On January 22, 2018, Defendant City of Lynn filed its own letter to the Court relating to the redaction issue. Dkt. 133. In that letter, Defendant City of Lynn argued in support of the redactions by citing to three state statutes. *Id*.

On February 8, 2018, this Court held a hearing on the issue. Dkt. 136. The Court did not issue a final ruling on the discoverability of the investigative file. *See* Ex. A, Hearing Transcript at 10:1-8. Instead, the Court made a provisional ruling based on proportionality. *Id*. That ruling

instructed that some of the redactions were to be removed, but it allowed Defendants to retain certain other redactions. *See* Ex. A, Hearing Transcript; Dkt. 136.

Specifically, this Court ruled that Defendants did not need to redact the following information in the investigative file: (1) criminal history documents obtained by Defendants for all witnesses except Daniel Rodriguez, Bonifacio, Bautista, Sevinor, and Torres; (2) names of additional potential witnesses (Bates 204-05, 248-50, 601); (3) addresses (Bates 204-05, 495, 601); (4) unknown account numbers (Bates 495, 513); (5) an immigration number (Bates 398); (6) fingerprint information (Bates 397); (7) an unknown number (Bates 397); (8) a 1994 credit card number (Bates 165); (9) dates of birth (Bates 145, 147, 151, 204-05, 221, 223-23, 229-30, 237, 242, 246-47, 271, 276, 291, 300-01, 349, 351, 397, 464-65, 479, 510, 531, 563, 570-71, 574, 601); (10) Social Security Numbers (Bates 151, 155, 177-80, 223-23, 237, 279, 351, 563); and (11) unknown additional redactions (Bates 334-35, 388, 480, 496, 545, 546, 594). Dkt. 136. Unlike the copy requested now, the revised redacted copy is non-confidential and could be filed on the public docket.

## DISCUSSION

Plaintiff is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Plaintiff's request for the entire investigative file meets those conditions for discoverability. The proportionality analysis considers "the importance of the issues at stake"; "the importance of the discovery in resolving the issues"; and the limited burden in producing the discovery. *Id.*

This case is about whether Plaintiff's most fundamental rights were violated. *See Miller v. Pate*, 386 U.S. 1, 7 (1967) ("[T]he Fourteenth Amendment cannot tolerate a state criminal

conviction obtained by the knowing use of false evidence."); *Napue v. Illinois*, 360 U.S. 264, 269

(1959) (due process is violated when "the State, although not soliciting false evidence, allows it

to go uncorrected when it appears") ; *Mooney v. Holohan*, 294 U.S. 103 (1935) (*per curiam*)

(due process is violated by contriving a conviction through the deliberate deception of the court

and jury by testimony known to be untrue); *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir.

2004) (internal citation omitted) ("[I]f any concept is fundamental to our American system of

justice, it is that those charged with upholding the law are prohibited from deliberately

fabricating evidence and framing individuals for crimes they did not commit. Actions taken in

contravention of this prohibition necessarily violate due process . . . ."). The Rodriguez homicide

file is one of the most important pieces of evidence bearing on whether Plaintiff's rights were

violated, and its central relevance to the claims in this case alone mandates production.

Production is particularly warranted given that there is no burden involved in producing

the file and no privilege that shields the file from production. Moreover, there is no conceivable

harm to any interest of any third-party referenced in the file, given that Plaintiff is willing to take

a copy of the file under the Court's protective order.

### A. The Investigative File is the One of the Most Important Pieces of Evidence Supporting Plaintiff's Claims

As in every civil case concerning a wrongful conviction, there is nothing more important

to Plaintiff's claims here than the file developed by the Defendants during their investigation of

the Daniel Rodriguez murder. That file contains the evidence known to and documented by

Defendants during their investigation. Their decisions about what to include or exclude in the

file, and in turn what to disclose to prosecutors and to the criminal defendant (Plaintiff) and his

attorneys, are directly relevant to Plaintiff's claims of fabrication or suppression of evidence and/or malicious prosecution.

### 1.   Proportionality and Relevance Standards Governing Discovery

Federal Rule of Civil Procedure 26 permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Relevant evidence is defined in Federal Rule of Evidence 401 as evidence having "any tendency" to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. "When a party resists the production of evidence, it 'bears the burden of establishing lack of relevancy or undue burden.'" *Yourga v. City of Northampton*, No. 16-30167-MGM, 2018 WL 1053533 at *2 (D. Mass. Feb. 26, 2018) (citations omitted).  Whether discovery is proportional to the needs of the case is determined by: (1) "the importance of the issues at stake"; (2) "the importance of the discovery in resolving the issues;" and (3) the burden in producing the discovery.  FED. R. CIV. P. 26(b)(1).

### 2.   Legal Standards Governing Plaintiff's Claims

At the center of all of Plaintiff's claims is the question of what investigative steps Defendants took, what information they developed in their investigation, and which of that information they recorded and disclosed in Plaintiff's criminal case. Questions about what alternative suspects they developed, what witnesses told them, and what leads they explored are of paramount importance to evaluating the legal claims in the case. The homicide file is the necessary starting point for every theory of liability that Plaintiff is pursuing.

In order to prevail in his due process claim against Defendants for fabricating evidence that led to his wrongful conviction, Plaintiff must establish that Defendants fabricated evidence

that was used to deprive him of his liberty. *Limone v. Condon*, 372 F.3d 39, 44–45 (1st

Cir.2004); *Williams v. City of Boston*, 771 F. Supp. 2d 190, 202 (D. Mass. 2011). Regarding

Plaintiff's suppression of exculpatory evidence claim, "deliberate concealment of material

evidence by the police, designed to grease the skids for false testimony and encourage wrongful

conviction, unarguably implicates a defendant's due process rights." *Haley v. City of Boston*, 657

F.3d 39, 49 (1st Cir. 2011) (citations omitted). Finally, regarding his malicious prosecution

claims, Plaintiff must prove: "(1) the institution of criminal process against the plaintiff with

malice, (2) without probable cause, and (3) the termination of the criminal proceeding in favor of

the plaintiff." *Echavarria v. Roach*, No. 16-cv-11118, 2017 WL 3928270 at *11 (D. Mass. Sep.

7, 2017) (quoting *Gutierrez v. Mass. Bay Transp. Auth.*, 772 N.E.2d 552, 561 (Mass. 2002)).

### 3. The Homicide Investigative File Is Always Important to Theories of Liability In A Wrongful Conviction Case

For any claim that is premised on the fabrication or suppression of evidence, or the

institution of criminal charges without probable cause, the complete investigative file invariably

contains crucial evidence. For a plaintiff in a case like this, it is crucial to know what information

investigators knew at the time they investigated the crime and in the lead up to Plaintiff's

criminal trial. And because memories fade after more than 20 years, the homicide file is the best

source of contemporaneous details about the crime and its investigation. Those details are key

because wrongful conviction cases always have an "official" story of the investigation, and

Plaintiff's claims are always about poking holes in that official story and revealing the true

history of the investigation. Small details can make a big difference in proving that some events

never occurred, and that other events were wiped from the official record. Something as minor as

a scribbled down date of birth or address could be a clue as to whether a person was a witness or

a suspect, which in turn could be crucial evidence of, for example, suppression of an alternate

suspect or a lack of probable cause. The point is, the homicide file—and the details it holds—are

highly relevant to each one of Plaintiff's constitutional claims.

### a.  Importance to Suppression Theories

For suppression claims, the investigative file routinely reveals evidence that was

suppressed by investigators. The investigative file is the record of the information that was

gathered during the investigation. Anything developed in that file prior to the conviction that was

not turned over to Plaintiff, his lawyers, or prosecutors is potential *Brady* material. Accordingly,

a plaintiff must be able to compare the complete contents of the investigative file to the

information turned over to Plaintiff and his criminal defense attorneys. In addition, materials in

the investigative file are used to show what information prosecutors received from the police

Defendants about particular suspects or witnesses. Moreover, materials in the investigative file

can be used to demonstrate the importance of other pieces of evidence that either were or were

not disclosed in the criminal case, showing whether that evidence was material to the criminal

proceedings.

### b.  Importance to Fabrication and Suggestive Lineup Theories

Similarly, the investigative file may contain proof that investigators fabricated false

evidence, including false eyewitness identifications obtained through the use of unduly

suggestive lineup procedures. For example, evidence in the file may show that investigators

knew that another suspect who was not Plaintiff was the likely killer. It may show that

Defendants set their sights on Plaintiff instead of the likely killer and provide reasons why they

did so. Evidence in the file might also contradict official reports that investigators wrote

identifying how they came to focus on the wrongly convicted Plaintiff. For example, evidence in the file may suggest that Defendants had settled on Plaintiff as their suspect before any eyewitness ever identified Plaintiff as the perpetrator. Moreover, small details in the file—when and where certain events took place and who was present—are important evidence that can be used to establish these theories.

### c. Importance to Malicious Prosecution Theories

The investigative file can also contain proof supporting a claim that investigators maliciously prosecuted Plaintiff. Proving malicious prosecution requires evidence that criminal proceedings were instituted or continued without probable cause. The information available to investigators at the time of the investigation is critical to determine whether they had probable cause—from the perspective of a reasonable officer—to suspect that Plaintiff had committed the crime. Moreover, evidence from the investigative file is relevant to whether police made efforts to institute or continue criminal proceedings against the plaintiff, another element of probable cause. In addition, the investigative file may bear on whether the Defendants acted with malice in framing Plaintiff.

### d. The Homicide File Is A Central Piece of Evidence In Every Civil Wrongful Conviction Case Litigated In the United States

The fact that the homicide file is essential evidence supporting all of the theories at issue in this case is the reason that wrongful conviction cases across the country revolve around what is in the police defendants' homicide file. *See, e.g.*, *Haley v. City of Boston*, 657 F.3d 39, 45 (1st Cir. 2011) (discussing importance of police investigative file to wrongful conviction case); *Jones v. City of Chicago*, 856 F.2d 985, 991 (7th Cir. 1988) (same); *Fields v. City of Chicago*, No. 10 C 1168, 2017 WL 4553411, at *2-3 (N.D. Ill. Oct. 12, 2017) (discussing a suppressed investigative

file containing exculpatory evidence that was central evidence presented at trial in wrongful

conviction case); *Kluppelberg v. Burge*, No. 13 C 03963, 2017 WL 3142757, at *3, 7 (N.D. Ill.

July 25, 2017) (discussing a suppressed investigative file containing exculpatory evidence that

was central evidence at summary judgment in wrongful conviction case).

This case is no different. Indeed, the point is not theoretical. Plaintiff has had a chance to

review the less-redacted version of the homicide file Defendants were ordered to produce; in it,

Plaintiff has found crucial evidence in support of her theories. This includes seemingly

innocuous scribbles on a page that reveal important information about what Defendants knew

and when, and that contradict the official version of events told by the police at Plaintiff's trial,

supporting Plaintiff's fabrication and malicious prosecution claims. Moreover, these and other

documents contained in the investigative file do not appear to have been produced to Plaintiff or

his counsel, supporting his suppression claim. Plaintiff has every reason to believe that the

remaining redacted information could contain additional crucial evidence.

In sum, in a civil rights case like this one that alleges fabrication or suppression of

evidence and/or malicious prosecution, the complete investigative file is typically produced as a

matter of course as all sides acknowledge that it is fundamentally relevant evidence. Plaintiff is

unable to locate a single case where a defendant's refusal to produce the complete investigative

file in a case like this has been blessed by a court.

### 4. Materials That Remain Redacted Are Essential to Plaintiff's Theories and His Ability to Investigate Those Theories

Plaintiff needs all of the information contained in the investigative file to understand the

full context and significance of Defendants' investigative activities and the reports that they

generated during their investigation, including the particular notes that they wrote, criminal

histories that they obtained, and leads that they were provided and followed. Without a full view

of the investigation, Plaintiff will be hampered in fully understanding both the shape and scope

of the investigation, and Defendants' actions to focus that investigation on Plaintiff. This will

cause extreme prejudice to Plaintiff's ability to prove the claims he is asserting in this lawsuit.

An unredacted copy of the file is also crucially important to Plaintiff's ability to conduct

discovery. Defendants have already claimed in responses to Plaintiff's interrogatories that they

lack all but the most basic memory of their investigation. As a result, details about the

investigation found in the investigative file are crucial evidence in place of Defendants'

memories and crucial evidence to refresh their recollections. In addition, this evidence will be

important in the investigation of third-party witnesses and discussions with those witnesses.

The presence of redactions on any document will result in inefficiency and prejudice

Plaintiff's ability to take depositions. Indeed, in counsel's experience, redactions can serve as an

excuse for evasive or qualified answers about the exhibit's contents. Indeed, the presence of

redactions may also allow Defendants to claim memories that are selective and self-serving.

As a practical matter, Defendants have one-sided access to a complete version of the

investigative file. To allow Defendants full access to the investigative file while denying the

same access to Plaintiff gives then an unfair information advantage that is anathema to the spirit

of the discovery procedures set forth in the Federal Rules.

Finally, the current redactions to the investigative file will hamper Plaintiff's efforts to

develop evidence. Plaintiff intends to locate and interview all persons identified during

Defendants' investigation of the Rodriguez homicide and to determine the accuracy and

completeness of Defendants' documentation, which is relevant to Plaintiff's theories of

fabrication, suppression, and malicious prosecution. It is common in wrongful conviction cases that a witness who does not appear important on the face of documents in the investigative file actually provided Defendants with critical information, which was either not documented or was recorded improperly. In addition, a criminal history in the file might point to an individual who was actually a suspect, but who Defendants' official version of the investigation treated as a witness. Thus, the identity of every person included in the investigative file is important to Plaintiff, as is information that will help to locate those witnesses. All of this investigation is critical to proving the theories of liability discussed above.

**B.  No Privilege Shields the Investigative File from Discovery**

The only reason that Defendants have given for refusing to produce a complete copy of the homicide file is that state-law privileges protect certain information in that file from disclosure. Dkt. 133, at 3-6. But state law privileges do not apply in federal litigation, and Defendants cannot meet their burden of identifying any privilege that applies here. Moreover, to the extent that there is any concern about the confidentiality of these documents, Plaintiff is willing to accept those documents pursuant to a protective order. In other words, once subjected to a protective order entered by the Court, the documents could not be disclosed publicly without first seeking permission to do so.

In a federal question case like this one, federal privilege law controls the question of privilege, not state privilege rules. *See* FED. R. EVID. 501 ("The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege."); *Gargiulo v. Baystate Health, Inc.*, 826 F. Supp. 2d 323, 325 (D. Mass. 2011); *Krolikowski v. Univ. of Massachusetts*, 150 F. Supp. 2d 246, 248 (D. Mass. 2001) ("In a federal question case

where the court is also hearing state law claims pursuant to supplemental jurisdiction, federal privilege law governs the claims in the action."); *cf. Bliss v. Fisher*, 743 F. Supp. 2d 25, 28 (D. Mass. 2010) (stating that, even if state law would recognize a privilege, "the Court must also determine whether the privilege is intrinsically meritorious in the Court's independent judgment" in order to apply that privilege in the federal case) (citing *In re Hampers*, 651 F.2d 19, 22 (1st Cir. 1981))). There is therefore no legitimate basis to withhold production of the homicide file in this federal litigation based on a state-law privilege, and the motion can be resolved on this basis alone.

Although federal courts can consider whether to allow the invocation of a state-law privilege in federal litigation, the burden of establishing "an applicable privilege rests with the party resisting discovery." *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000). It is important, then, that Defendants have not identified any state-law privilege that might shield the homicide file from disclosure in federal litigation. Instead, Defendants cite three Massachusetts privacy laws in support of their redaction of information in the homicide file related to: (1) criminal histories; (2) personal information; and (3) domestic violence information. But Defendants have not cited any decision—state or federal—that applies these state statues as a bar to discovery in civil litigation. In fact, at least one other judge in this District has concluded that one of the privileges the CORI statute on which Defendants rely does not create a privilege barring discovery. *See Harden v. Boston Scientific Corp.*, No. 15-cv-11503, 2017 WL 1396009, at *1 n.1 (D. Mass. April 18, 2017) ("Even accepting that a privilege may be created by statute, nothing in the CORI statute purports to protect CORI records from disclosure as privileged . . . . On the contrary, the very purpose of the CORI statutes (and accompanying CMRs) appears to be

to set out the mechanism by which members of the public may obtain an individual's

CORI.").Defendants have not met their burden of establishing that state law applies in this

federal litigation to justify the redactions they have made, and for that reason as well the Court

should overrule their objection to producing an unredacted file.

Even if this Court were to entertain Defendants' invitation to apply state statutes for the

first time as privileges barring discovery of essential evidence in a federal civil rights suit,

Defendants' arguments for applying those statutes in this case fail. When assessing whether a

state privilege should apply in federal litigation, a court must first determine if the state

recognizes the asserted privilege. *Gargiulo v. Baystate Health, Inc.*, 826 F. Supp. at 326; *Bliss v.*

*Fisher*, 743 F. Supp. 2d 25, 28 (D. Mass. 2010) (citing *In re Hampers*, 651 F.2d 19, 22 (1st Cir.

1981)). Only if so will the court next determine if the asserted privilege is so "intrinsically

meritorious" that it should be adopted in federal litigation. *Id.*; *Bliss,* 743 F. Supp. 2d at 22-23.

Defendants cannot satisfy either requirement with respect to the state laws they have invoked.

Regarding the first requirement, Defendants have identified no authority that establishes

that these privacy laws rise to the level of a privilege. In fact, authority from Massachusetts

courts supports the conclusion that these are not privileges at all. Massachusetts courts maintain

a "consistent reluctance to create common law privileges." *Babets v. Secretary of Executive*

*Office of Human Services*, 403 Mass. 230, 238, 526 N.E.2d 1261, 1266 (1988); *see also In re*

*Grand Jury Subpoena*, 430 Mass. 590, 592-93, 722 N.E. 2d 450, 452-453 (2000). Consistent

with that reluctance, Massachusetts courts have not any of the three statutes cited by Defendants

as creating a privilege. Instead, these statutes merely restrict public access to information. *Cf.*

*Green v. Fulton*, 157 F.R.D. 136, 140 (D. Me. 1994) (state statutes may confer a confidential

status on records, but that is not the same as creating an evidentiary privilege shielding the records in judicial proceedings).

In particular, the CORI statute governs how criminal histories may be disseminated. Mass. G.L. c. 6, § 172 *et. seq*. It does not create a privilege, but instead creates an exception to the public records law—an exception that is construed narrowly. *Globe Newspaper Co. v. District Attorney for Middle Dist.*, 439 Mass. 374, 384, 788 N.E.2d 513, 520 (2003) (citing *General Elec. Co. v. Department of Envtl. Protection*, 429 Mass. 798, 801–802, 711 N.E.2d 589 (1999); *Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co.*, 414 Mass. 609, 614, 609 N.E.2d 460 (1993)). Accordingly, Massachusetts courts allow discovery of CORI material in litigation. *See Estate of Strong v. American Drug* Stores, Inc., 14 Mass.L.Rptr. 353, 2002 WL 221028 at *1 (Mass. Super. Ct., Feb. 6, 2002).

Similarly, the domestic violence record privacy law simply mandates that records be retained by police departments to ensure that they will not be made public. Mass. G.L. c. 41, §97D. Again, Massachusetts courts have determined that the domestic violence privacy law does not create a privilege shielding evidence from discovery in a civil case. *See Doe v. Lyons*, 6 Mass.L.Rptr. 274, 1996 WL 751531 at *3 (Mass. Super. Ct., Dec. 23, 1996).

Finally, that Massachusetts data privacy law is designed to prevent public security breaches of customers' private data held by owners or licensees of personal data. Mass. G.L. c. 93H, § 1 *et seq*. There is no legal authority suggesting this law creates a privilege in civil discovery. In fact, that law is so broadly written that, if it were elevated to the status of a discovery privilege, it would shield any business or person from ever disclosing data of any kind.

Defendants have not pointed to any authority supporting the view that these state statutes create privileges in any litigation, let alone federal litigation. They therefore fail on the first part of the inquiry, and there is no reason to consider whether a state privilege should by applied in federal court. Moreover, even if Defendants could find authority supporting that these state privacy laws establish privileges applied in civil litigation in state court, they cannot establish that the privilege is so "intrinsically meritorious" that it should be adopted by the federal courts. *See Gargiulo*, 826 F. Supp. 2d at 326; *Bliss*, 743 F. Supp. 2d at 28-29. To evaluate the intrinsic merits of a privilege, a court looks at: (1) "whether the communications originate in a confidence that they will not be disclosed"; (2) "whether this element of confidentiality is essential to the full and satisfactory maintenance of the relation between the parties"; (3) whether "such a relationship . . . is a vital one, which ought to be sedulously fostered"; and (4) "whether the injury that would inure to the relation by the disclosure of the communications would be greater than the benefit thereby gained for the correct disposal of litigation." *Gargiulo*, 826 F. Supp. 2d at 326-27 *Bliss*, 743 F. Supp. 2d at 29 (citing *Hampers*, 651 F.2d at 23). "These factors need not be applied in order and, if the court answers in favor of the party seeking disclosure on any one of these factors, the privilege is not recognized." *Gargiulo*, 826 F. Supp. 2d at 327.

In fact, none of these factors applies and justifies a finding that the state statutes cited by Defendants create an "intrinsically meritorious" privilege. Not one of the cited privacy laws relates at all to any type of relationship for which a privilege would protect important communications. In addition, there is nothing about witness criminal histories, for example, that "originates in a confidence" or "is essential to the full and satisfactory maintenance of the relation between the parties." Likewise, the final factor strongly weighs against application of

state statutes here: any potential injury from disclosure is far outweighed by the benefit of

production of evidence that is highly relevant, for all of the reasons discussed above. As a result,

Defendants cannot meet either part of the test for determining whether state privilege should

apply in federal court. Accordingly, the laws cited by Defendants do not guard against

production of the Rodriguez investigative file.

### C.  Any Concerns About Confidentiality Can Be Addressed by Producing the File Under Protective Order

To the extent there is any merit to Defendants' reliance on state privacy laws to justify

their redaction of highly relevant documents, Plaintiff will agree to accept those documents

pursuant to a protective order. If the documents were produced pursuant to a protective order,

there would be no danger on any disclosure that could arguably run afoul of state law.

Production of the documents pursuant to a protective order is therefore sufficient to address any

privacy concern Defendants might have.[1]

### D.  There is no Burden To Produce the Unredacted Investigative File

One final note is important in evaluating the merit of Plaintiff's request: there is no

burden at all on Defendants in producing the unredacted investigative file. In fact, it will be

easier for Defendant to simply produce a clean copy of the investigative file than to redact it.

Plaintiff's request is further supported by the local rules, which dictate that discovery be

timely, expedient, and cost effective. Local Rules 26.1 and 26.2. Obtaining a clean copy of the

investigative file will reduce ongoing uncertainty and disputes about the information contained

---

[1] To be clear, this is not a concession that the documents are in fact confidential information, or that they should remain confidential throughout the discovery and trial of this case. A protective order would contain a procedure for challenging the designation of documents as confidential in an orderly fashion, which Plaintiff could invoke if and when there was a justification for doing so.

within the investigative file. It will also ensure that depositions and further discovery is

expeditious because it will eliminate inquiries and uncertainty about the contents of the

investigative file.

## CONCLUSION

For all of the reasons above, Plaintiff respectfully requests that the Court order

Defendants to produce an unredacted copy of the complete and unredacted Rodriguez homicide

file under the Court's protective order.

Dated: April 19, 2018

RESPECTFULLY SUBMITTED,

ANGEL ECHAVARRIA

By: /s/ Mark Loevy-Reyes
*One of Plaintiff's Attorneys*

*Attorneys for Plaintiff*
Arthur Loevy*
Jon Loevy*
Debra Loevy
Mark Loevy-Reyes*
Steven Art*
LOEVY & LOEVY
311 N. Aberdeen St.
Third Floor
Chicago, IL 60607
(312) 243-5900
*Admitted *pro hac vice*

<u>CERTIFICATE OF SERVICE</u>

I, Anand Swaminathan, an attorney, hereby certify that on April 19, 2018, I filed the

foregoing Memorandum in Support of Plaintiff's Motion to Compel the City of Lynn to Produce

an Unredacted Copy of the Rodriguez Murder Investigative File Marked Confidential Subject to

the Protective Order using the Court's CM/ECF system, which effected service on all counsel of

record.

/s/ Anand Swaminathan
*One of Plaintiff's Attorneys*