**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ANGEL ECHAVARRIA, | ) | |
| | ) | Case No. 16 C 11118-ADB |
| *Plaintiff,* | ) | |
| | ) | Hon. Allison D. Burroughs, |
| *v.* | ) | District Judge |
| | ) | |
| J. MICHAEL ROACH, *et al.*, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendants.* | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT CITY OF LYNN'S MOTION TO COMPEL**

Plaintiff, ANGEL ECHAVARRIA, by his attorneys, responds in opposition to Defendant City of Lynn's Letter Motion to Compel (Doc. No. 157), stating as follows:

## INTRODUCTION

This case concerns Plaintiff's 22-year wrongful incarceration for a crime he did not commit. Complaint, Doc. No. 1. Plaintiff alleges his conviction was caused by the investigative misconduct of the police officer Defendants, who fabricated evidence used in his criminal case, manipulated identification procedures, and suppressed exculpatory evidence with which Plaintiff could have proven his innocence, all in violation of Plaintiff's rights. *See id.*

During Plaintiff's decades-long quest for freedom, he was represented by a number of attorneys through a criminal trial (in which he was tried along with a co-defendant), direct appeals, and post-conviction proceedings. Plaintiff sought and received the assistance of various innocence projects in his fight to overturn his wrongful conviction. Throughout, Plaintiff and his attorneys shared information, they litigated whether Plaintiff's conviction could stand, and they investigated the case, at times with the assistance of investigators. The sole focus of all of this communication, litigation, and investigation was Plaintiff's legal case to prove his innocence, and the representation of Plaintiff in the proceedings that ultimately led to his exoneration.

After producing thousands of pages of documents on a rolling basis so far in this litigation, Plaintiff has properly withheld on the basis of privilege a set of documents from his criminal and post-conviction proceedings, providing a detailed privilege log explaining what materials have been withheld and the reasons why. Defendants now move to compel production of an undefined portion of those privileged documents, arguing in conclusory terms that some of the categories of documents appearing on Plaintiff's privilege log are not privileged. For the most part, Defendants incorrect. Well-established privileges protect these attorney-client

communications and work product from disclosure. And, with one exception, Defendants do not develop any argument, beyond their own say-so, to explain why these well-established protections should yield. Indeed, much of their motion demands the production of categories of quintessentially privileged documents without citing case law, without identifying which documents they think are not covered by privilege, and without explaining what compelling need Defendants have to discover the privileged information.

Defendants' motion to compel should be denied as moot and because it lacks merit. With respect to mootness, Plaintiff has made an important concession since the motion was filed. Namely, because this case concerns claims that Defendants violated *Brady* when they hid evidence from Plaintiff's attorneys during his criminal trial, Plaintiff has agreed to waive the attorney-client privilege with his original criminal defense attorney, Charles Robson. In light of that waiver, Plaintiff has already produced documents reflecting communications between Plaintiff and Robson, as well as between Robson and his other attorneys. With respect to the merits, the remainder of the documents Plaintiff has withheld are plainly privileged, and Defendants arguments otherwise lack merit.

## RELEVANT BACKGROUND

### A.    Plaintiff's Criminal and Post-Conviction Proceedings

Plaintiff was wrongly convicted for the January 7, 1994 murder of Daniel Rodriguez in Lynn, Massachusetts. Doc. No. 1 ¶ 1. His conviction was based on the purported identifications of two supposed eyewitnesses—Isidoro Rodriguez (brother of the victim) and Gary Sevinor— and the testimony of certain Defendants who investigated the case. *Id.* ¶¶ 24-55. Plaintiff and his friend Juan Rodriguez were accused of the murder and were tried together. *Id.* ¶ 53.

After a jury trial in January 1996, Plaintiff was convicted of the Rodriguez murder. *Id.* The trial judge acquitted Juan Rodriguez after the verdict. *Id.* During trial, Robson represented Plaintiff, and Juan Rodriguez had separate counsel. Plaintiff's representation by Robson started with his arrest on January 17, 1994, and continued until March 1996, when Robson filed notice of appeal and withdrew. *See* Ex. 1. Attorney Robert Carnes was appointed by the Committee for Public Counsel Services (CPCS) to represent Plaintiff in his direct appeal. In December 1998, Plaintiff's conviction was affirmed. *Comm. v. Echavarria*, 703 N.E.2d 1137 (Mass. 1998).

Between then and 2005, Plaintiff corresponded with innocence projects, seeking post-conviction representation and assistance investigating claims that he had been wrongly convicted. Some of these projects investigated Plaintiff's claims, including the New England Innocence Project, the Justice Brandeis Law Project of the Schuster Institute at Brandeis University, and CPCS. As is the case with many individuals wrongly convicted of crimes they did not commit, it took time for advocates to take up Plaintiff's post-conviction case in earnest.

In 2005, the Justice Brandeis Law Project took Plaintiff's case. The Justice Brandeis Law Project reached out to CPCS to partner on the matter, and after review by assigned CPCS attorney Charles Stephenson in 2006, CPCS determined it would join in representing Plaintiff. Attorney Leslie O'Brien was appointed to lead the post-conviction litigation, appearing in the case in 2008. She and personnel with the Justice Brandeis Law Project worked together to investigate Plaintiff's post-conviction claims, and attorney O'Brien filed a number of motions for post-conviction relief between 2009 and 2015. Ex. 2.

As a result of these efforts, a post-conviction hearing was held in December 2014. On April 30, 2015, the Superior Court granted Plaintiff a new trial. On June 15, the Commonwealth dropped the charges against Plaintiff, and he was released. This civil case followed.

**B.**      **Plaintiff's Civil Claims**

Plaintiff claims Defendants violated his constitutional rights and Massachusetts law when they framed him for murder, causing his wrongful conviction and 22-year imprisonment. Doc. No. 1 ¶¶ 1-9, 24-55. Among other things, Plaintiff contends Defendants fabricated evidence and conducted unduly suggestive identification procedures to create false evidence implicating him in the crime; and they suppressed exculpatory and impeachment evidence, which could have been used to prove Plaintiff's innocence at his original criminal trial. *Id.* ¶¶ 65-133.

Specifically, Plaintiff alleges that Defendants fabricated identifications from Isidoro Rodriguez and Gary Sevinor implicating him in the crime, when in fact neither witness had seen Plaintiff at the crime scene, and Defendants knew full well that their purported identifications were false. In addition, Plaintiff alleges that Defendants manipulated the photo identification procedures used with Isidoro and Sevinor to ensure Plaintiff would be selected. *Id.* ¶¶ 24-55.

Perhaps most importantly for present purposes, Plaintiff alleges that Defendants suppressed investigative information that Plaintiff could have used to prove his innocence. Among things, they suppressed that Isidoro had unequivocally selected a different person named Mariano Bonifacio as the perpetrator during an identification procedure immediately after the crime. They also suppressed that they had arrested and charged Bonifacio with attempt murder two months earlier after a similar shooting less than a half mile away. And they suppressed information they received from an informant exonerating Plaintiff. None of this evidence was turned over to Plaintiff, his criminal defense attorney, or state prosecutors at the time of Plaintiff's criminal trial. Had it been, Plaintiff could have effectively cross-examined the witnesses who implicated him, and he would never have been convicted. *Id.* ¶¶ 1-9, 24-55.

4

**C.      Document Productions in This Case and Assertions of Privilege**

So far in this litigation, Plaintiff has produced just over 10,000 pages of documents that were in his possession or that have been obtained from third-parties. He has produced them on a rolling basis, starting with his initial disclosures and continuing since. Those documents were produced to Defendants as they were stored by Plaintiff and by third parties. The vast majority of them came from the files of Plaintiff's post-conviction attorneys.

A portion of the documents have been withheld as privileged,[1] and Plaintiff has included those documents on a privilege log, providing updated logs as necessary.[2] Plaintiff's privilege log describes each document or set of documents withheld, the number of pages, the date of the document, and the basis for the privilege assertion.[3] The log contains documents that fall into the following categories:

1.  Correspondence between Plaintiff's and his attorneys and investigators, including investigators from the Justice Brandeis Law Project, Ex. 4, Lines 1-10, 83-85, 92, 99-100, 117, 157-159, 162-164, 168-173;
2.  Correspondence among Plaintiff's post-conviction attorneys and investigators, *id.*, Lines 17-18, 22, 26-28, 31-32, 46-47, 81, 127;
3.  Work product obtained from Plaintiff's post-conviction attorneys and investigators, *id.*, Lines 1-16, 19-21, 23-25, 33-41, 43-45, 48-50, 52-53, 73-78, 80, 82, 124-127, 128-132, 133-136, 139-152, 155-156;
4.  Correspondence between Plaintiff and innocence organizations from whom Plaintiff sought representation, *id.*, Lines 86-89, 91, 93, 95, 101, 108-09, 113-115, 118, 138, 153, 160-161, 165-167;
5.  Correspondence between innocence organizations from whom Plaintiff sought representation and Plaintiff's attorneys and investigators, *id.*, Lines 42, 96, 98, 103, 110, 111, 116;
6.  Work product provided by innocence organizations from whom Plaintiff sought representation to Plaintiff's post-conviction attorneys and investigators, *id.*, Lines 90, 94, 97, 102, 103-107, 112, 119-122, 154; and
7.  Work product and attorney-client communications provided by Plaintiff's co-defendant Juan Rodriguez's attorneys and investigator to Plaintiff's post-conviction attorneys and investigators, and correspondence relating to that work-product, *id.*, Lines 51, 54-72, 79, 123, 137.

---

[1] Defendants' motion refers to "162 documents" withheld on the basis of privilege. Doc. No. 157 at 1. To be clear, there are 173 entries on Plaintiff's privilege log, encompassing approximately 900 pages. Ex. 4.

[2] The log included with Defendants' motion is the September 11 log. Doc. 157 at 14-22. Since then, Plaintiff provided an updated log on November 27, Ex. 3; and another on December 3, Ex. 4. The December 3 log simply adds line numbers to the November 27 log, and it is the December 3 log to which Plaintiff refers here.

[3] Not logged are communications between Plaintiff and his current civil counsel and work product created since the filing of this civil suit, which Plaintiff understands the parties have agreed are privileged.

Plaintiff's privilege log previously included a limited number of documents reflecting correspondence between Plaintiff and Robson, as well as correspondence between Robson and Plaintiff's other attorneys. Doc. 157 at 14-22; Ex. 5 (highlighting items that have been removed from the September 11 privilege log and produced). Plaintiff has since waived privilege over those communications; he has removed those items from his log; and he has produced them.

## ARGUMENT

Defendants assert that Plaintiff's responses to their requests for production are deficient; that his privilege log is insufficiently detailed; and that there is no privilege protecting many of the documents appearing on Plaintiff's privilege log. Defendants contend that some of the categories of documents Plaintiff has withheld should be produced, though they are vague about which documents in particular they are talking about and their legal basis to dispute that the documents are privileged. Regardless, the only potentially discoverable attorney-client communications and work-product have already been produced following Plaintiff's wavier of privilege relating to Robson, and Defendants' remaining arguments lack merit.

**A.      Plaintiff's Response to Requests for Production Complies with the Rules**

Defendants first assert that Plaintiff's response to their requests for production is deficient because Plaintiff has not provided Defendants with an index of documents produced. Doc. No. 157 at 3-4. There is no such requirement to create an index in the Federal or Local Rules, and the Defendants' cite no legal support for their argument.

Defendants' argument misunderstands what is required under Rule 34. Plaintiff has produced all of the documents he has yet been able to locate, and he has produced them as they were stored. That is all the Rule requires. FED. R. CIV. P. 34(b)(2)(E)(i) ("A party must produce

documents as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request.") (emphasis added).

Indeed, Defendants themselves have not created any kind of "index" to the documents they have produced. (Moreover, some Defendants have not even provided documents or written responses to requests for production, despite repeated requests.) Instead, Defendant City of Lynn has produced heavily redacted files, without explaining what documents are in the files, and without a log of the reasons for the complete redaction of the majority of pages. Many of these files are simply unreadable. Defendants cannot ask Plaintiff to take a different approach when they have refused to even engage in the process themselves.

Defendants include two specific complaints about Plaintiff's document responses in this section of their motion, and both illustrate that their arguments lack merit. First, they contend that Plaintiff has not identified which documents were in his criminal defense attorney's file at the time of his criminal trial. Doc. No. 157 at 3-4. But, as Defendants know from conferring with Plaintiff and Robson, Robson does not possess his file as it existed at that time. Plaintiff and Defendants are working to identify what documents were in that file, and they will no doubt conduct depositions and answer other discovery that will bear on that issue. Indeed, the information that Defendants seek—an answer about what documents were in a particular file at a particular moment in time—is properly the subject of interrogatories and depositions, and not a request for production. As things stand, Plaintiff has produced all documents in his possession that might have been in that file, and he has responded to the request for production accordingly.

Second, Defendants state that Plaintiff has hidden the ball on what documents are responsive to their request for Plaintiff's presentment letters. Doc. No. 157. This is a puzzling complaint, given that Defendants were served the presentment letters directly, and because

Plaintiff produced those documents again in this litigation, by themselves, with an email that identified the bates range of those particular documents. Ex. 6. Plaintiff's responses to Defendants' document requests comply with Rule 34, and Defendants' motion requiring Plaintiff to index his production for them should be denied.

## B.   Plaintiff's Privilege Log Is Detailed and Proper

Defendants next submit that Plaintiff's privilege log does not contain sufficient detail. Doc. No. 157 at 4. Again, they do not articulate what failings Plaintiff's log contains or how those failings purportedly prevent them from challenging Plaintiff's privilege assertions. And for good reason: For each entry on his log, Plaintiff has described the document, including identifying the author, sender and/or recipient when possible, the date on which the document was created, the number of pages of the document, and the privilege asserted.

The Rules require nothing more. *See Clark v. Edison*, 2010 WL 3245428, at *3 (D. Mass. Aug. 16, 2010) ("The detail included in the privilege log must be sufficient to judge whether the undisclosed documents satisfy each element required for protection under the work product doctrine. *In re Grand Jury Subpoena,* 274 F.3d 563, 575-76 (1st Cir. 2001). Generally, a party does not need to provide information concerning the type, date, and author of a document where such information is obvious from the document's title."); *Stamps v. Framingham*, 38 F. Supp. 3d 134, 142 (D. Mass. 2014) ("However, '[p]rivilege logs do not need to be precise to the point of pedantry . . . Rule 45(d)(2) [requires] a party who asserts a claim of privilege to do the best that he reasonably can to describe the materials to which his claim adheres.'") (quoting *In re Grand Jury Subpoena*, 274 F.3d at 576)); *see also* FED. R. CIV. P. 26(b)(5)(A), advisory committee notes to the 1993 amendments (permitting the use of categorical logs).

On the contrary, were Plaintiff required to provide additional detail, he would risk a waiver of the very privilege he is seeking to protect. To that end, Rule 26 is clear that it does not require a privilege log to be so detailed that it "reveal[s] information itself privileged or protected." FED. R. CIV. P. 26(b)(5)(A)(ii). For example, in line 57, Plaintiff described the withheld document as: "Investigator notes re case investigation, including with client Juan Rodriguez." Ex. 5, Line 57. If Plaintiff were to further elucidate the subject matter of this document, he would be forced to delve into what Rodriguez said—such information has long been held to be privileged. *Gerber v. Down E. Community Hosp.*, 266 F.R.D. 29, 32 (D. Me. 2010) ("Plaintiffs' own notes of their investigations or interviews fall within the privilege.").

## C.   Defendants' Arguments for Waiver of the Attorney-Client Privilege Are Moot and Otherwise Lack Merit

Defendants raise a limited challenge to Plaintiff's assertion of attorney-client privilege. Doc. No. 157 at 5-6. "The attorney-client privilege protects communications made in confidence by a client to his attorney." *In re Grand Jury Subpoena*, 274 F.3d at 571. "The attorney-client privilege is well-established and its present rationale straightforward: by safeguarding communications between lawyer and client, it encourages disclosures by client to lawyer that better enable the client to conform his conduct to the requirements of the law and to present legitimate claims or defenses when litigation arises." *U.S. v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 389-90 (1981)). Communications between client and investigators working with Plaintiff's attorneys fall within the privilege. *See*, *e.g.*, *U.S. v. McPartlin*, 595 F.2d 1321, 1337 (7th Cir. 1979); *see also In re Grand Jury Proceedings*, 786 F.2d 3, 7 n. 4 (1st Cir. 1986) (citing *U.S. v. Kovel*, 296 F.2d 918 (2d Cir. 1961)); 24 Wright & Miller, Fed. Prac. & Proc. Evid. § 5491. In addition, the privilege covers communications between Plaintiff and attorneys from whom he sought representation.

9

*Fornaro v. Gannon*, 124 F. App'x 8, 13 (1st Cir. 2004) ("[A]n attorney's fiduciary duties may be triggered by an initial consultation even if employment does not result.") (citing *Westinghouse Electric v. Kerr-McGee*, 580 F.2d 1311 (7th Cir. 1978)); *Connelly v. Dun & Bradstreet, Inc.*, 96 F.R.D. 339, 342 (D. Mass. 1982); 24 Wright & Miller, Fed. Prac. & Proc. Evid. § 5474. The privilege is not disturbed by Plaintiff's decision to share his prior privileged communications with his attorneys in this case, and Defendants do not argue otherwise.

Instead, Defendants argue that Plaintiff has waived privilege in his communications with Robson because: (1) Plaintiff accused Robson of ineffective assistance of counsel; (2) Plaintiff previously disclosed communications with Robson; and (3) Plaintiff brings a *Brady* claim in this case, which puts at issue what evidence Plaintiff and his criminal defense attorney possessed and discussed during Plaintiff's criminal trial. Doc. No. 157 at 5-6. Separately, Defendants assert that the attorney-client privilege has been waived regarding "what Plaintiff, his trial attorney, and his post-conviction attorneys knew, and when they knew it," which is relevant, Defendants' contend, to their defense under the Massachusetts Tort Claims Act. *Id.* at 6. Defendants' arguments about communications with Robson are well taken, and Plaintiff has waived that privilege and produced documents, mooting the argument. Defendants' separate argument should be rejected.

### 1.        Plaintiff Has Already Waived Privilege over Robson Communications

Courts recognize that where civil *Brady* claims are asserted, a plaintiff might not be able to maintain privilege over documents and communications that bear on the question whether investigative materials were suppressed by the defendants. To determine whether investigative materials were suppressed, it is important to know whether the plaintiff or his attorneys discussed or possessed those materials. Accordingly, courts have held that a plaintiff bringing such a claim waives privilege, to a limited extent. *Patrick v. Chicago*, 154 F. Supp. 3d 705, 718

(N.D. Ill. 2015) (where plaintiff has asserted a Brady claim, an "implied waiver" may apply to "those communications the subject matter of which involved the allegedly withheld information" but not to any other materials or claims); *Taylor v. City of Chicago*, 2015 WL 5611192, at *2 (N.D. Ill. Sep. 22, 2015) ("[W]aiver may occur if the plaintiff places the extent of his and his counsels' knowledge of information withheld during the initial criminal trial at issue[.]").

Importantly, the waiver is limited. *Tennison v. San Francisco*, 226 F.R.D. 615, 623 (N.D. Cal. 2005) ("In view of the particularly sensitive nature of the information here—criminal defense counsel files—the waiver must be narrowly tailored so that it is only as broad as is necessary to assure fairness to Defendants. The waiver extends only to fact work product, not opinion work product. There is no need to explore [the attorney's] mental impressions and opinions. What counsel knew or perhaps should have known is measured objectively. All that is relevant is what [the attorney] knew or was told, not his subjective opinions. Only documents that show facts bearing directly on what [the attorney] and [the plaintiff] knew or should have known about the evidence allegedly suppressed or falsity of perjured testimony need be produced."); *see also Jackson v. Chicago*, 2006 WL 2224052, at *7 (N.D. Ill. July 31, 2006) (defendant police officers, like the Defendants here, did not cite any authority for the proposition that a *Brady* claim "*per force* constitutes a waiver of the attorney-client privilege.").

Considering these precedents, Plaintiff determined proactively that a limited waiver of privilege was appropriate, and he provided Defendants with his communications with Robson.[4] By producing these documents, Plaintiff has already produced all of the previously privileged documents relating to his *Brady* to which Defendants might be entitled.

---

[4] Though Defendants' arguments here only pertain to attorney-client communications between Robson and Plaintiff, Plaintiff has also provided Defendants with communications between his other attorneys and Robson, and all documents that may have previously been in Robson's criminal defense file, including what Plaintiff believes are Robson's notes from the criminal trial. Plaintiff did so to conclusively put this issue to rest.

2. **Defendants' Argument for a Broader Waiver of the Attorney-Client Privilege Should Be Rejected**

Defendants' other argument regarding attorney-client privilege lacks merit. They contend that the privilege with Plaintiff's post-conviction attorneys must be waived so they can learn "what Plaintiff . . . and his post-conviction attorneys knew, and when they knew it." Doc. No. 157 at 6. But to the extent that Defendants are trying to learn when Plaintiff or his attorneys learned facts about Bonifacio (or any other suppressed piece of evidence), they do not need to invade the attorney-client privilege. Instead, they can simply ask. The privilege protects communications, not underlying facts. *Upjohn Co.*, 449 U.S. at 395. Plaintiff's attorney-client privilege with his post-conviction attorneys remains intact.

### D. Defendants' Arguments for Disclosure of Work-Product Lack Merit

"[T]he work product privilege derives from the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. [495,] 510-11 [(1947)], and focuses at the outset on the materials that lawyers typically prepare for the purpose of litigating cases." *U.S. v. Textron Inc.*, 577 F.3d 21, 26 (1st Cir. 2009). The Supreme Court in *Hickman* outlined then policy animating the doctrine:

> Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed . . . as the "work product of the lawyer."

329 U.S. at 511. Rule 23(b)(3) codifies the privilege, preventing discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, . . . or agent)." FED. R. CIV. P. 23(b)(3)(A). The Rule "'protects materials *prepared for* any litigation or trial as long as they were prepared by or for a party to the subsequent litigation.'" *Textron*, 577 F.3d at 29 (quoting *FTC v. Grolier, Inc.*, 462 U.S. 19, 25 (1983)).

Defendants make two arguments that the work-product doctrine does not apply to materials that Plaintiff has withheld. Doc. No. 157 at 7-8. Both lack merit.

### 1.      The Work-Product Doctrine Applies In Subsequent Litigation

First, Defendants assert that the work-product doctrine cannot apply to documents prepared in connection with previous litigation. The argument is one-sentence long, which is insufficient to show that work-product protections do not apply to the significant volume of work product set out in Plaintiff's privilege log. *Siupa v. Astra Tech, Inc.*, 2013 WL 212613, at *3 (D. Mass. Jan. 18, 2013) (failure to develop argument in opening brief forfeits the argument).

Defendants' argument also lacks merit. Work-product protections did not dissipate when Plaintiff's post-conviction proceedings ended and this civil suit began. First, the work-product privilege belongs to Plaintiff, *Catino v. Travelers Ins.*, 136 F.R.D. 534, 539 (D. Mass. 1991), and it remains Plaintiff's privilege to assert in this litigation, as it was during his post-conviction litigation, *S.W.*, 2010 WL 5185141, at *2 (finding that indexes created by a consultant "in connection with prior lawsuits" were protected by work product). Second, work-product protections were not waived when materials were provided to Plaintiff's current attorneys. "[W]ork product protection is provided against 'adversaries,' so only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." *MIT*, 129 F.3d at 687 & n.6 (collecting cases).

Third, the Supreme Court and the majority of lower courts to consider the issue have determined that work-product protections continue to apply in subsequent litigation. *See Grolier Inc.*, 462 U.S. at 26 (noting that "the literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation"); *In re Grand Jury Subpoena*, 220 F.R.D. at 150 (holding that the work-product

doctrine can be extended to subsequent litigation, even if that litigation is unrelated); *see also In re McRay, Richardson, Santana, Wise & Salaam Litig.*, 2011 WL 5880994, at *3 (S.D.N.Y. Nov. 22, 2011) ("[T]he attorney work product doctrine generally extends to subsequent litigation[.]"). This is certainly the case where the subsequent litigation is related. 8 Wright & Miller, Fed. Prac. & Proc. Civ. § 2024 (collecting cases). There is no doubt that this civil case, which concerns Plaintiff's criminal proceedings, is related to the criminal and post-conviction proceedings in which the materials now in dispute were prepared.

Fourth, Defendants' precise argument that work-product protections only apply to the litigation in which the materials were generated has been explicitly rejected by courts in this District. *See In re Grand Jury Subpoena*, 220 F.R.D. at 149 (noting that "[t]he weight of authority requires application of the doctrine in litigation other than the litigation originally anticipated[.]"). Defendants' failure to contend with any of this case law dooms their argument.

### 2.     The Work-Product Doctrine Applies to Materials Created by Investigators

Defendants' second argument is that documents prepared by Plaintiff's investigators from the Justice Brandeis Law Project are not entitled to work-product protection. Doc. No. 157 at 7-8. In Defendants' view, the Justice Brandeis Law Project was not a representative of Plaintiff, but instead was conducting an independent journalism project. *Id.* Defendants' contentions are belied by the extensive collaboration between Plaintiff's attorneys and investigators from the Justice Brandeis Law Project during post-conviction proceedings. These attorneys and investigators communicated extensively, collaborated on their investigation of the post-conviction case, jointly conducted witness interviews and pursued factual leads, shared their mental impressions of the case, and together fought to prove Plaintiff's innocence. Indeed, the very purpose of this collaborative investigation, from Plaintiff's perspective, was to win his

claim for post-conviction relief in state court and to secure his freedom—this was the only end

game available to Plaintiff.

Accordingly, there can be no reasonable dispute that the materials withheld as work

product were created by Plaintiff's representatives in anticipation of—and, indeed, in the midst

of—ongoing litigation. *In re Grand Jury Subpoena*, 220 F.R.D. at 146-48 (defining "litigation"

to include criminal and civil proceedings, and defining "anticipation" to mean a reasonable belief

that future litigation will appear, even if that litigation is not imminent). It does not change the

analysis that the Justice Brandeis Law Project were non-attorneys investigating Plaintiff's case.

Rule 26(b)(3) explicitly recognizes that the work-product doctrine extends to investigators who

create work product for use in litigation, as investigators from the Justice Brandeis Law Project

did here. *See* Fed. R. Civ. P. 23(b)(3)(A) (including materials created by the party's "consultant"

or "agent"); *see also In re Grand Jury Subpoena*, 220 F.R.D. at 141 (holding that the work-

product doctrine applies to materials that a "non-attorney 'representative' can prepare for

litigation"); *id.* at 141-42 ("Rule 26(b)(3) extended protection of a party's non-attorney

'representatives' as well.") (collecting cases).

Lastly, Defendants have not attempted to show—and they could not succeed in

showing—that they are entitled to documents protected by the work-product doctrine because

they have a "substantial need for the materials to prepare [their] case and cannot, without undue

hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(A)(ii). Again,

the only information that Defendants mention they need in their motion is the date when Plaintiff

and his post-conviction team learned about suppressed exculpatory evidence regarding

Bonifacio. And again, to the extent that they do not know the answer already, Defendants can

learn this information by taking depositions of witnesses, during which these underlying facts

would not be subject to the work-product doctrine. *In re Grand Jury Subpoena*, 220 F.R.D. at

141 (the doctrine protects materials, not underlying facts); *see also* 8 Fed. Prac. & Proc. Civ. §

2025 ("[D]iscovery of work product material will be denied if the party seeking discovery can

obtain the desired information by taking the deposition of witnesses."). This is an independent

reason to deny Defendants' request for work-product materials.

### E.      Plaintiff Has Properly Asserted the Common-Interest/Joint-Defense Doctrines

Defendants also contend that there is no basis for Plaintiff to assert the common-interest

(sometimes called the joint-defense) doctrine in this case. Doc. No. 157 at 7. But as Defendants

recognize from their review of Plaintiff's privilege log (undermining their argument that the log

is not clear enough), Doc. No. 157 at 7, Plaintiff is in possession of documents obtained by

Plaintiff's post-conviction attorneys from the attorneys to Plaintiff's co-defendant at the criminal

trial, Juan Rodriguez (aka Raul Miranda), Ex. 4, Lines 51, 54-72, 79, 123, 137. Those materials

are protected under the basic work-product principles discussed already, and they are also

protected under the common-interest doctrine.

The common-interest doctrine is an exception to the rule that the attorney-client privilege

or work-product doctrine is waived by disclosure of information to a third party. *Cavallaro v.*

*United States*, 284 F.3d 236, 250 (1st Cir. 2002). The doctrine "applies to communications made

by the client or the client's lawyer to a lawyer representing another in a matter of common

interest." *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002)

(internal quotes and citations omitted). Those communications remain privileged if they were

made in the course of a joint defense effort, the statements were to further that effort, and the

privilege has not been waived. *Id.* (quoting *United States v. Bay State Ambulance*, 874 F.2d 20,

28 (1st Cir. 1989)). Similarly, "'courts have generally held that where the disclosing party and

the third party share a common interest, there is no waiver of the work product privilege.'"
*Murphy v. Harmatz*, 2016 WL 7104831, at *6 (D. Mass. Dec. 5, 2016) (quoting *Schanfield v. Sojitz Corp.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009)). "While a written agreement is not a prerequisite for invoking the common interest doctrine, . . . parties seeking to invoke the exception must establish that they agreed to engage in a joint effort and to keep the shared information confidential from outsiders." *Ken's Foods*, 213 F.R.D. at 93.

There is no question that Plaintiff and Juan Rodriguez were engaged in common interest as they both defended themselves from false criminal charges based on the same fabricated evidence. Indeed, this sort of joint defense is the quintessential common interest. The fact that Juan Rodriguez was acquitted by the trial court after the jury's verdict in no way lessened that common interest.[5] Indeed, Plaintiff's ongoing post-conviction case was the same criminal case in which both he and Juan Rodriguez had been tried initially. During Plaintiff's post-conviction proceedings, Juan Rodriguez's attorneys sought to assist Plaintiff in proving his innocence by providing his attorneys with investigative work-product, some of which was attorney-client communications. They provided that information under a limited waiver of privilege that allowed disclosure of information only to Plaintiff's post-conviction attorneys. Ex. 4, Line. 79. The information was kept confidential by that team. Accordingly, the common-interest doctrine protects these materials from disclosure. This Court should reject Defendants' argument that the doctrine should not apply.[6]

---

[5] The jury returned a guilty verdict, but the trial judge threw the verdict out. The difference in the evidence used to try Juan Rodriguez and Plaintiff was nothing more than the false identification obtained from Gary Sevinor more than a year after the crime occurred. At all times during the criminal trial, Juan Rodriguez's and Plaintiff's interests were aligned.

[6] Defendants' do not really make any real argument to the contrary. Instead, they assert that "[f]ew of the documents listed on the privilege log are from 1996 or before." Doc. No. 157 at 7. That is incorrect. Even a cursory review of Lines 51, 54-72, 79, 123, and 137 of the log—the lines falling into this category—shows that the vast majority of documents were created during the criminal proceedings. Ex. 4.

**F.    Defendants' Request That Plaintiff Produce Redacted Versions of Privileged Documents Should Be Rejected**

In a single paragraph that does not cite any legal authority, Defendants assert that Plaintiff should be required to produce the documents listed on his privilege log, redacting the portions of the documents that are privileged. Doc. No. 157 at 5. This proposal should be rejected for a number of reasons.

At the outset, where Plaintiff thought it possible to redact privileged work product on documents without undermining the privileges asserted, Plaintiff did produce documents redacted, and he included those documents on his privilege log in a separate section. *See* Ex. 4, Lines 174-185.

The remainder of the materials, however, are privileged *in toto*. As such, if the Defendants' approach were applied to all of the documents on the privilege log, it would require Plaintiff to redact nearly every page of the vast majority of documents that would be produced. For example, the attorney-client privilege protects the entire communication between attorney and client, *see Upjohn*, 449 U.S. at 395-96; and that includes a communication transmitting particular documents from attorney to client or vice-versa, *see Davine v. Golub Corp.*, 2017 WL 517749, at *5 (D. Mass. Feb. 8, 2017) (finding email and attachment protected); *see also Bourne v. Arruda*, 2012 WL 2891099, at *3 (D.N.H. July 16, 2012). So in this case, where some of the privileged attorney-client communications include attachments, both the correspondence and the attachment would be privileged, and redaction of the entire correspondence would be required.

The same is true of much of the work product appearing on Plaintiff's privilege logs. For example, memoranda reflecting an attorney's mental impressions about Plaintiff's post-conviction case, or documenting investigation in the case, the meaning of various documents, or the investigation or interview of witnesses, are work product *in whole*. *Crooker v. Tax Div. of*

18

*U.S. Dept. of Justice*, 1995 WL 783236, at *15 (D. Mass. Nov. 17, 1995) ("The attorney work-product privilege protects entire documents prepared in contemplation of litigation, not just opinions and recommendations."). As a result, Defendants' redaction request would lead to the complete redaction of documents protected as work product.

The exception would be those documents included on the privilege log that contain handwritten notes on copies of documents that have been otherwise produced in the case. In Plaintiff's view, producing these documents redacted would necessarily require Plaintiff to highlight for Defendants portions of the documents that Plaintiff's attorneys and investigators considered important during their preparation of the post-conviction case, and that highlighting would itself undermine the work-product assertion. For these reasons, Plaintiff submits that he should not be required to produce redacted versions of all privileged documents in this case.

## CONCLUSION

For all of the foregoing reasons, Plaintiff submits that this Court should deny Defendants' motion to compel.

RESPECTFULLY SUBMITTED,

**ANGEL ECHAVARRIA**

By:    /s/ Steven Art
       *One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Gayle Horn
Tara Thompson
Mark Loevy-Reyes
Steven Art
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, Illinois 60607
(312) 243-5900
steve@loevy.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Steven Art, an attorney, hereby certify that, on December 3, 2018, I filed the foregoing

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF LYNN'S MOTION

TO COMPEL using the Court's CM/ECF system, which effected service on all counsel of

record.

/s/ Steven Art
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Gayle Horn
Tara Thompson
Mark Loevy-Reyes
Steven Art
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, Illinois 60607
(312) 243-5900
steve@loevy.com