

**DROHAN, HITT & HADAS** LLC

John R. Hitt

617-377-4367 (Main)
jhitt@drohanhitt.com

December 14, 2018

Honorable Allison Burroughs
United States District Court Judge
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA. 02210

    Re:  *Echavarria v. Roach, et al.*, 16-CV-11118 (**Leave to File Granted on 12/13/18**)

Dear Judge Burroughs:

    Defendant, the City of Lynn, provides this reply in further support of its letter motion to compel (Doc. 157). Although the areas of disagreement have been narrowed by Plaintiff's several restated privilege logs and Plaintiff's decision to provide a limited waiver of privilege concerning communications and documents involving his criminal defense attorney, there are significant issues that still remain unresolved and require action by the Court.

### Further Argument

    *1.*   *The Waiver of Privilege Should Also Extend to Communications With, and Investigative Materials in the Possession of, the Attorneys for Plaintiff's Codefendant in the Underlying Criminal Case Who Shared Information with Plaintiff's Criminal Attorney.*

    In response to the City's motion, Plaintiff has voluntarily waived privilege concerning his criminal trial attorney, Charles Robson. Plaintiff's Opp. (Doc. 158) at 10-11. Plaintiff has acknowledged that:

> Courts recognize that where civil *Brady* claims are asserted, a plaintiff might not be able to maintain privilege over documents and communications that bear on the question whether investigative materials were suppressed by the defendants. To determine whether investigative materials were suppressed, it is important to know whether the plaintiff or his attorneys discussed or possessed those materials. Accordingly, courts have held that a plaintiff bringing such a claim waives privilege, to a limited extent.

Letter of John R. Hitt, Esq. to Court
December 14, 2018
Page 2 of 6

Plaintiff's Opp. at 10-11 (citing *Patrick v. Chicago*, 154 F. Supp. 3d 705, 718 (N.D. Ill. 2015) and *Taylor v. Chicago*, 2015 WL 5611192, at *2 (N.D. Ill. Sep. 22, 2015)). Although the Plaintiff's limited waiver is an important first step, it does not go far enough, given the nature of his claims and the facts of this case.

      An important issue in this case is what Plaintiff's trial attorney knew or should have known had he exercised reasonable diligence in investigating Plaintiff's case.[1] During the underlying criminal case, Plaintiff's trial attorney worked with and shared information with the attorneys for the codefendant Juan Rodriquez.[2] Thus, a material question to be explored in this case is what information and investigative materials Plaintiff's trial attorney had access to through his coordination with the codefendant's attorneys. Accordingly, the waiver of privilege sought here (whether it be characterized by Plaintiff as attorney-client privilege as set forth in Plaintiff's Opp. at 9-14 or common-interest/joint-defense doctrine protected information as set forth in Plaintiff's Opp. at 14-17) should extend to the investigative materials possessed by the codefendant's attorneys, which appear to have been available to Plaintiff's attorney during the underlying criminal case.[3]

      Additionally, the waiver of privilege should also extend to communications from the codefendant's attorneys (Attorneys Buso, Conlon, and Segal) to Plaintiff's attorneys. Further, the waiver of privilege should also extend to communications with, and investigative materials shared with, Plaintiff's post-conviction attorneys and those conducting investigations for his benefit. For example, if the codefendant's attorneys sent investigative materials they had obtained during the criminal trial to Plaintiff's post-conviction attorneys or others, such as the Brandeis University staff and students, the privilege should be waived as to those materials, in the interest of fairness to the defendants here. *See Patrick*, 154 F. Supp. 3d at 711 (stating that "[t]he implied waiver doctrine ultimately is based on considerations of fairness: that is a party may not use privilege as a tool for manipulation of the truth-seeking process" [citation omitted] and further observing that "[i]n practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials"). Here, it is critically important that Defendant have access to all information bearing on what was known by, and when it was known to, the criminal defense

---

[1] Plaintiff implicitly acknowledges this point in his opposition at page 11 by citing and quoting *Tennison v. San Francisco*, 226 F.R.D. 615, 623 (N.D. Cal. 2005), where the court stated, among other things, "Only documents that show facts bearing directly on what [the attorney] and [the plaintiff] knew or should have known about the evidence allegedly suppressed or falsity of perjured testimony need be produced."
[2] During the pretrial and trial phase of the underlying criminal case, the codefendant, Juan Rodriquez, had three defense attorneys: Raymond Buso, Albert Conlon, and Ronald Segal. Plaintiff's trial counsel, Robson, appears to have overlapped with all three of those attorneys. Hitt Aff. ¶7.
[3] During the deposition of attorney Robson on December 6, 2018, which was suspended pending the resolution of the privilege matters now at issue, Robson testified that the attorneys for Juan Rodriquez shared information with him and discussed strategy with him. Hitt Aff. ¶4.

Letter of John R. Hitt, Esq. to Court
December 14, 2018
Page 3 of 6

attorneys in the underlying case concerning Mariano Bonifacio, Celso Torres, Ali Cromwell, and any other unidentified piece of "suppressed evidence" as alleged by Plaintiff.[4]

Finally, such a waiver would not adversely impact the codefendant in the underlying criminal case. The court entered a required finding of not guilty as to him. Double jeopardy protection has attached. Additionally, it appears that, based on one of the entries on Plaintiff's privilege log, the codefendant Juan Rodriquez (a/k/a Raul Miranda) executed some type of limited waiver of privilege in 2011 for the benefit of Plaintiff. See Doc. 158-4, at 79 ("Limited waiver of privilege by Raul Miranda").

   2.   *The Brandeis University Investigative Materials Were Prepared as Part of a Journalism Project; Plaintiff Provides No Verified Factual Support for His Assertion that the Brandeis Project Was a Legal Entity that "took Plaintiff's case;" Therefore, Many, if not all, of the Brandeis University Communications Do Not Appear to be Privileged.*

Throughout his opposition, Plaintiff appears to play fast and loose with the facts concerning the role of Brandeis University concerning his case. His opposition at pages 2-3 and 14-15 relies largely, if not exclusively, on unverified factual assertions, even though it is he who bears the burden of showing that he has a valid basis for withholding documents. *In re Grand Jury Subpoena*, 220 F.R.D. at 141. Understanding the role of Brandeis University is important here because of the many documents relating to Brandeis University that appear to be listed on Plaintiff's privilege log.[5]

As described on its website, the Justice Brandeis Law Project ("JBLP") is an "investigative journalism" program within the Schuster Institute for Investigative Journalism at Brandeis University. Hitt Aff. ¶6 (See http://www.brandeis.edu/investigate/innocence-project/ as accessed on Dec. 13, 2018).

The Schuster Institute was established in 2004 as an "investigative reporting center." Hitt Aff. ¶6 (See http://www.brandeis.edu/investigate/about/index.html, as accessed on Dec. 13, 2018.) It has a "small staff of experienced journalist." Hitt Aff. ¶6. As stated on its website, JBLP is unlike most other innocence projects in that it uses "reporting methods to dig into especially difficult cases . . . ." Hitt Aff. ¶6 (http://www.brandeis.edu/investigate/innocence-project/). Its "team" is made up of "staff and affiliated researchers and reporters oversee[ing] teams of paid students research [sic] assistants." Hitt Aff. ¶6.

Based on the chronology set forth in Plaintiff's Opposition and the attachments thereto, it appears that Plaintiff communicated with Brandeis University, its staff and students—none of

---

[4] Although to date Plaintiff has identified only information relating to Mariano Bonifacio as being the subject of his suppressed-evidence claim, he continues to use kitchen-sink phrases like "Bonifacio (or any other suppressed piece of evidence)", Plaintiff's Opp. at 12, in a dubious attempt to keep his options open regarding the theory of his case concerning deliberate suppression of exculpatory evidence.

[5] In addition to the documents listed on the Plaintiff's current privilege log (Doc 158-4) that expressly mention Brandeis (Documents 1, 3-7, 11-35, 38-39, 46-47, 78, 127), it may be the case, though it is hard to tell based on the scant descriptions, that other entries referencing "Investigator," "investigative," or "investigation" (Documents 2, 8, 9, 40, 49-50, 51, 52, 55) may also involve Brandeis University staff or students.

whom apparently were attorneys at that time—about his case at a time when he also appears to have not been represented by counsel. Exhibit 2 to Plaintiff's Opposition indicates that a post-conviction attorney did not appear in his case until November 2006. *See* Doc. 158-2, File Ref. No. 49. Thus, items 1-4 as listed on Plaintiff's privilege log (Doc. 158-4), at a minimum, do not appear to be privileged communications. Those items appear to be communications between Plaintiff and Brandeis University.

Furthermore, as to the Brandeis University materials, which appear to make up a large portion of the items listed on the privilege log (though it has hard to tell based on the vague descriptions provided by Plaintiff and the use of the generic term "Investigator" which may or may not be Brandeis staff or students), Plaintiff has provided no verified factual support from which it can be determined that he or his post-conviction attorneys had any relationship with Brandeis that would justify an assertion of privilege for the Brandeis University materials. Rather, if anything, based on the many scant descriptions of documents appearing on Plaintiff's privilege log, it appears that the vast majority of the Brandeis documents may not be privileged communications or protected work-product. Again, Plaintiff's assertion of privilege is supported only by unverified factual assertion in his opposition at pages 2-3 and 14-15.

In sum, Plaintiff has provided no meaningful factual support for his argument that there is a proper basis for concluding that the investigation conducted by Brandies University falls with the work-product doctrine as set forth in Fed. R. Civ. P. 23(b)(3)(A). Plaintiff's Opp. at 15. In particular, there is no factual basis for Plaintiff's assertion that the work was prepared to be used in litigation. Rather, based on Brandeis University's own web site it appears that the work was investigative journalism to be published or used by Brandeis in the public interest. Plaintiff has not shown otherwise.

    3.    *Plaintiff's Argument That His Document Response Complies with Fed. R. Civ. P. 34(b)(2)(E)(i) is Meritless.*

Plaintiff pointlessly quarrels with the requirements of Fed. R. Civ. P. 34(b)(2)(E)(i) and along the way makes a number of erroneous statements. Plaintiff's Opp. at 6-8. Accordingly, his argument in opposition should be rejected.

First, Plaintiff inaccurately argues that "Defendants' [sic] cite no legal support for their argument." Plaintiff's Opp. at 6. Apparently, Plaintiff does not view the unambiguous language of Rule 34(b)(2)(E)(i), which states "[a] party *must* produce documents as they are kept in the usual course of business *or must* organize and label them to correspond to the categories in the request" (emphasis added), as "legal support." At least one other judge in this District takes a different view than that articulated by Plaintiff:

> "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed.R.Civ.P. 34(b)(2)(E)(i). The producing party can choose whether to produce the documents as they are kept in the usual course of business or label and

Letter of John R. Hitt, Esq. to Court
December 14, 2018
Page 5 of 6

organize them. *Valeo Elec. Sys., Inc. v. Cleveland Die & Mfg Co.,* No. 08–cv–12486, 2009 WL 1803216, at *2 (E.D.Mich. June 17, 2009). The usual course of business alternative, however, is only available when the documents' natural organization makes finding critical documents reasonably possible. *W. Holding Co., Inc. v. Chartis Ins. Co. of Puerto Rico,* 293 F.R.D. 68, 71 (D.P.R.2013) (citations omitted).

*Enargy Power (Shenzhen) Co. v. Xiaolong Wang,* No. CIV.A. 13-11348-DJC, 2014 WL 4687542, at *3 (D. Mass. Sept. 17, 2014). The approach taken by Plaintiff here does not comport with the language of the rule or the reasonableness standard articulated in *Enargy Power (Shenzhen) Co., supra.*

Second, Plaintiff inaccurately suggests that the City has not labeled its responses. Plaintiff's Opp. at 7. During a Rule 37.1 conference conducted with one of Plaintiff's attorneys, Plaintiff's attorney requested that the City label documents responsive to certain requests. Hitt Aff. ¶ 2. In response to the request, the City provided a supplemental response providing the labeling requested by Plaintiff. Hitt Aff. ¶ 3. Thus, Plaintiff's argument that the City has not labeled its responses is without merit.[6]

Third, Plaintiff also inaccurately states the history concerning the City's redaction of investigatory files, which he characterizes as "heavily redacted" and were produced "without explaining" the redactions. Plaintiff's Opp. at 7. As this Court may remember, the redactions of the investigative files about which Plaintiff now again complains, were carefully documented by the City on a privilege log that was reviewed by the Court in February 2018. In fact, the Court conducted an *in camera* review of the redacted files. The Court upheld many of the City's redactions and rejected many of Plaintiff's meritless complaints. Memorandum and Order of February 8, 2018 (Doc. 136). Thus, Plaintiff's point, whatever it is, is without merit.

Fourth, as to the City's request that Plaintiff identify Robson's file, Plaintiff advances another inaccurate argument. Plaintiff's Opp. at 7. Plaintiff contends that the City is aware that Robson does not possess his trial file and it cannot be identified. Plaintiff's Opp. at 7. However, during Robson's deposition on December 6, 2018, one of Plaintiff's attorneys produced—and Robson identified—his trial file which he had sent to Plaintiff after the trial. Hitt Aff. ¶¶ 4, 5. Although the issue now appears to be moot, it should be noted that Robson's file was produced from documents apparently now in *Plaintiff's* possession, thereby undermining argument that he cannot label documents responsive to particular requests.[7]

---

[6] Plaintiff also attempts to lay the alleged nonresponse of other Defendants to discovery at the foot of the City. Plaintiff's Opp. at 7 ("Moreover, some Defendants have not even provided documents or written responses to request for production, despite repeated requests.") Plaintiff's statement is irrelevant to the City's motion to compel.

[7] Finally, although the factual basis of Plaintiff's argument concerning its failure to identify its presentment letter to the City is inaccurate as well, the City will not address the point because in its opposition, for the first time, Plaintiff appears to identify which documents respond to the request concerning Plaintiff's presentment letters. Plaintiff's Opp. at 7-8 & Ex. 6.

### Conclusion

For the additional reasons set forth above, and as previously set forth in Doc. 157, the Court should order Plaintiff to: (1) comply with the labeling and organizing requirements of Rule 34; (2) serve a more detailed privilege log that will permit assessment of the asserted privileges as required by Rule 26; and (3) produce all portions of the withheld documents as to which Plaintiff is not asserting privilege.

Additionally, the Court should issue an order determining that, in addition to the voluntary waiver of privilege as to attorney Robson, attorney-client privilege is waived as to: (1) investigative materials in the possession of the codefendant's attorneys, which appear to have been available to Plaintiff's attorney during the underlying criminal case; (2) communications from the codefendant's pretrial and trial attorneys (Attorneys Buso, Conlon, and Segal) to Plaintiff's attorneys; and (3) communications with, and investigative materials shared with, Plaintiff's post-conviction attorneys and those conducting investigations for his benefit.

Sincerely,

/s/John R. Hitt

John R. Hitt
*Counsel for Defendant City of Lynn*

Enc.

### Certificate of Service

I, John R. Hitt, hereby certify that on the 14th day of December 2018, I served a copy of this letter-reply on counsel registered for CM/ECF in this action by filing this letter through the CM/ECF system.

/s/John R. Hitt