UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANGEL ECHAVARRIA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 16-cv-11118-ADB |
| | * | |
| J. MICHAEL ROACH *et al*., | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER ON MOTION TO COMPEL**

BURROUGHS, D.J.

This case involves allegations that, in 1994, police officers working for the City of Lynn

and the Commonwealth of Massachusetts suppressed and fabricated evidence to build a case

against Plaintiff Angel Echavarria for the murder of Daniel Rodriguez.  Plaintiff was convicted,

sentenced to life in prison, and incarcerated for more than twenty years.  On April 30, 2015, the

Superior Court of Massachusetts granted Plaintiff a new trial, and on June 15, 2015, the

Commonwealth dropped all charges against Plaintiff.  Plaintiff filed this lawsuit a year later,

asserting civil rights and tort law claims against current and former police officers and the City

of Lynn.  Before the Court is the City of Lynn's motion to compel production of documents.

[ECF No. 157].  For the reasons explained herein, the motion is GRANTED in part and DENIED

in part.

## I.  DISCUSSION

The City of Lynn seeks an order compelling Plaintiff to: (1) label or organize produced

documents to show which request they are responsive to, (2) serve a more detailed privilege log,

(3) produce documents that are only partially privileged with redactions, and (4) produce various documents over which Plaintiff allegedly waived the attorney-client privilege.

### A. Organizing Documents for Production

Federal Rule of Civil Procedure 34(b)(2)(E) requires that, unless a court order or stipulation between the parties provides otherwise, "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." The producing party may elect whether to produce the documents as they are kept in the usual course of business or to label and organize them. Enargy Power (Shenzhen) Co. v. Wang, No. CIV.A. 13-11348-DJC, 2014 WL 4687542, at *3 (D. Mass. Sept. 17, 2014) (citing Valeo Elec. Sys., Inc. v. Cleveland Die & Mfg. Co., No. 08–cv–12486, 2009 WL 1803216, at *2 (E.D.Mich. June 17, 2009)). The "usual course of business" option, "however, is only available when the documents' natural organization makes finding critical documents reasonably possible." Id. (citing W. Holding Co., Inc. v. Chartis Ins. Co. of P.R., 293 F.R.D. 68, 71 (D.P.R.2013)). If a party elects to produce documents as they are kept in the usual course of business, that party bears the burden of showing that the natural organization of the documents makes finding critical documents reasonably possible. See id. For example, a party may meet this burden by showing that it produced emails as they are kept in the ordinary course of business by making family-complete productions that are either organized chronologically by custodian or by producing metadata that allows automated sorting. See Valeo Elec. Sys., 2009 WL 1803216, at *2. Non-email electronically stored information ("ESI") may be produced with metadata showing the custodian and location of storage. See id.

Here, Plaintiff maintains that he has properly produced documents as they were kept in the ordinary course of business. [ECF No. 158 at 7–8]. The City of Lynn identifies two

examples that it claims demonstrate Plaintiff's non-compliance with the rules. First, the City of Lynn asserts that Plaintiff's initial response to its request for Plaintiff's case file "as maintained by [Plaintiff's] criminal defense attorney, Charles Robson, from 1994-1998," failed to adequately identify what that file contained. [ECF No. 157 at 4]. The issue, however, became moot when, at Robson's December 6, 2018 deposition, Plaintiff produced Robson's trial file. See [ECF No. 161 at 5] ("Although the issue now appears to be moot, it should be noted that Robson's file was produced from documents apparently now in *Plaintiff's* possession, thereby undermining [the] argument that he cannot label documents responsive to particular requests.").

The City of Lynn's second example is the response to its request for "presentment letters to the City of Lynn, as described in footnote 2 of [the] complaint, and all documents showing proof of service or delivery." [ECF No. 157 at 4]. Plaintiff "produced those documents . . . in this litigation, by themselves, with an email that identified the bates range of those particular documents." [ECF Nos. 158 at 9, 158-6]. The cover email for the production, however, offered no indication of what the production contained, and the files do not appear to have been produced with metadata or any other information regarding where or from whom they were collected. Plaintiff has therefore not met his burden to show that the files have a natural organization that makes finding critical documents reasonably possible.

To comport with Rule 34(b)(2)(E), when a party to this litigation produces documents without accompanying metadata or other information that shows the organizational structure in which the documents were stored, including from whom the documents were collected, the producing party must state which request(s) the documents are responsive to. To the extent the

parties have not complied with this requirement to date, their responses and productions must be

amended.[1]

### B. Privilege Log Detail

A party that withholds otherwise responsive documents under a claim of privilege must

expressly assert the privilege claimed and produce a privilege log that "describe[s] the nature of

the documents, communications, or tangible things not produced or disclosed" and provides

enough information for "other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).

"Although the rule does not spell out the sufficiency requirement in detail, courts consistently

have held that the rule requires a party resisting disclosure to produce a document index or

privilege log."  In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc), 274 F.3d

563, 575 (1st Cir. 2001).  "The party who invokes the privilege bears the burden of establishing

that it applies to the communications at issue and that the privilege has not been waived."  XYZ

Corp. v. United States (In re Keeper of Records), 348 F.3d 16, 22 (1st Cir. 2003); see also

Burlington N. & Santa Fe Ry. Co. v. District Court, 408 F.3d 1142, 1147 (9th Cir. 2005) ("Rule

26 clarifies that a proper assertion of privilege must be more specific than a generalized,

boilerplate objection.").  "Privilege logs do not need to be precise to the point of pedantry," but

"a party who asserts a claim of privilege [is required] to do the best that he reasonably can to

---

[1] In addition to the assertions by the City of Lynn, Plaintiff too complains that "Defendants themselves have not created any kind of 'index' to the documents they have produced . . . . Instead, Defendant City of Lynn has produced heavily redacted files, without explaining what documents are in the files, and without a log of the reasons for the complete redaction of the majority of pages."  [ECF No. 158 at 8].  The Defendants deny most of Plaintiff's assertions regarding their productions.  [ECF No. 161 at 5].  The Court declines the invitation to dive into the merits of this dispute.  All parties will be held to the same standard, and all parties shall amend their productions as necessary to comply with this order.

describe the materials to which his claim adheres." In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc), 274 F.3d at 576.

Plaintiff's privilege logs contain numerous assertions of the attorney-client privilege. "The dimensions of the [attorney-client] privilege itself are reasonably well honed. The privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." XYZ Corp., 348 F.3d at 22. The privilege may extend to a third party who "helps the lawyer give legal advice," if the third party is "'necessary, or at least highly useful, for the effective consultation between the client and the lawyer.'" Lluberes v. Uncommon Prods., LLC, 663 F.3d at 24 (quoting United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)); see Lynx Sys. Developers, Inc. v. Zebra Enter. Sols. Corp., No. 15-12297-GAO, 2018 WL 1532614, at *2 (D. Mass. Mar. 28, 2018) (holding that the third party must be "nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications" and the communication must be "for the purpose of obtaining legal advice from the lawyer" (quoting Cavallaro v. United States, 284 F.3d 236, 247, 249 (1st Cir. 2002))).

The privilege logs also assert common interest protection over a number of documents. The common interest protection is not itself a privilege, but rather a recognition that the attorney-client privilege will not be waived when confidential information is communicated with third parties who share a common legal interest, so long as all parties are represented by counsel, and the information is communicated among privileged persons for the purpose of their common legal enterprise. See Cavallaro v. United States, 153 F. Supp. 2d 52, 62 (D. Mass. 2001), aff'd, 284 F.3d 236 (1st Cir. 2002) (citing Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 447 (S.D.N.Y. 1995)). Otherwise, when "privileged communications are

disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." XYZ Corp., 348 F.3d at 22.

Plaintiff also asserts work-product protection over numerous documents. "This protection encompasses 'work done by an attorney in anticipation of . . . litigation from disclosure to the opposing party.'" Blattman v. Scaramellino, 891 F.3d 1, 4 (1st Cir. 2018) (quoting In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.), 274 F.3d 563, 574 (1st Cir. 2001)). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A); see Hickman v. Taylor, 329 U.S. 495, 511 (1947). "It is not enough to trigger work product protection that the subject matter of a document relates to a subject that might conceivably be litigated. Rather, as the Supreme Court explained, 'the literal language of Rule 26(b)(3) protects materials *prepared for* any litigation or trial as long as they were prepared by or for a party to the subsequent litigation.'" United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 29 (1st Cir. 2009) (en banc) (emphasis in original) (quoting Federal Trade Commission v. Grolier Inc., 462 U.S. 19, 25 (1983)). "Depending on the circumstances, a document can contain attorney work product, and thus fall within the protection, even though a person other than an attorney, such as the attorney's client or agent, drafts the document." Blattman, 891 F. 3d at 5.. Although the work product protection can be more easily overcome through a showing of need than the attorney-client privilege, the work product protection is less easily waived because "only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." United States v. Massachusetts Inst. of Tech., 129 F.3d 681, 687 (1st Cir. 1997).

Here, Plaintiff's privilege logs provide the date, page count, privilege(s) asserted, and a short description of each document. Although most of the privilege log entries indicate that the underlying documents are privileged, several entries do not contain enough information to allow the defendants to evaluate the propriety of the asserted privilege. For example, one description reads: "Limited waiver of privilege by Raul Miranda." [ECF No. 158-4 at 6]. Although Plaintiff claims that he has identified the author, sender, and/or recipient when possible, the privilege log contains numerous entries omitting this information even where it is suggested that such individuals should have been readily identifiable. For example, certain log entries contain descriptions such as "Investigator time sheet" and "Letter from Plaintiff to Brandeis Institute regarding investigation of case, in possession of post-conviction attorneys" without providing the names of the individuals involved. [ECF No. 158-4 at 2, 5]. The Plaintiff should, to the extent possible, provide the names of the individuals who drafted, sent, or received the documents at issue, as well as a better description of the reasons for asserting the privilege and when applicable, the extent of any waiver.[2]

The privilege logs also assert common interest protection over a significant portion of the documents. Plaintiff's brief suggests that this common interest protection is asserted because "Plaintiff is in possession of documents obtained by Plaintiff's post-conviction attorneys from the attorneys to Plaintiff's co-defendant at the criminal trial, Juan Rodriguez (aka Raul Miranda)." [ECF No. 158 at 17]. The privilege log does not, however, specifically identify the

---

[2] Given the facts of this case, there may be some documents from innocence projects and other organizations that worked for Plaintiff for which it is not possible to identify a specific author. For such documents, it is sufficient to name the organization as an institutional author, recipient, or custodian and note the capacity in which the author appears to have been working based on the content of the document. As a matter of best practice, a privilege log should indicate which individuals are attorneys.

documents' custodian(s) and instead repeatedly states that documents were "in possession of post-conviction attorney." [ECF Nos. 158-3, 158-4]. Where Plaintiff asserts common interest protection, to the extent possible, the privilege log should identify the third-party's attorneys who sent or received the documents at issue, the represented third-party, the common legal interest, and the date of the communication with the third-party's attorney. To the extent this information has not been included, Plaintiff must amend his privilege logs.

### C. Obligation to Produce Redacted Documents

The City of Lynn complains that Plaintiff has failed to produce non-privileged portions of documents that are otherwise privileged. [ECF No. 157 at 5]. Plaintiff does not dispute that he has an obligation to produce redacted documents where only a portion of a document is privileged, but instead claims that he has already satisfied this obligation. Based on Plaintiff's privilege logs, it seems that the only documents that fall into this category are those that contain handwritten notes. Plaintiff has explained that the documents with handwritten notes have already been produced in this litigation, albeit without handwritten notes. [ECF No. 158 at 20]. The notated versions of such documents need not be produced because their production would supply no new information, other than indicating which portions of the underlying documents Plaintiff's representatives found noteworthy.

### D. Waiver of Privilege

At the time the City of Lynn filed its instant motion, Plaintiff had not produced communications with his criminal trial attorney, Charles Robson, and was maintaining that such communications were privileged. [ECF No. 157 at 5–6]. The city made a well-supported argument that Plaintiff had waived the privilege with respect to communications with his trial counsel, at least to the extent they bear on the issues at stake here. See Taylor v. City of

Chicago, No. 14 C 737, 2015 WL 5611192, at *2 (N.D. Ill. Sept. 22, 2015) ("Though advancing

a Brady claim does not '*per force* constitute a waiver of the attorney-client privilege,' waiver

may occur if the plaintiff places 'the extent of his and his counsels' knowledge of information

withheld during the initial criminal trial at issue." (quoting Jackson v. City of Chicago, No. 03 C

8289, 2006 WL 2224052, at *7 (N.D. Ill. July 31, 2006); Cannon v. Polk County/Polk County

Sheriff, No. 3:10–CV–224–HA, 2013 WL 1840343, at *3 (D. Or. Apr. 30, 2013))).  Plaintiff has

now produced the formerly privileged communications with Robson.  Plaintiff's waiver is

limited and does not extend to communications with Plaintiff's post-conviction attorneys.  See

United States v. Stone, 824 F. Supp. 2d 176, 186 (D. Me. 2011) (noting "limited extent" of

waiver that rests on the "fairness principle" that "prevents a party from using the privilege as

both a shield and a sword." (quoting XYZ Corp., 348 F.3d at 24)).  The Court expects Plaintiff's

recognition of the waiver and his production of communications with Robson to resolve the

waiver issue to the extent that the now produced documents bear on whether Robson and

Plaintiff learned of potentially exculpatory information in 1994 and failed to investigate it.

The City also argues that Plaintiff has waived his privilege over documents that bear on

whether timely presentment was made under the Massachusetts Tort Claims Act ("MTCA").

[ECF No. 157 at 6].  The City cites no case law for this argument.  Considering the recent

production of communications with Attorney Robson, the limited specificity of the City of

Lynn's MTCA waiver argument, and the other relief ordered herein, the Court will not rule on

the waiver issue with respect to documents bearing on the presentment issue at this time.  The

motion is denied with respect to these documents with leave to renew if necessary.

### E. Common Interest and Joint Defense Doctrines

The City of Lynn claims that Plaintiff's assertions of the common interest and joint defense doctrines are deficient as to many withheld documents. Plaintiff has asserted that the common interest doctrine protects documents received by his team from counsel for his co-defendant, [ECF No. 158 at 18], but Plaintiff faces a difficult task in demonstrating that those documents fall within the common interest or joint defense doctrines. If the documents were provided to Plaintiff's trial attorney prior to his conviction, they may be relevant to the issue of what information was available to Plaintiff at trial. If the documents were conveyed after Plaintiff's co-defendant was acquitted, Plaintiff must explain how a joint defense or common interest protection persisted after his co-defendant's Court ordered acquittal. See United States v. Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 28 (1st Cir. 1989) ("In order to establish the existence of a joint defense privilege, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived."). Given that Plaintiff will supplement his privilege logs with information that may be helpful in assessing the privilege, as more fully set forth herein, the Court will deny this request with leave to renew, if necessary, once the parties have produced and reviewed the revised privilege logs.

### F. Work Product

Lastly, the City of Lynn claims that Plaintiff's assertion of work product protection is "problematic" because Plaintiff asserts the work product protection for (1) documents prepared in anticipation of his post-conviction relief efforts and (2) documents prepared by the Justice Brandeis Law Project, which Plaintiff has not shown actually represented him. See [ECF No. 157 at 7].

Documents prepared in connection with post-conviction relief efforts may fall within the work product protection, even though Plaintiff is now seeking justice in a civil case before a different court.  See Textron, 577 F.3d at 29 ("[T]he literal language of Rule 26(b)(3) protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." (punctuation omitted) (quoting Grolier, 462 U.S. at 25)).  Particularly here, where there is a close nexus between the legal work to secure Plaintiff's relief from custody and efforts to obtain justice for the alleged misconduct that lead to his conviction, the work product protection may apply to documents prepared primarily in anticipation of efforts for post-conviction relief.  See S.W. v. City of New York, No. CV 2009-1777 ENV MDG, 2010 WL 5185141, at *1 (E.D.N.Y. Dec. 15, 2010) ("[W]ork product materials retain their immunity from discovery after termination of a litigation and are not 'routinely' available in subsequent litigation." (citing Grolier, 462 U.S. at 27)).

With respect to documents prepared by Brandeis, Plaintiff's brief asserts that "[i]n 2005, the Justice Brandeis Law Project took Plaintiff's case," and an attorney worked with personnel from the Justice Brandeis Law Project to investigate Plaintiff's post-conviction claims in 2006. [ECF No. 158 at 4].  If materials were prepared for an attorney by personnel at the Justice Brandeis Law Project, such materials may be subject to the work product protection.  Plaintiff must, however, remedy the deficiencies in his privilege log so that his privilege claims can be better assessed, and to allow Defendants to determine if Plaintiff's relationship with Brandeis has a legal component.[3]

---

[3] The City of Lynn argues that the Justice Brandeis Law Project is an investigative journalism program and that Plaintiff communicated with non-lawyers from Brandeis in 2005 and 2006, before post-conviction attorneys were involved in Plaintiff's case.  [ECF No. 161 at 3–4].  Plaintiff is unlikely to be able to demonstrate that communications between Plaintiff and Brandeis that preceded the involvement of post-conviction attorneys are privileged.  If Plaintiff

## II. CONCLUSION

Accordingly:

1.      The Parties shall exchange information on where and from whom produced documents were collected and/or state the requests that produced documents are responsive to.

2.      Within 30 days of this order, Plaintiff shall supplement his privilege log with the names of attorneys or other persons associated with withheld documents and information sufficient to assess the privileges claimed.

3.      Once Plaintiff supplements his privilege logs and provides information on his previous productions to comply with Rule 34(b)(2)(E), the parties shall meet and confer before filing any additional motions on the issues raised by the City of Lynn's motion to compel.

**SO ORDERED.**

December 26, 2018                                                      /s/ Allison D. Burroughs
                                                                                 ALLISON D. BURROUGHS
                                                                                 U.S. DISTRICT JUDGE

---

intends to maintain his privilege claims over these documents, he must identify the attorneys who were involved in or supervised the communications at issue.