IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANGEL ECHAVARRIA, ) | Case No. 1:16-cv-11118-ADB |
| ) |  |
| Plaintiff, ) |  |
| ) | Hon. Allison D. Burroughs, |
| v. ) | District Judge |
| ) |  |
| J. MICHAEL ROACH, *et al.*, ) |  |
| ) |  |
| Defendants. ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION TO RECONSIDER**

Plaintiff, Angel Echavarria, through his attorneys, respectfully moves this Court to reconsider its decision to dismiss Plaintiff's claim that the identification made by Gary Sevinor was the result of unduly suggestive identification procedures. ECF No. 96 at 17-19. Plaintiff respectfully submits that this §1938 claim should not be precluded by prior state-court criminal litigation and should instead be litigated as part of this action against the Defendants. In support, Plaintiff states as follows:

**INTRODUCTION**

Plaintiff was wrongly convicted of the 1994 murder of Daniel Rodriguez and spent over two decades in prison. ECF No. 1 at ¶¶ 1, 7. There was no physical evidence linking Plaintiff to the crime. *Id.* at ¶ 22. The prosecution instead relied on identifications made by the victim's brother, Isidoro Rodriguez, who was in the house at the time the murder took place, and an alleged eyewitness named Gary Sevinor. *Id.* at ¶¶ 46-50, 51-54. All the while, the Defendants suppressed that Isidoro had identified and that they had investigated another man named Mariano Bonifacio—a known violent criminal who they had arrested for attempted murder weeks earlier—as the killer

before the Defendants arrested and charged Plaintiff. *Id.* at ¶¶ 28-30, 55. Moreover, the Defendants suppressed that they had obtained identifications of Plaintiff using suggestive identification procedures. *Id.* at ¶¶ 31-41, 46-50.

After he was exonerated and his state criminal judgment set aside, Plaintiff brought this suit, alleging among other claims that his right to due process had been violated when the Defendants: (1) suppressed exculpatory evidence; (2) fabricated false evidence; and (3) secured tainted identifications using unduly suggestive identification procedures. *Id.* at ¶¶ 65-83. This motion to reconsider concerns only the last of those three due process theories, and only so far as it concerns the purported identification obtained from Sevinor. Plaintiff alleges that Sevinor's identification of Plaintiff was tainted by the Defendants' use of unduly suggestive identification procedures. *Id.* at ¶¶ 46-50, 69. At the motion to dismiss stage, this Court dismissed that claim, finding that Plaintiff was precluded from pursuing the claim because he argued to suppress Sevinor's identification during his criminal case and lost. ECF No. 96 at 17-19.[1]

That decision should be reconsidered because it contradicts a large and growing body of federal law that holds that state criminal litigation cannot preclude later raised civil rights claims that allege that the state criminal proceedings were corrupted by police misconduct. In short, federal cases across the country hold that once a judgment has been vacated—as Plaintiff's state criminal judgment was—it ceases to exist and can have no preclusive effect in subsequent § 1983 litigation.

In addition, the Court's decision dismissing Plaintiff's claim that the Defendants used unduly suggestive identification procedures with Sevinor should be revisited because the factual record now

---

[1] The Court did not dismiss Plaintiff's claim relating to the unduly suggestive identification procedures used with Isidoro Rodriguez, and those claims are still live in the case. ECF No. 96 at 17-19.

assembled in the case presents a picture of the Defendants' misconduct that Plaintiff never had the opportunity to litigate during his state criminal proceedings. Plaintiff now knows much more than he did when he moved to suppress in his criminal case. Further, even if a vacated criminal judgment could have preclusive effect, Plaintiff never had a full and fair opportunity to litigate the claim in criminal proceedings as he can now, with the benefit of discovery, in this civil case. Moreover, for preclusion to apply, Plaintiff must have litigated in the prior criminal proceeding a claim identical to the one at issue in this civil proceeding, which did not happen given the discovery of new evidence. This Court should reconsider its decision dismissing Plaintiff's claim that the Defendants used unduly suggestive identification procedures with Sevinor and reinstate that claim in this case.

## **RELEVANT FACTUAL BACKGROUND**

In January 1994, the Defendants arrested and charged Plaintiff and his friend Juan Rodriguez for the murder of Daniel Rodriguez[2]—a crime neither had committed. ECF No. 1 at ¶¶ 18, 31-37. The Defendants charged Plaintiff with murder without any credible or physical evidence linking Plaintiff to the crime, and in doing so, they ignored evidence of Plaintiff's innocence. *Id.* at ¶¶ 22, 42-45. Thus, Plaintiff proceeded to trial to fight the accusations. *Id.* at 51.

After a two week trial, Plaintiff was wrongly convicted. *Id.* at 53. He spent more than two decades in prison, fighting to prove his innocence. *Id.* at 62-64. Only decades later, during post-conviction proceedings that led to Plaintiff's exoneration and discovery in his civil case, did the truth come out. Plaintiff learned that the Defendants' key eyewitness, Isidoro Rodriguez, had identified a man named Mariano Bonifacio on multiple occasions before Plaintiff's arrest. *Id.* at ¶¶ 24-25. He further discovered that the Defendants had investigated Bonifacio as a suspect in the murder, had arrested him weeks before for an attempted murder, but had made no reports of their investigation

---

[2] Daniel Rodriguez and Isidoro Rodriguez were brothers and neither one was related to Plaintiff's co-accused, Juan Rodriguez.

3

of Bonifacio, and had not disclosed his involvement in the crime to prosecutors, to Plaintiff, or to his attorneys. *Id.* at ¶¶ 26-30. In addition, Plaintiff learned that the inculpatory identifications the Defendants obtained from Isidoro and from Gary Sevinor had been procured by fraud. *Id.* at ¶ 31-41, 46-50. In 2015, Plaintiff's conviction was vacated, he was released from prison, and the charges against him were dismissed. *Id.* at ¶ 62-64. This civil suit followed.

## I. The Murder of Daniel Rodriguez

On the evening of January 7, 1994, Daniel Rodriguez, and his brother, Isidoro Rodriguez, went to a local restaurant. Ex. 1 (Echavarria Trial Tr., 1/22/96) at 34:7-37:1. When they returned to the apartment, two armed men assaulted them. *Id.* at 39:19-43:6. Isidoro was immediately tied up with phone cords and placed in a bedroom. *Id.* at 62:6-8. After the suspects left the apartment, Isidoro untied himself and discovered his brother dead in the bathroom. *Id.* at 73:10-20.

## II. The Evidence Gathered From the Crime Scene Does Not Implicate Plaintiff

On the night of the murder, Isidoro provided the Defendants with descriptions of the two perpetrators. Ex. 2 (Interview with Isidoro Rodriguez). Isidoro said that both perpetrators were Puerto Rican Spanish speakers and one of the perpetrators was wearing a hat with a Massachusetts State Police ("MSP") logo on it. *Id.* Isidoro also mentioned one eyewitness to the crime had been in the apartment, and he described that person by name and appearance. *Id.* That person was not Gary Sevinor.

Crime scene personnel photographed the apartment and collected all the items of evidence. There is no record of an MSP hat being found at the crime scene that night. Ex. 3 (MSP Crime Lab Report) at 1-2; Ex. 4 (Crime scene photographs). Further, the Defendants never found anything to suggest that Plaintiff or his co-accused had worn such a hat. Indeed, at no point did the Defendants

4

find any physical evidence linking Plaintiff to the apartment or Daniel's murder.[3] Ex. 5 (Roach Dep.) at 183:20-24. Neither Angel nor his co-accused Juan Rodriguez fit the descriptions given by Isidoro, particularly since both were from the Dominican Republic and thus, did not speak with Puerto Rican accents.

### III. Isidoro Repeatedly Identifies Mariano Bonifacio and Defendants Suppress Their Investigation of Bonifacio

On the night of the crime, the Defendants transported Isidoro to the Lynn police station and conducted mugbook identification procedures with him. They instructed Isidoro to look through the photographs slowly and if he saw the person who was involved, Isidoro was to point to the picture and let the officers know. Ex. 7 (Guillermo Dep.) at 63:12-21; 65:17-22. In accordance with the Defendants' instructions, Isidoro pointed twice to a picture of the suspect: a man named Mariano Bonifacio. *Id.* at 65:23-66:15.

Thereafter the Defendants began investigating Bonifacio. Defendant Roach informed the Defendants that Bonifacio had just been arrested and charged with attempting to murder another man named Victor Batista. ECF No. 1 at ¶ 29. Bonifacio's attempted murder of Batista took place less than two months before the Rodriguez homicide at a location less than a mile from the Rodriguez crime scene. *Id.* On January 8, 1994, within hours of Isidoro's identification, the Defendants printed Bonifacio's criminal history and placed it in their investigative file. Ex. 8 (Bonifacio Arrest History).

Thereafter, Bonifacio became the Defendants' only suspect in the case. Ex. 9 (Post-Conviction Hrg. Tr.) at 89:23-91:4. On January 14, 1994, the Defendants conducted another identification procedure with Isidoro – a photo array that included a picture of Bonifacio from his

---

[3] In fact, when the wires found at the crime scene were finally tested for DNA, Plaintiff was excluded as a possible contributor. Ex. 6 (Carl Ladd Affidavit) at ¶5- 6.

recent attempted murder arrest. Ex. 10 (Bonifacio Photo). Again, Isidoro pointed to Bonifacio's picture, identifying him as the perpetrator. ECF No. 1 at ¶ 25.

Nevertheless, the Defendants never arrested or charged Bonifacio with the Rodriguez homicide. Ex. 5 at 30:7-18. Nor is there any record of them talking to him about his involvement. Nor did the Defendants write any police report or disclose any documents showing they had been investigating Bonifacio in connection with the murder. ECF No. 1 at ¶¶ 28-30. Nor did they disclose that they had arrested and charged Bonifacio in an attempted murder just weeks before and blocks away. *Id.* The only written record of Bonifacio's identification is a two-sentence, undated handwritten note written by Defendant Roach, which misled the prosecution and defense to believe that Isidoro had not selected Bonifacio during identification procedures. Ex. 11 (Handwritten Note).

## IV. The Defendants Arrest and Charge Plaintiff Without Probable Cause and Conduct Suggestive Identification Procedures Only After His Arrest

On January 16, 1994, two days after he had selected Bonifacio in the Defendants' photo array, Isidoro came to the Lynn police station accompanied by a friend who translated for him. The Defendants were told that Isidoro had seen two men he thought were the involved in the murder at 501 Washington Street sitting inside a restaurant. Ex. 12 (Incident Report – 1/19/94) at 1. Defendants went with Isidoro to the restaurant, where Isidoro pointed out Plaintiff and Juan. *Id.* The Defendants escorted Plaintiff and Juan outside with Isidoro and interviewed them about whether they had been involved in a shooting. *Id.* Plaintiff and Juan cooperated with the officers, denied any involvement, and provided their identification and addresses. *Id.* Unconvinced by Isidoro's account of Plaintiff and Juan's involvement, and considering that Isidoro had just identified Bonifacio multiple times, the Defendants concluded that they lacked probable cause to arrest Plaintiff and Juan and let them go.

The next day, on January 17, 1994, Defendant Roach, who had been off duty, returned to work, learned about the incident involving Plaintiff and Juan, and without any additional

6

investigation or identification procedures arrested Plaintiff and Juan for murder. Ex. 13 (Supp. Report – 1/17/94) at ¶¶ 1, 5-6. The Defendants arrested Plaintiff solely based on Isidoro's statements made the day before—statements that had previously been deemed insufficient to justify Plaintiff's arrest. Ex. 5 at 385:6-12.

Upon Plaintiff's arrest, the Defendants recorded Plaintiff and Juan's physical characteristics, which did not match Isidoro's suspect descriptions. *See* Ex. 2; *cf.* Ex. 14.

On February 18, 1994, weeks after the crime, and over a month after Plaintiff had already been charged with the murder, the Defendants showed Isidoro another photo array. Ex. 15 (Photo Array Report – 2/18/94). The array included photos of Plaintiff and Juan from their arrest. *Id.* Isidoro was re-familiarized with Plaintiff and Juan's appearance from the array. Ex. 16 (Dysart Expert Report) at 19-21. This follow-up identification procedure was not compelled pursuant to any written MSP or Lynn Police Department policy, nor at the request of the District Attorney.[4] At this identification procedure, Defendant Garvin reported that Isidoro identified Plaintiff and Juan. Ex. 15. Importantly, the Defendants never conducted any identification procedure with Isidoro that included both Plaintiff and Bonifacio's pictures. Ex. 5 at 377:9-13.

On March 16, 1994, Isidoro participated in a live-lineup procedure at the Middleton Jail. Ex. 17 (Supp. Report for Live Lineup). Again, Plaintiff and Juan were the only individuals in the lineups that Isidoro had seen before. Isidoro again identified Plaintiff and Juan. *Id.* By the time of trial, Isidoro had been shown Plaintiff and Juan three times. Ex. 16 at 19-21.

**V.      Defendants Use Gary Sevinor to Strengthen Their Weak Case Against Plaintiff**

On January 18, 1995, about a year after the Rodriguez homicide, Defendants Garvin and Roach suddenly interviewed a pretrial detainee named Gary Sevinor about the murder. Ex. 18 (Interview with Gary Sevinor). At the time Defendants Garvin and Roach interviewed Sevinor, no

---

[4] This Court denied Defendants' motions to dismiss Plaintiff's due process claims based on unduly suggestive techniques used to procure Isidoro's identifications of Plaintiffs. ECF No. 96 at 17-21.

witnesses, including Isidoro, had ever stated that Sevinor was at or had any connection to the crime scene. Ex. 19 (Garvin Dep.) at 330:9-24. There was no report in the file suggesting that he had any connection to the crime or crime scene. Indeed, at the time that Plaintiff was prosecuted, there was no indication in the investigative files how Sevinor had become a witness in the case.

During the January 1995 interview, according to Defendant Garvin's report, Sevinor claimed that he had been at the Rodriguez apartment on the night that Daniel Rodriguez was killed, and he provided the Defendants a vague and generalized description of the assailants. Ex. 18 at 1. At no point during the interview did Sevinor indicate he could identify either assailant. Ex. 18. Sevinor also claimed he wore a State Police hat to the Rodriguez's apartment on the night of the murder. *Id.* at 2.

On February 20, 1994, a month after the initial interview, the Defendants presented Sevinor with a photo array containing Plaintiff's photograph. According to the Defendants, Sevinor identified Plaintiff. Ex. 20 (Echavarria Trial Tr. – 1/24/96) at 163:11-25. In the criminal case, Plaintiff received a black and white photocopy of a photo array with Plaintiff's photo circled and a note at the bottom in Sevinor's handwriting, which read, "I COULDN'T SWEAR TO THIS WAS THE MAN THAT SAID ON THE FLOOR FACE DOWN." Ex. 21 (Photo Array Signed by Gary Sevinor)

### VI. Plaintiff's Limited Opportunity to Litigate a Motion to Suppress

On January 11, 1996, Plaintiff moved to suppress Sevinor's pretrial identification of Plaintiff on the grounds that Sevinor did not have sufficient time or opportunity to observe the suspects and that the photo array was suggestive because the fillers appearances were dissimilar to Plaintiff's. Ex. 22 (Motion to Suppress Tr.) at 68:19-25. The court denied the motion and found that there was no evidence that Sevinor's identification of Plaintiff was influenced by the police or due to a suggestive photo array. *Id.* at 69:1-70:13. Following the motion to suppress, Plaintiff and Juan went to trial for the murder of Daniel Rodriguez and were convicted. On appeal, with no additional facts to argue,

8

Plaintiff reiterated the same argument presented about Sevinor's identification: that photo array was unduly suggestive because the fillers were dissimilar from Plaintiff's appearance. Ex. 23 (Echavarria Appellate Brief) at 35-38. The Massachusetts Supreme Judicial Court ("SJC") upheld the trial court's ruling and affirmed Plaintiff's conviction. *Com. v. Echavarria*, 428 Mass. 593, 596, 599 (1998).

### VII. Plaintiff's Wrongful Conviction

Sevinor testified at trial and positively identified Plaintiff in court. Ex. 24 (Echavarria Trial Tr. – 1/18/96) at 183:8-24. At the time of the trial, Isidoro went missing and neither the police nor the State could locate him. Ex. 25 (Echavarria Trial Tr. – 1/18/96) at 202:13-204:4. He wrote a letter saying that he was unwilling to testify. Ex. 26 (Isidoro Letter). The Defendants brought Isidoro where he identified both Plaintiff and Juan as the assailants. Ex. 1 at 90:2-12. The State did not present any other evidence linking Plaintiff or Juan to the murder.

The jury found both Plaintiff and Juan guilty. Ex. 27 (Echavarria Trial Tr. – 1/26/96) at 9:5-12:6. The court, however, found that Isidoro's identification of Juan was insufficient to sustain Juan's conviction due to Isidoro's inability to see and Isidoro's "lack of education, sophistication [and] very little conception as to spacial [sic] relationships and the [sic] distance and time." *Id.* at 17:9-18:2. As a result, the court granted Juan's motion for a judgment of acquittal. *Id.* Plaintiff's motion for judgment of acquittal was denied, in part, due to the "corroboration and substantive evidence in the testimony of Sevinor." *Id.* at 18:19-19:17.

Plaintiff appealed his conviction and his appeal was denied. *Com. v. Echavarria*, 428 Mass. 593 (1998). Fortunately, on April 30, 2015, the Superior Court of the Commonwealth of Massachusetts concluded that Plaintiff's conviction could not stand. Consequently, the court vacated Plaintiff's conviction and ordered a new trial. Ex. 28 (Memorandum of Decision and Order for New Trial).

9

On June 15, 2015, the Commonwealth of Massachusetts entered a *nolle prosequi*, dropping all charges against Plaintiff. Ex. 29 (Entry of Nolle Prosequi).

### VIII. Plaintiff Discovers Additional Facts Concerning Sevinor's Identification of Plaintiff

Since Plaintiff's conviction was upheld on direct appeal, and largely through civil discovery in this case, Plaintiff has uncovered key facts about Sevinor's identification of Plaintiff that were unknown to Plaintiff at the time he litigated his motion to suppress in his criminal proceedings. Plaintiff has learned:

- Sevinor was introduced to the Defendants via the Marblehead Police Department, where he has served as an informant to Chief Jim Carney. Ex. 30 (Keating Dep.) at 23:3-24:9.

- Marion Keating from the Marblehead Police Department informed Defendant Garvin that Sevinor was known to wear an MSP hat. Ex. 19 at 104:4-21.

- The Defendants initially treated Sevinor as a suspect, not a witness. As discussed above, there was no evidence that Sevinor had been present at the crime scene in the police file, there was no evidence that an MSP hat was found at the crime scene, and the only reference in police documents to an MSP hat was Isidoro's statement that the perpetrator wore such a hat. Before Sevinor was ever asked to make an identification of Plaintiff, according to Sevinor's deposition testimony given in this case, the Defendants informed him that his DNA was found at the crime scene and that he had been captured on video entering the building in which Daniel Rodriguez was murdered. Ex. 31 (Sevinor Dep.) at 90:21-93:16.

- Before Sevinor testified at trial, the Defendants showed Sevinor video footage of both Sevinor and Plaintiff entering the apartment building. *Id.* at 94:17-95:16; 98:1-8.

10

- Contrary to the Defendants' police reports disclosed in this case, Sevinor testified that he did not provide any details about the murder or suspect descriptions to the Defendants prior to the time that Defendant Garvin came to see him with photographs of potential suspects, including Plaintiff's picture. *Id.* at 209:5-7; 210:24-211:15.

- A few weeks after he provided an identification of Plaintiff to the Defendants, Sevinor had his attorney file a motion to revoke and revise his sentence on his unrelated armed robbery case, notice of which was provided to the prosecutor in Plaintiff's case. Ex. 32 (Motion to Revoke and Revise Sentence); Ex. 33 (Request for Hearing on Motion to Revise and Revoke Sentence).

All of these new facts, if they had been available decades ago and had been presented to the trial judge in Plaintiff's criminal case, would have supported Plaintiff's claim that Sevinor's identification of Plaintiff was tainted by unduly suggestive identification procedures.

## **LEGAL STANDARD**

This Court has the power to modify or revise its decisions at any time prior to final judgment. *Lyons v. Fed. Nat'l Mortg. Ass'n*, No. 1:18-CV-10365-ADB, 2019 WL 1961072, at *2 (D. Mass. May 1, 2019) (quoting *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000)) (internal quotation marks omitted); *Willhauck v. Halpin*, 919 F.2d 788, 793 (1st Cir. 1990); *Simone v. Monaco*, No. CV 4:19-11070-TSH, 2020 WL 1046724, at *1 (D. Mass. Mar. 4, 2020). This authority is derived from the "court's equitable power to process litigation to a just and equitable conclusion." *Miranda v. Deloitte LLP*, 962 F. Supp. 2d 379, 382-83 (D.P.R. 2013) (internal quotation marks omitted) (citation omitted). "Interlocutory orders" such as rulings on motions to dismiss, "remain open to trial court reconsideration, and do not constitute the law of the case." *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42

11

(1st Cir. 1994). When reviewing a motion for reconsideration, "the district court must balance the need for finality against the duty to render justice". *Davis* 89 F. Supp. at 147. These two goals, however, should not be given equal weight – the court should place a "great emphasis upon the interest of justice". *Deloitte LLP*, 962 F. Supp. at 383 (quoting *United States v. Roberts*, 978 F.2d 17, 21 (1st Cir. 1992) (internal quotation marks omitted). As such, the court must engage in a dual analysis: (1) it must apply the "interest of justice test" which requires the court to consider the unique facts of the specific case and "revise its original decision if it would be unjust to maintain it." *United States of America v. Gary Lee Sampson*, No. CR 01-10384-MLW, 2015 WL 13333677, at *3 (D. Mass. Nov. 13, 2015); and (2) grant the party's motion if the moving party shows an intervening change in the law, newly discovered evidence, or a clear error of the law in the first order. *Davis*, 89 F. Supp. 2d at 147; *see also Smith v. Town of Barnstable*, No. CV 19-12305-RGS, 2020 WL 2560987, at *1 (D. Mass. May 20, 2020).

**ARGUMENT**

In response to the Defendants' motions to dismiss, this Court ruled that Plaintiff was precluded from litigating whether Sevinor's identification of Plaintiff was tainted by unduly suggestive identification procedures. This Court concluded that because the SJC had ruled on the issue in Plaintiff's criminal case on direct appeal, Plaintiff could not litigate the issue in this case. ECF No. 96 at 17-21. That decision should be reconsidered for two reasons. First, as federal courts around the country have recognized since this Court's decision, a vacated state court criminal judgment cannot have preclusive effect in later § 1983 litigation. Second, as the facts developed during discovery in this case amply demonstrate, *supra* Relevant Factual Background, Section VIII. Plaintiff never had the opportunity during his criminal case to litigate whether Sevinor's identification was tainted by the Defendants because the Defendants suppressed evidence. As such,

12

conditions for applying issue preclusion are not present in this case. The Defendants' misconduct—including their suppression of evidence concerning Sevinor—led to Plaintiff's wrongful conviction, and it caused the state-court rulings affirming Plaintiff's conviction. Now that the truth has come out, to permit that same misconduct to lead to a ruling that precludes Plaintiff from vindicating his constitutional rights through a federal civil suit would be inequitable and would undermine the very purpose of § 1983.

## I.      A Vacated State-Court Judgment Cannot Preclude Later § 1983 Litigation

Vacated state-court judgments cannot preclude subsequent federal §1983 actions. In its motion to dismiss decision, this Court relied on *Johnson v. Mahoney*, 424 F.3d 83 (1st Cir. 2005), which pronounced without detailed consideration of the issue that, "It is well-established that the doctrine of collateral estoppel applies in civil rights actions," and that "[f]ederal courts must give to state-court *judgments* the same preclusive effect as would be given by the courts of the state from which the judgments emerged." *Id.* at 93 (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)) (emphasis added). While that of course is a correct statement of the law set out by the Supreme Court in *Allen*, it is the law that applies where there is an extant state court judgment in place. As many federal courts have recognized, where a state court criminal judgment has been vacated, as Plaintiff's was, it can no longer have any preclusive force in later federal litigation.

As a matter of federal law, "it is hornbook law that a vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of law of the case." *Reid v. Donelan*, 390 F.Supp.3d 201, 222 (D. Mass. 2019) (quoting *Jackson v. Coalter*, 337 F.3d 74, 85 (1st Cir. 2003); *see also* RESTATEMENT (2D) JUDGMENTS §27 (1983) (preclusion requires a "valid and final judgment" on an "issue of fact or law actually litigated"). While the Supreme Court in *Allen* decided that §1983 did not alter common-law rules of preclusion, it held quite clearly that the Full Faith and

13

Credit Act, 28 U.S.C. §1738, only requires "federal courts to give preclusive effect to state-court *judgments* whenever the courts of the State from which the judgments emerged would do so[.]" 449 U.S. at 96 (emphasis added); *accord Migra v. Warren City School District*, 465 U.S. 75, 80-81 (1984). As the Restatement of Judgments makes clear, a judgment is no longer final if it is set aside, "as it would be upon the granting of a motion for a new trial," and has no preclusive effect. RESTATEMENT (2D) OF JUDGMENTS § 13, cmt. f (1982).

Applying this principle since this Court decided the Defendants' motions to dismiss, federal courts in cases like this one have rejected Defendants' precise argument: that a denied motion to suppress during state criminal proceedings has preclusive effect in subsequent §1983 litigation even if the state criminal judgment has been vacated.[5] *Peterson v. Heymes*, 931 F.3d 546, 554-55 (6th Cir. 2019) ("Here, the criminal judgment has been vacated. Therefore, the [criminal] trial court's interlocutory rulings . . . have merged with the final judgment, which means those interlocutory rulings have been vacated too."); *O'Connell v. Alejo*, 2020 WL 1244852, at *4 (D. Colo. Mar. 16, 2020) ("[A] vacated judgment, even if not vacated as a result of evidence exonerating the defendant, should not be given preclusive effect."); *Cosenza v. City of Worcester*, 355 F.Supp.3d 81, 94 (D. Mass. 2019) (noting that "courts in the Commonwealth have questioned the preclusive effect of vacated holdings"); *Dukes v. Albany*, 289 F.Supp.3d 387, 393 (N.D.N.Y. 2018) ("Defendants' interpretation

---

[5] Because this § 1983 action is proceeding in the *absence* of any state-court judgment, federal rules of preclusion control. *Allen*, 449 U.S. at 96 (holding that 28 U.S.C. § 1738 requires federal courts to give preclusive effect to state-court judgments). Nonetheless, consistent with the common law and federal law, Massachusetts courts apply the same rule. For preclusion to apply, Massachusetts law requires a final judgment on the merits in the prior adjudication. *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843, 832 N.E.2d 628, 634 (2005). It further holds that when a judgment has been vacated collateral estoppel cannot apply. *See Lingis v. Waisbren*, No. SUCV200600717, 2011 WL 6379283, at *1 (Mass. Super. Oct. 5, 2011); *Jackson v. Com.*, 430 Mass. 260, 263 (1999). It follows that, even if this Court applied Massachusetts law, this Court should find that given the vacatur of Plaintiff's state criminal judgment, Plaintiff's federal claims cannot be barred by issue preclusion.

14

of collateral estoppel seems plainly wrong—a vacated criminal conviction cannot have preclusive effect").

When Plaintiff's motion for new trial was granted, Plaintiff's conviction was vacated. *Com. v. Echavarria*, No. 1994-2407, 2015 WL 1947741 (Mass. Super. Apr. 30, 2015). There is therefore no state court judgment in this case that could possibly preclude Plaintiff's §1983 claim as a matter of federal (or Massachusetts) law. For that reason alone, this Court should reconsider its dismissal of Plaintiff's unduly suggestive identification claim as it relates to Sevinor.

## II.  Preclusion Cannot Apply Because Newly Discovered Facts Demonstrate Plaintiff Never Had the Opportunity to Litigate His Claim Regarding Sevinor

Even supposing federal (or Massachusetts) law gave a vacated judgment some preclusive effect, Plaintiff's state-court proceedings still would not preclude his §1983 claims, for three additional reasons. First, for prior proceedings to have preclusive effect Plaintiff must have had a "full and fair opportunity to litigate the issue in the previous action." *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012); *Allen*, 449 U.S. at 95 (Supreme Court has repeatedly recognized "that the concept of collateral estoppel cannot apply when the party . . . did not have a 'full and fair opportunity' to litigate that issue in the earlier case."). "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana v. U.S.*, 440 U.S. 147, 164 (1979); RESTATEMENT (2D) JUDGMENTS §27(5)(c) (no preclusion where "the party sought to be precluded, as a result of the conduct of his adversary . . . , did not have an adequate opportunity . . . to obtain a full and fair adjudication in the initial action").

Since Plaintiff's criminal conviction became final on direct appeal, he has discovered facts about the Defendants misconduct during the investigation of the Rodriguez murder, which demonstrates that Plaintiff did not have a full and fair opportunity to litigate whether Sevinor's

15

identification was corrupted by suggestive identification procedures. As set out above, Plaintiff has learned since his conviction became final that the Defendants suppressed evidence generally—*e.g.*, that Isidoro had selected a different suspect, Bonifacio, on multiple occasions, and the Defendants investigated Bonifacio as the suspect before conducting identification procedures after Plaintiff's arrest in which they showed Isidoro only Plaintiff's photo; and with respect to Sevinor specifically—*e.g.*, that Sevinor was an informant to fellow law enforcement officers, was treated as suspect prior to any identification procedure, did not supply details about the crime before being shown photos of Plaintiff, was shown a video of Plaintiff prior to testifying at the criminal trial, and only viewed a black and white photocopy of a photo array. *See supra* at Relevant Factual Background, Sections III, IV, V, VIII. These facts are extraordinarily probative of whether the Defendants conducted suggestive identification procedures with Sevinor that created a substantial likelihood of misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 107-116 (1977); *Simmons v. U.S.*, 390 U.S. 377, 383-84 (1968).

Second, preclusion requires that "the issue sought to be relitigated must be identical to the issue decided in the earlier action." *Ramallo Bros. Printing v. El Dia, Inc.*, 490 F.3d 86, 90 (1st Cir. 2007). "It is well established that a previously adjudicated issue is not identical for purposes of collateral estoppel, where the facts material to the subsequent litigation have changed since the prior adjudication." *Barry v. Planning Bd. of Belchertown*, 96 Mass. App. Ct. 314, 322 (2019) (internal quotation marks omitted). Issue preclusion can be defeated when there has been a material change in circumstances. *Ramallo Bros. Printing,* 490 F.3d at 90. Withholding exculpatory evidence is just the sort of wrongdoing that destroys a previous proceeding's preclusive effect. *E.g.*, *Tavakoli v. Los Angeles*, 2019 WL 1297950, at *6 (C.D. Cal. Mar. 18, 2019) ("[I]ssue preclusion does not apply where . . . the arresting officers lied, fabricated evidence, or intentionally concealed exculpatory evidence").

Additionally, Plaintiff's unduly suggestive lineup claim regarding Sevinor in this civil case is not identical to that raised during his criminal proceedings because the circumstances have materially changed since the SJC affirmed the trial court's motion-to-suppress ruling. On appeal in his criminal case, Plaintiff relied on the same argument presented to the state trial judge: that the photo array presented to Sevinor was unduly suggestive because the fillers were dissimilar to Plaintiff. *Com. v. Echavarria*, 428 Mass. 593, 596 (1998). It was largely through civil discovery that Plaintiff learned all of the new, material facts undermining Sevinor's identification and the police misconduct giving rise to that identification. *See supra* at Relevant Factual Background, Sections III, IV, V, VIII.  All of these newly discovered facts are material to the question of whether the Defendants used unduly suggestive identification procedures with Sevinor, and they represent changed circumstances sufficient to render Plaintiff's current claim fundamentally different from the one decided by the SJC. Plaintiff's § 1983 claims in this civil rights case are in no way identical to the suppression issue litigated in state-court proceedings.

Finally, preclusion is an equitable doctrine, which exists to prevent unfairness to parties who might otherwise be forced to relitigate issues that have already been decided. *See Chestnut Hill Dev. Corp. v. Otis Elevator Co.*, 739 F. Supp. 692, 696 (D. Mass. 1990); *Giragosian v. Ryan*, 547 F.3d 59, 64 (1st Cir. 2008) ("[R]es judicata should be addressed from the perspective of fairness and efficient judicial administration since the doctrine of claim preclusion is not applied rigidly where such interests would not be served."); *Boucher v. Dramstad*, 522 F. Supp. 604, 607 (D. Mont. 1981) ("[R]es judicata is a principle of public policy to be applied so as to render rather than deny justice. The rule is intended to serve the aims of fairness and efficient judicial administration and need not be applied mechanically where those ends would not be served."). To exercise equity in favor of the Defendants here would flip fairness on its head. Indeed, it would be difficult to articulate a situation where preclusion would be more inappropriate than here. Plaintiff's federal constitutional claim is

17

that he was wrongly convicted, in part, based on unduly suggestive identification procedures conducted with Sevinor, and that the Defendants suppressed evidence of their misconduct–evidence that would have allowed Plaintiff to demonstrate that Sevinor's identification was infirm and that he was innocent. Plaintiff's state criminal proceedings were thoroughly corrupted by the Defendants' misconduct, and it would be inequitable to hold that the Defendants need not litigate claims in this civil rights suit because their own misconduct misdirected state-court proceedings, resulting in the denial of Plaintiff's motion to suppress in those proceedings. Indeed, one of the principal concerns of § 1983 was preventing local officials from violating federal rights via state-court proceedings. *Mitchum v. Foster*, 407 U.S. 225, 240 (1972). Equity demands that the Defendants do not reap the benefit of their own misconduct, and for that reason as well preclusion should not apply in this case.

## **CONCLUSION**

The Court's prior decision dismissing Plaintiff's unduly suggestive identification claim regarding Sevinor misapplied federal law, and it could not take into account the materially different factual circumstances supporting that claim that have been discovered since Plaintiff's conviction became final. Accordingly, the standard for reconsideration of an interlocutory order is satisfied. Plaintiff respectfully requests that this Court reconsider its ruling and reinstate Plaintiff's due process claim that Sevinor's identification was tainted by unduly suggestive identification procedures.

Dated: September 10, 2020

                                      RESPECTFULLY SUBMITTED,

                                      ANGEL ECHAVARRIA

                                      By: /s/ Renee Spence
                                      *One of Plaintiff's Attorneys*

*Attorneys for Plaintiff*
Arthur Loevy*
Jon Loevy*
Anand Swaminathan*
Mark Loevy-Reyes*
Tara Thompson*
Gayle Horn*
Steven Art*
Renee Spence*
LOEVY & LOEVY
311 N. Aberdeen St.
Third Floor
Chicago, IL 60607
(312) 243-5900
(312) 243-5902 (fax)
spence@loevy.com
*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

  I, Renee Spence, an attorney, hereby certify that on September 10, 2020, I filed the foregoing PLAINTIFF'S MOTION TO RECONSIDER using the Court's CM/ECF system, which effected service on all counsel of record listed below.

/s/ Renee Spence
*One of Plaintiff's Attorneys*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(1)(2)

I, Renee Spence, hereby certify that in accordance with Local Rule 7.1(a)(1)(2), prior to filing this motion I contacted opposing counsel for each of the Defendants to determine if they would oppose Plaintiff's Motion to Reconsider. Counsel for Defendants stated they opposed the motion.

/s/ Renee Spence
*One of Plaintiff's Attorneys*
